James O. Latturner
EDELMAN COMBS LATTURNER & GOODWIN, LLC
120 S. Lasalle Street, Suite 1800
Chicago, Illinois 60603
Telephone: (312) 739-4200
Email: jlatturner@edcombs.com
Attorneys for Plaintiff David Scardina

Douglas J. Campion (SBN 75381)
THE LAW OFFICES OF DOUGLAS J. CAMPION
409 Camino Del Rio South, Suite 303
San Diego, CA 92108-3507
Telephone: (619) 200-2091
Email: doug@djcampion.com
Attorney for Plaintiff Christopher Robinson

Joseph Darrell Palmer (SBN 125147)
LAW OFFICES OF DARRELL PALMER PC
603 North Highway 101, Ste A
Solana Beach, California 92075
Telephone: (858) 792-5600
Email: darrell.palmer@palmerlegalteam.com
Attorney for Plaintiff Eduardo Tovar

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION | Case No. 11-md-2286-MMA (MDD)<br><br>Member cases: 10-cv-02261<br>10-cv-02600<br>10-cv-02368<br>10-cv-02370<br><br>**CONSOLIDATED COMPLAINT** |

## INTRODUCTION

1. Plaintiffs David Scardina, Eduardo Tovar, and Christopher Robinson ("Plaintiffs") bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM") and Encore Capital Group, Inc. ("Encore") (collectively referred to as "Defendants"), in negligently and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephones, in violation of the Telephone Consumer Protection Act, 47 US.C. §227 et seq., ("TCPA"), thereby invading Plaintiffs' privacy. Defendant MCM, acting on behalf of Defendants Midland Funding and Encore, impermissibly called Plaintiffs' cell phones without their prior express consent using an automatic telephone dialing service and/or an artificial or prerecorded voice ("Predictive Dialer"). Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2. This matter in controversy exceeds $5,000,000, as each member of the proposed Class of tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1332(d)(2). Further, Plaintiffs allege a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction.

3. Venue is proper in the United States District Court for the Southern District of California pursuant to 18 U.S.C. §1391(b) and 1441(a) because Defendants conduct business in the County of San Diego, and have their primary corporate headquarters within this judicial district.

**PARTIES**

**Plaintiffs**

4. Plaintiff David Scardina is, and at all times mentioned herein was, an individual citizen of the State of Illinois, who resides in Chicago, Illinois.

5. Plaintiff Edwardo Tovar is, and at all times mentioned herein was, an individual citizen the State of Texas, who resides in Laredo Texas.

6. Plaintiff Christopher Robinson is, and at all times mentioned herein was, an individual citizen of the State of California, who resides in Orange, California.

**Defendant Midland Credit Management**

7. Defendant MCM is a Kansas corporation with its principal place of business also located at 3111 Camino Del Rio N, #1300, San Diego, CA 92108. It is a subsidiary of Encore Capital Group, Inc. Defendant MCM is a collection agency and collects the charged-off debts purchase by other entities within the Midland organization, described below.

8. Defendant MCM is a collection agency and collects the charged-off debts purchased by other entities within the Midland organization, described below.

9. Defendant MCM is a "debt collector" as defined in the FDCPA.

**Defendant Midland Funding**

10. Midland Funding is a limited liability company chartered under Delaware law. Midland is a subsidiary of Encore Capital Group, Inc.

11. Midland Funding is engaged in the business of taking title to charged-off consumer debts, including credit card, auto deficiency and telecom receivables purchased from national financial institutions, major retail credit corporations, telecom companies and resellers of such portfolios. (Encore's SEC filing on form 10-Q, Aug. 8, 2008).

12. Midland Funding's affiliate Midland Credit Management, Inc. attempts to collect the alleged debts via correspondence and telephone calls. Midland Funding frequently files lawsuits to collect the debts. Midland Funding is the plaintiff in about 500 lawsuits per month in Cook County alone.

13. Midland Funding's principal place of business is 8875 Aero Drive, Suite 200, San Diego, CA 92123.

14. Midland Funding is a "debt collector" as defined by the FDCPA.

**Defendant Encore Capital Group**

15. MCM and Midland Funding Corporation are under common ownership.

16. Both are direct or indirect subsidiaries of Encore Capital Group, Inc., a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

17. Encore raises money in public securities markets to acquire the debts which are transferred to Midland Funding or other similar entities and collected by MCM. Encore also is responsible for the overall collection strategies used to collect the accounts.

18. Encore's webpage states, "If you are one of our consumers, you probably know us as Midland Credit Management. Midland Credit Management is an Encore Capital Group subsidiary[.]" * * * "If you have received a letter or phone call from us, seen our name on your credit report, or received a letter or phone call from a law firm or collection agency acting on our behalf, it means that your obligation (credit card, auto loan, consumer loan, home or cell phone bill, student loan) to a lender is now your obligation to Midland, as a result of our agreement with that lender. Please give us a call or log into our site to create a repayment arrangement or discuss the status of your account" (http://www.encorecapital.com/consumers).

19. Encore describes itself as "a leading accounts receivable management firm" (Encore Capital

Group Inc., Exhibit 99.1, filed with the SEC on March 15, 2006) and a "purchaser and manager of charged-off consumer receivables portfolios" (Encore Capital Group Inc., Form 424B3, filed March 1, 2011, prospectus summary).

20. On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios" (Form 8-K filed by Encore with the SEC on March 10, 2005).

21. Encore acquires portfolios for an average of about 3.3 cents on the dollar.

22. "From inception through December 31, 2010, we have invested approximately $1.8 billion to acquire 33.0 million consumer accounts with a face value of approximately $54.7 billion" (Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p. 1).

23. Encore states that it is responsible for developing collection strategies. Its Form 10-K for the year ending December 31, 2010 states: "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account" (Original page 4).

24. Among these strategies is outbound telephone calls. "During 2010, we called approximately 8.6 million unique consumers, of which 1.8 million, or 21%, made contact with us" (Encore Capital Group, Inc. report on SEC Form 10-K for the year ending December 31, 2010, original page 4).

25. Similarly, in its Prospectus filed with the SEC on March 1, 2011, Encore Capital Group, Inc., stated ("Prospectus Summary"):

> **We are a systems-driven purchaser and manager of charged-off consumer receivable portfolios . . . We acquire receivable portfolios at deep discounts from their face values using our proprietary valuation process that is based upon an analysis of the individual consumer attributes of the underlying accounts. Based**

**upon our ongoing analysis of these accounts, we employ a dynamic mix of collection strategies to maximize our return on investment. . . . Acquisitions of receivable portfolios are financed from operating cash flows and borrowings from third parties. . . .**

**We have been in the collection business for 56 years and started purchasing portfolios for our own account approximately 19 years ago. . . .**

**We have established certain relationships with credit card issuers, other lenders and resellers that allow us to purchase portfolios directly through negotiated transactions, and we participate in the auction-style purchase processes that typify our industry. In addition, we enter into "forward flow" arrangements in which we agree to buy receivables that meet agreed upon parameters over the course of the contract term.**

**We evaluate each portfolio for purchase using the proprietary valuation and underwriting processes developed by our in-house team of statisticians. Unlike many of our competitors, which we believe primarily base their purchase decisions on numerous aggregated portfolio-level factors, including the originator, the type of receivables to be purchased, or the number of collection agencies the accounts have been placed with previously, we base our purchase decisions primarily on our analysis of the specific accounts included in a portfolio. Based upon this analysis, we determine a value for each account, which we aggregate to produce a valuation of the entire portfolio. We believe this capability allows us to perform more accurate valuations of receivable portfolios. We have successfully applied this methodology to receivables across multiple asset classes.**

**After we purchase a portfolio, we continuously refine our analysis of the accounts to determine the best strategy for collection. As with our purchase decisions, our collection strategies are based on account level criteria. Our collection strategies include: . . .**

*** outbound calling, driven by proprietary, predictive software, by our own collection workforce located at our three domestic call centers and our international call center in India; . . .**

26. Encore is a "debt collector" as defined in the FDCPA.

## FACTS

### Facts Related to Plaintiff Scardina

27. MCM in a letter dated April 27, 2011, informed Plaintiff Scardina in part that, "Midland

Funding, LLC, has purchased your HSBC BANK NEVADA N.A account and Midland Credit Management, Inc. (‘MCM'), a debt collection company, is the new servicer of this obligation.”

28. MCM uses at least one Automatic Dial Announcing Device which under Texas law is defined as any automated equipment used for telephone solicitation or collection that (1) is capable of storing numbers to be called, or has a random or sequential number generator capable of producing numbers to be called and (2) alone or in conjunction with other equipment, can convey a prerecorded or synthesized message to the number called without the use of a live operator.

29. MCM uses at least one "Predictive Dialer" as defined by the Federal Commutation Commission ("FCC").

30. On information and belief, MCM's Predictive Dialer is capable of dialing telephone numbers without human intervention.

31. MCM's Predictive Dialer is capable of delivering an automated prerecorded message.

32. Upon a phone call being answered by a live person, MCM's Predictive Dialer has the capability of transferring that phone call to a live operator.

33. Plaintiff has a cellular telephone assigned the telephone number XXX-XXX-0519. The first six digits of Plaintiff's cellular telephone number are redacted for privacy considerations.

34. Plaintiff is the regular user of the cellular telephone and it is generally carried on his person.

35. Plaintiff did not provide his cellular phone number to HSBC Bank Nevada N.A., the original creditor of the debt MCM was attempting to collect.

36. On information and belief, Defendants and their agents obtained Plaintiff's cellular telephone number, XXX-XXX-0519, from HSBC Bank Nevada, N.A. who obtained it from United Recovery Systems, LP, who on or about October 15, 2010, obtained it from Experian. On information and belief,

Experian informed United Recovery Systems, LP the telephone number XXX-XXX-0519 was a cell phone number.

37. In a letter dated November 1, 2010, Plaintiff informed United Recovery Systems, LP, "Please stop calling my telephone number XXX-XXX-0519 for collecting the HSBC Bank account you tell me I owe: Account No.: XXXXXXXXXXXX7795", which according to the United States Postal Service was received by United Recovery Systems, LP, on November 4, 2010.

38. Defendant MCM placed phone calls in an attempt to reach Plaintiff at the telephone number XXX-XXX-0519, at a minimum, on or about the following dates and times

a. April 27, 2011 at 8:19 a.m.;
b. April 27, 2011 at 5:03 p.m.;
c. April 28, 2011 at 8:11 a.m.;
d. April 28, 2011 at 9:45 a.m.;
e. April 29, 2011 at 10:13 a.m.;
f. April 30, 2011 at 9:55 a.m.;
g. May 1, 2011 at 10:09 a.m.;
h. May 2, 2011 at 8:07 a.m.;
i. May 3, 2011 at 8:05 a.m.;
j. May 3, 2011 at 9:12 a.m.;
k. May 3, 2011 at 11:36 a.m.;
l. May 3, 2011 at 12:43 p.m.;
m. May 4, 2011 at 8:07 a.m.;
n. May 5, 2011 at 8:12 a.m.;
o. May 5, 2011 at 10:44 a.m.; and
p. May 5, 2011 at 2:23 p.m.

41. On information and belief, each phone call placed to Plaintiff by MCM was with the use of a Predictive Dialer, without a human hand manually dialing the telephone number.

42. For each of these phone calls above, Plaintiff's caller ID registered "000".

43. Plaintiff answered the call made on or about April 27, 2011 at 5:03 p.m., and was informed by a live person that the call was from Midland Credit. In response, Plaintiff informed the caller to stop calling his telephone.

44. MCM left the following messages for Plaintiff:

a. "(Music Plays)." Call transferred to a live person who said only, "Hello." The call was then disconnected.

b. "Hi Dave, Dave Scardina, hello?" The call was then disconnected.

c. "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly. (Music Plays). We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays). Thank you for your patience. Your call is now next in line. We will connect you in just a moment. (Music Plays)." The call was then transferred to a live person who stated only, "Hello Dave, Mr. Scardina?" The call was then disconnected.

d. "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly. (Music Plays). We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays).The call was then transferred to a live person who stated, "Hello? [unintelligible]" The call was then disconnected.

e. "(Music Plays). All representatives are temporarily busy assisting other customers. Please continue to hold briefly. (Music Plays). We apologize for the delay. You will be connected in just a moment. Please continue to hold briefly. (Music Plays). Thank you for your patience. Your call is now next in line. We will connect you in just a moment. (Music Plays)." The call was then transferred to a live person who only stated, "Hello. Hello." The call was then disconnected.

**Facts Related to Plaintiff Eduardo Tovar**

45. At all times relevant, Plaintiff Tovar was an individual residing in the State of California. Plaintiff is, and at all times mentioned herein was, a “person” as defined by 47 U.S.C. §153(10).

46. In November of 2003, the Plaintiff opened a Sears Credit Card Account.

47. In Plaintiff Tovar’s Original Application for Credit from Sears, he did not list his cellular

telephone number. In fact, Plaintiff did not obtain his current cellular telephone number until June of 2007.

48. Plaintiff did not list a cellular phone number in or on any other documents at any time during the transaction that resulted in the debt owed, nor did he verbally provide Sears with a cellular phone number at any time during the transaction that resulted in the debt. Additionally, at no time did the Plaintiff provide Defendants or their agents with his cellular phone number, nor did he consent to any collection calls made to his cellular phone.

49. MCM is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. §153(10).

50. Notwithstanding the fact Plaintiff did not provide any of the Defendants or their agents with his cellular number at any time during the transaction that resulted in the debt owed to it, MCM repeatedly contacted Plaintiff on Plaintiff's cellular telephone. Plaintiff Tovar received repeated, harassing calls at all hours.

51. "During the transaction that resulted in the debt owed," Plaintiff did not provide a wireless number to Defendants or their agents or Sears nor otherwise provide express consent to receive prerecorded calls by Defendants or their agents on Plaintiff's cellular phone. At some point, Sears sold the alleged debt in question to Defendants and their agents.

52. Plaintiff did not own his current cellular telephone at the time he took out a line of credit with Sears. He therefore could not have given Defendants or their agents express consent at that time to contact him on that cellular phone via an automatic telephone dialing system.

53. Plaintiff did not provide "express consent" allowing Defendants or their agents to place telephone calls to Plaintiff's cellular phone utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," within the meaning of 47 U.S.C. §227(b)(1)(A).

**Facts Related to Christopher Robinson**

54. At all times relevant, Plaintiff was a citizen of the State of California. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (10).

55. Defendants and their agents are, and at all times mentioned herein were, either a corporation or an LLC, and both were "persons," as defined by 47 U.S.C. § 153 (10).

56. At all times relevant Defendants and their agents conducted business in, and have their corporate headquarters in, the State of California and in the County of San Diego, within this judicial district.

57. Plaintiff applied for credit from Providian/Washington Mutual.

58. At no point did Plaintiff provide Providian/Washington Mutual with his cellular telephone number or give Providian/Washington Mutual prior express consent to call Plaintiff on his cellular telephone with the use of an auto-dialer and/or prerecorded message, as Plaintiff did not have his current cellular telephone number at the time the applications was filled out.

59. At no point did Plaintiff provide Defendants or their agents with his cellular telephone number and/or give Defendants or their agents prior express consent to call Plaintiff on his cellular telephone with the use of an auto-dialer and/or prerecorded message.

60. In early 2009, Plaintiff fell on hard times and became delinquent on one or more accounts.

61. One account was assigned, transferred, or otherwise given to Defendants and their agents for the purposes of collection.

62. On information and belief, Defendants and their agents obtained Plaintiff's cellular telephone number from a third party and/or in another manner, but not from Plaintiff.

63. Almost immediately Defendants and their agents, or their agents, began calling Plaintiff on

his cellular telephone via an "automatic telephone dialing system," as defined by 47 U.S.C. § 227 (a)(1) using "an artificial or prerecorded voice" as prohibited by47 U.S.C. § 227(b)(1)(A). This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

64. The telephone number Defendants, or their agents, called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

65. These telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

66. Plaintiff did not provide Defendants or their agents prior express consent to receive calls with an auto-dialer or by a prerecorded voice message on Plaintiff's cellular telephone, pursuant to 47 U.S.C. § 227(b)(1)(A).

67. These telephone calls by Defendants or their agents violated 47 U.S.C. § 227(b)(1).

**General Facts**

68. All telephone contact by Midland to Plaintiffs on their cellular telephones occurred via an "automatic telephone dialing system," as defined by 47 U.S.C. §227(a)(1), and all calls that are the subject of this Complaint occurred within four years of the filing of this Complaint.

69. The telephone calls placed by Defendants and their agents to Plaintiffs' cellular telephones via the automatic telephone dialing system used "an artificial or prerecorded voice" as described in 47 U.S.C. §227(b)(1)(A).

70. The telephone numbers that Defendants and their agents used to contact Plaintiffs, with a "prerecorded voice" made by an "automatic telephone dialing system," were assigned to cellular telephone services as specified in 47 U.S.C. §227(b)(1)(A)(iii).

71. The complained of telephone calls constituted calls not for emergency purposes as defined by 47 U.S.C. §227(b)(1)(A)(i).

72. Defendants and their agents did not make telephone calls to Plaintiffs' cellular phones "for emergency purposes" utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system," as described in 47 U.S.C. §227(b)(1)(A).

73. Defendants', and their agents', telephone calls to Plaintiffs' cellular phones utilizing an "artificial or prerecorded voice" or placed by an "automatic telephone dialing system" for non-emergency purposes and in the absence of Plaintiffs' prior express consent violated 47 U.S.C. 227(b)(1)(A).

74. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendants and their agents to demonstrate that Plaintiffs provided express consent within the meaning of the statute.

**FIRST COUNT**
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 ET SEQ.**

75. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

76. The foregoing acts and omissions of Defendants and their agents constitute numerous and multiple negligent violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 et seq.

77. As a result of the negligent violations of 47 U.S.C. § 227 et seq. by Defendants and their agents, Plaintiffs and Class members are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

78. Plaintiffs and Class members are also entitled to and do seek injunctive relief prohibiting

Defendants', and their agents,' violation of the TCPA in the future.

79. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

**SECOND COUNT**
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 ET SEQ.**

80. Plaintiffs incorporate by reference the foregoing paragraphs of this Complaint as if fully stated herein.

81. The foregoing acts and omissions of Defendants and their agents constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 et seq.

82. As a result of Defendants', and their agents', knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiffs and each member of the Class is entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

83. Plaintiffs and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants and their agents in the future.

84. Plaintiffs and Class members are also entitled to an award of attorneys' fees and costs.

**CLASS ALLEGATIONS**

85. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated ("the Class").

86. Plaintiffs represent, and are members of, the Class, consisting of:

> **(a) all persons within the United States (b) who, on or after November 2, 2006 (four years prior to the filing of this action) (28 U.S.C. §1658) (c) received any telephone call from Defendants or their agents to said person's cellular telephone made through the use of any automatic telephone dialing system or with an artificial or prerecorded voice, (d) which call was not made for emergency purposes or (e) where defendant's records do not show that the person provided the number to defendant or the original creditor (for example, where the number was obtained through skip tracing or captured by the defendant's equipment from an inbound call).**

87. Defendants and their employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class, but believe the Class members number in the tens of thousands, if not more. Thus this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

88. Plaintiffs and members of the Class were harmed by the acts of Defendants and their agents in at least the following ways: Defendants, either directly or through their agents, illegally contacted Plaintiffs and the Class members via their cellular telephones, by using an auto-dialer and/or with a prerecorded voice message, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, by having to retrieve or administer messages left by Defendants and their agents during those illegal calls, and invading the privacy of said Plaintiffs and the Class members. Plaintiffs and the Class members were damaged thereby.

89. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

90. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendants' records or Defendants' agents' records.

91. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect the individual Class members, including the following:

(a) Whether, within the four years prior to the filing of this Complaint, Defendants and their agents made any call (other than a call made for emergency purposes or made with the prior express consent of the called party) to a Class member using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service;

(b) Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

(c) Whether Defendants and their agents should be enjoined from engaging in such conduct in the future.

92. As persons that received numerous calls using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

93. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the unlawful and wrongful conduct by Defendants and their agents. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendants and their agents will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

94. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

95. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendants and their agents to comply with federal and California law. The interest of Class members in individually controlling the prosecution of separate claims against Defendants is small because the maximum statutory damages in an individual action for

violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

96. Defendants and their agents have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs and all Class members the following relief against Defendants and their agents:

A. As a result of Defendants', and their agents,, negligent violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member $500.00 in statutory damages for each and every call that violated the TCPA;

B. As a result of Defendants', and their agents', willful and/or knowing violations of 47 U.S.C. § 227(b)(1), Plaintiffs seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA;

C. Injunctive relief prohibiting such violations of the TCPA by Defendants and their agents in the future;

D. An award of attorneys' fees and costs to counsel for Plaintiffs and the class;

E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiffs are proper representatives of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class;

/ / /

F. Such other relief as the Court deems just and proper.

EDELMAN, COMBS, LATTURNER & GODDWIN, LLC

By: ____/s/ James O. Latturner
James O. Latturner
Attorney for Plaintiff David Scardina

LAW OFFICES OF DOUGLAS J. CAMPION

By: ____/s/ Douglas J. Campion______________
Douglas J. Campion
Attorney for Plaintiff Christopher Robinson

LAW OFFICES OF DARRELL PALMER PC

By: ____/s/ Joseph Darrell Palmer__________
Joseph Darrell Palmer
Attorney for Plaintiff Eduardo Tovar

**ATTESTATION**

The filer of this document, attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

**CERTIFICATE OF SERVICE**

I, Darrell Palmer, hereby certify that on July 11, 2012, I electronically filed the foregoing **CONSOLIDATED COMPLAINT** with the Clerk of the Court of the United States District Court for the Southern District of California, by using the USDC CM/ECF system, a copy of which filing was sent to the following parties via email:

Abbas Kazerounian (ak@kazlg.com)

Douglas J. Campion (doug@djcampion.com)

Joshua Swigart (josh@westcoastlitigation.com)

Joseph Darrell Palmer (darrell.palmer@palmerlegalteam.com)

Alexander Holmes Burke (ABurke@BurkeLawLLC.com)

Curtis Charles Warner (cwarner@warnerlawllc.com)

Amy M. Gallegos (agallegos@jenner.com)

Brett J. Natarelli (bnatarelli@dykema.com)

James Michael Golden (jgolden@dykema.com)

Renee L. Zipprich (rzipprich@dykema.com)

Theodore W. Seitz (tseitz@dykema.com)

James O. Latturner (jlatturner@edcombs.com)

/s/ Joseph Darrell Palmer________
Joseph Darrell Palmer
Attorney for Plaintiff Eduardo Tovar