# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION | CASE NO. 11-MD-2286-MMA(MDD)<br><br>**NOTICE OF TENTATIVE RULING**<br><br>[Doc. No. 40] |

Currently pending before the Court and set for hearing on January 7, 2013, is Defendants' motion to stay this action under the doctrine of primary jurisdiction. Having considered the submissions of the parties, and in anticipation of the hearing, the Court respectfully tentatively **DENIES** the motion to stay.

As an initial matter, the Court GRANTS Defendants' unopposed request for judicial notice, as all the documents Defendants submit are matters of public record, administrative agency orders and rulings, or are filed with an administrative agency. *See N.W. Envtl. Advocates v. EPA,* 537 F.3d 1006, 1026-27 (9th Cir. 2008) (taking judicial notice of contents of EPA's request for public comment); *Moore v. Verizon Commc'ns, Inc.*, 2010 WL 3619877, at *3 (N.D. Cal. 2010) (taking judicial notice of published decisions, orders, and policy statements of the FCC); *Green v. T-Mobile USA, Inc.*, 2008 WL 351017, at *2 (W.D. Wa. 2008) (taking judicial notice of comments

and petitions filed with the FCC).

The Court's inquiry is framed by the four factors reiterated in *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008). Namely, the primary jurisdiction doctrine applies "where there is: '(1) [a] need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration.'" As the Ninth Circuit has explained, this doctrine applies "in a limited set of circumstances" and is to be used sparingly. *Id.* at 1114. Here, the Court's inquiry begins and ends with the first factor.

The FCC's public notice seeks to "clarify that predictive dialers *that are not used for telemarketing purposes* and *do not have the current ability to generate and dial* random or sequential numbers are not" ATDS devices. [Ex. A to RJN, Doc. No. 40-3 at 2 (emphasis added).] There are two issues here: (1) whether the TCPA applies to a debt collection company when the company uses a predictive dialer for non-telemarketing purposes; and (2) whether a predictive dialer that does not have the current ability to generate or dial telephone numbers qualifies as an ATDS. These issue are addressed separately below.

First, whether a predictive dialer qualifies as an ATDS when it is used for non-telemarketing purposes–such as debt collection–is not a complex issue of first impression. The FCC has decided that the TCPA applies to debt collectors, not solely telemarketers, and has further concluded that predictive dialers may fall within the TCPA *if* such devices otherwise meet the statutory definition of ATDS. In particular, paragraphs 9 through 14 of the FCC's January 4, 2008 Declaratory Ruling make clear that the TCPA applies to debt collection companies subject to the "prior express consent" exemption, the applicability of which the debt collection company bears the burden to prove. If the definition of ATDS *includes* certain qualifying predictive dialers, and the FCC has concluded that the TCPA applies to certain debt collection calls made for non-telemarketing purposes, no confusion exists about the application of the TCPA to predictive dialers that are not used for telemarketing services. There is no need to defer to the FCC on this

1   issue.

2   Second, there is no need to defer to the FCC to determine whether predictive dialers 3 qualify as ATDSs when they "do not have the current ability to generate and dial random or 4 sequential numbers." Logically, any device that does *not* have the capacity to store, produce, or 5 call randomly or sequentially generated telephone numbers *as the statute expressly requires* is *not* 6 an ATDS. *See* 47 U.S.C. § 227(a)(1) ("The term 'automatic telephone dialing system' *means* 7 equipment *which has the capacity* . . . .") (emphasis added); *Satterfield v. Simon & Schuster, Inc.*, 8 569 F.3d 946, 951 (9th Cir. 2009) ("[A] system need not actually store, produce, or call randomly 9 or sequentially generated telephone numbers, it need only have the capacity to do it."). The Court 10 agrees that "the cases cited by Plaintiffs do not hold that predictive dialers which do not meet the 11 statutory definition of ATDS are still somehow ATDSs anyway." [Doc. No. 42 at 10.] *If* this is 12 Plaintiffs' theory of the case, controlling case law and the plain language of the statute preclude 13 such a theory. It could not be more clear that any predictive dialer must have the required capacity 14 (even if unused) set out in the statute to qualify as an ATDS. Moreover, while *Satterfield* made no 15 mention of predictive dialers, the principles therein apply with equal force to predictive dialers, 16 which, as the FCC has made clear, are devices that fall under the general umbrella of "ATDS." 17 There is no need to defer to the FCC on this issue.

18   Counsel are advised that the Court's rulings are tentative, and the Court will entertain 19 additional argument during the January 7 hearing.

20   DATED: January 4, 2013

Hon. Michael M. Anello
United States District Judge