NUNC PRO TUNC
7/13/2015

**FILED**

Jul 15 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ valeriem          DEPUTY

1  DAVID E. MACK
2  7720 McCallum Blvd. #2099
   Dallas, Texas 75252
3  972-735-9642
   Pro Se

4

5

6

7            UNITED STATES DISTRICT COURT

8        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

9

JUL 1 3 2015

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

10

11

12  IN RE: MIDLAND CREDIT                )  Case No.: 11-MD-2286 MMA (MDD)
    MANAGEMENT INC. TELEPHONE            )
13  CONSUMER PROTECTION ACT              )  This opposition relates to member cases:
    LITIGATION                           )
14                                       )      3:15-cv-00773-MMA-MDD
                                         )      3:15-cv-00774-MMA-MDD
15                                       )      3:15-cv-00775-MMA-MDD
                                         )      3:15-cv-00776-MMA-MDD
16                                       )      3:15-cv-00777-MMA-MDD
                                         )      3:15-cv-00783-MMA-MDD
17                                       )      3:15-cv-00785-MMA-MDD
18                                       )
                                         )  **PLAINTIFF DAVID MACK'S**
19                                       )  **OPPOSITION AND MEMORANDUM TO**
                                         )  **DEFENDANT'S MOTION FOR ORDER**
20                                       )  **REQUIRING DAVID MACK TO CEASE**
                                         )  **FILING DUPLICATIVE LITIGATION**
21                                       )  **OUTSIDE OF THE MDL**
22                                       )

23  ─────────────────────────────────

24        COMES NOW the Plaintiff, David E. Mack with his Opposition and Memorandum in

25  Support to Defendant Midland Credit Management, Inc.'s Motion for Order Requiring David

26  Mack to Cease Filing Duplicative Litigation Outside of the MDL.

27

28                              -- 1 --

I.    **Preliminary Statement**

The Plaintiff, David E. Mack, would first like to state that he has the utmost respect for all of the courts in this country including The Southern District of California and the Honorable Judge Anello and has worked diligently to learn the consumer protection statutes, court rules and proper use of the courts to defend his rights as a consumer when that becomes necessary.

The Defendant in this matter, Midland Credit Management, Inc., comes before this Court with unclean hands asking this court to prohibit the Plaintiff, David E. Mack, from filing any further cases outside this MDL. It even goes so far as to inexplicably ask this court to exceed its jurisdiction and authority and order the Plaintiff to file any other claims he may have against the Defendant in *this* jurisdiction *now* rather than in the proper jurisdiction which is in a Texas State Court or in the Eastern District of Texas where he resides and do so at the time of his choosing according to statute. The Defendant also states that Mr. Mack made a "threat" to file more lawsuits and is "making good on that threat." The Defendant obviously does not know the difference between a statement made as part of an above board litigation strategy and a threat but of course chooses to put a sinister spin on its interpretation of that strategy. It also complains "Instead of bringing a single lawsuit seeking relief for all of the alleged calls (like every other plaintiff), he is filing over one hundred separate lawsuits alleging one call each. He is currently up to twenty-five." It also mistakenly states that the JPML would have to rule on over 100 duplicative motions for transfer to the MDL when it knows that is a false statement. The several CTO's that have been issued each covered a number of cases rather than single cases. Contrary to the Defendant's statements Mr. Mack has also made different arguments in his motions to vacate the CTO's that have been issued which is his right.

-- 2 --

II.   **Statement of Facts**.

A.   **An Overview of the History of Mr. Mack's Cases**

The cases that Mr. Mack has filed against the Defendant are part of what is a true modern day David vs Goliath story. A more detailed explanation of the entire series of events leading to this Court having some of his cases before it and other lawsuits is necessary for the Court to fully comprehend the context of what actions have occurred that led to the Defendant's Motion before this this Court. The overall controversy with multiple cases between the parties arises from a literal Blitzkrieg of 113 calls made by the Defendant to Plaintiff's wireless phone over a period of approximately 90 days commencing in November 2013 with as many as four calls per day on numerous occasions. Mr. Mack answered in excess of 50 of the calls received and found there was never a live person on the line and on at least two occasions a prerecorded message was heard when he answered. On nearly 50 occasions when answering a call from the Defendant he said either "quit calling this phone" or "quit calling this number" sometimes multiple times yet the onslaught of calls continued unabated. Mr. Mack is a non-debtor who could not owe the Defendant any money, had no business relationship with it and had not given it express consent to call his wireless phone. Mr. Mack did substantial research on the Defendant and discovered it to be the **Goliath** in the debt collection industry and that numerous public court records indicate it uses it's unsavory, unethical and malevolent litigation tactics to deal with anyone who dares to make a claim against it or it *thinks* owes it money. Mr. Mack made an attempt to engage the Defendant in settlement negotiations in hopes that litigation could be avoided and they could reach a settlement of his claims for the barrage of extremely irritating and abusive calls he had

-- 3 --

1  received.  In doing his research Mr. Mack became aware that any claims that were made against

2  the Defendant under the TCPA in federal court were routinely moved to MDL 2286.  Mr. Mack,

3  being aware of this fact and acting *pro se* did not want to be prejudiced by having his claims

4  removed to this distant court from the court in Texas and having the litigation removed from his

5  direct control in the MDL.  He therefore decided to bring an action in small claims court in

6  Collin County, Texas for the first call he received to get the Defendant's attention to see if

7  settlement talks could resolve all issues.  Mr. Mack had previously sent a notice of intent to

8  litigate to the Defendant before commencing any legal proceedings in an attempt to mitigate

9  damages and see if a settlement could be reached without litigation.  The Defendant failed to

10  reply to his notice.  Why?

11       Upon being served with the first complaint Reid Manley, an attorney for the Defendant,

12  contacted Mr. Mack via email. He informed Manley via email that there were over a hundred

13  additional calls to deal with and stated he was aware of this MDL and by filing a single case was

14  attempting to get the Defendant's attention to attempt settlement.  Mr. Mack also attached a

15  spreadsheet of the calls so the Defendant could check its records against the calls documented by

16  him in handwritten notes made at or near the time of receipt of the calls.  Manley replied with an

17  offer of settlement in the amount of $1,000 and an offer to "waive the balance owed on the

18  debt."[1]  Mr. Mack informed Manley that the offer was unacceptable as there was no debt to

19  waive, the amount offered was insufficient and more importantly it did not address the total

20  number of calls that had been made.  He requested that Manley talk to the Defendant to see about

---

[1] See Exhibit 1 (email correspondence regarding initial contact and settlement discussion)

-- 4 --

making a global offer of settlement for all calls. Mr. Mack never received a response to his

email and continued attempts at settlement. Why?

Shortly thereafter Mr. Mack received notice that the case had been removed to U.S. District Court for the Eastern District of Texas[2] and a notice of removal of that *single* case to this MDL. Several days later Mr. Mack received notice from the Clerk of the JPML that the case was not appropriate for transfer to the MDL and would not be transferred. Almost immediately thereafter Mr. Mack received an Offer of Judgment[3] in that case which was accepted by him[4] wherein he stated that his acceptance was "<u>as related to the causes of action brought in the above styled cause of action</u>." There was no argument by the Defendant as to the language in Mr. Mack's acceptance of the Offer of Judgment. Judgment was entered by the District Court[5] and was satisfied by the Defendant[6]. <u>Most importantly this court should note that there was NO disclaimer of liability language whatsoever in the Offer of Judgment made by the Defendant nor any argument to the language in the acceptance of the offer by Mr. Mack wherein he clearly stated his acceptance related to the single call at issue in that case</u>. The Defendant still refused to engage in any settlement talks regarding the remaining calls at that time. Why?

Mr. Mack filed four additional cases in Collin County, Texas small claims court against the Defendant over a period of several months for individual violations in the hope that it would create a much less costly incentive for discussion of a global settlement of all issues as Mr. Mack had attempted to previously engage the Defendant in settlement discussions to no avail on

---

[2] United States District for the Eastern District of Texas 4:14-cv-200 Doc. 1
[3] See Exhibit 2 (offer of judgment)
[4] See Exhibit 3 (copy of acceptance)
[5] See Exhibit 4 (copy of judgment)
[6] See Exhibit 5 (satisfaction of judgment)

-- 5 --

several occasions. The Defendant had already admitted placing the first call to Mr. Mack's wireless phone using an ATDS without his consent in its offer of judgment when it knew from Mr. Mack's call details already provided that all calls made to Mr. Mack originated from the same number. Again, the filings in small claims court were an attempt to minimize costs for the parties and elicit settlement discussion with the Defendant. Each of these small claims cases was subsequently removed to the United States District Court for the Eastern District of Texas[7] at substantial *unnecessary* expense by the Defendant after no response was received to multiple requests to discuss settlement made by Mr. Mack. Why?

In the second case filed by Mr. Mack that was removed to federal court[8] the parties cross-propounded discovery and the Defendant scheduled Mr. Mack for deposition on January 5, 2015. The Defendant provided numerous obstructive answers to Mr. Mack's specific discovery requests. Mr. Mack conferred with Mr. Manley stating he would file a motion to compel proper answers if they were not properly answered voluntarily. In an email on January 2, 2015 new counsel for the Defendant, Frank Springfield, requested a conference with Mr. Mack via telephone after receiving Mr. Mack's answers to Defendant's discovery requests that morning. The Defendant out of the blue made an offer of settlement to Mr. Mack for the second case to which Mr. Mack agreed.[9] In his responses to discovery requests Mr. Mack had provided copies of handwritten records of all calls received from the Defendant made at or near the time of the calls and evidence of his ownership and custody of the wireless phone and number assigned to him that he alleged in his complaint.

---

[7] United States District Court for the Eastern District of Texas 4:14-cv-265, 4:14-cv-414, 4:14-cv-481, 4:14-cv-578
[8] United States District Court for the Eastern District of Texas 4:14-cv-265
[9] See Exhibit 6 (email correspondence regarding settlement)

-- 6 --

This court should take note that the above described activities and settlement occurred shortly after rulings by the United States District Court for the Eastern District of Texas in four (4) other cases involving the parties and *similar* claims.[10] In those cases the Defendant filed three *identical* motions for Judgment on the Pleadings[11] and a single Motion to Dismiss[12] all with identical or near identical wording asking the court to dismiss the cases based on *res judicata* and claim splitting[13] when it knew full well those arguments were baseless and did not apply to the cases where it was argued. The Defendant *knew* there was no debt at issue and therefore there was no common nucleus of operative facts or a transaction (because Plaintiff is a non-debtor) as argued in its motions. It *also knew* the offer of judgment made in the first case related to only the first call received by Mr. Mack rather than all calls as misrepresented and argued by the Defendant. The Defendant in each motion also asked the court to issue an injunction prohibiting Mr. Mack from filing any further suits against it to seek remedy for the additional calls not yet being litigated. The Defendant wanted to get away with paying damages for a single call and have the court deny Mr. Mack the opportunity to seek damages for the other 112 calls he received from the Defendant. This is but one example of the Defendant's underhanded and unethical litigation tactics utilized when a claim is made against it by someone such as Mr. Mack. In his arguments to Defendant's motions Mr. Mack had shown that each phone call was a **separate, distinct and unique occurrence** with no common nucleus of operative facts because he was a non-debtor and there was no transaction.

---

[10] United States District Court for the Eastern District of Texas 4:14-cv-265, 4:14-cv-414, 4:14-cv-481, 4:14-cv-578
[11] United States District Court for the Eastern District of Texas 4:14-cv-265, 4:14-cv-414, 4:14-cv-481
[12] United States District Court for the Eastern District of Texas 4:14-cv-578
[13] Exhibit 7 (Copy of Motion for Judgment on the Pleadings 4:13-cv-265)

-- 7 --

1        The District Court denied all of the Defendant's motions in their entirety and in doing so

2   admonished the Defendant regarding its tactics in litigation. The District Court was obviously

3   not hoodwinked by the Defendant's underhanded and unsavory attempts to prevent Mr. Mack

4   from seeking remedy for his additional calls. The unethical tactics used by the Defendant in

5   attempting to block Mr. Mack from pursuing further remedy drew rather strong dicta from the

6   District Court in all four of the opinions issued with almost verbatim wording in each one. The

7   Defendant drew a warning from the District Court as to the underhanded tactics it used in

8   *attempting to gain tactical advantage.*[14] "This may very well constitute the 'dishonest (or at

9   least less than forthright) behavior to gain tactical advantage' which is, in fact, discouraged by

10  the Fifth Circuit's principles on claim-splitting.'" The court also went on to say "<u>There is

11  nothing in the record that would support Defendant's argument that Plaintiff's multiple lawsuits

12  waste judicial resources.</u>" (Emphasis added)  In addition, the court also said "Defendant has not

13  identified any principle of *res judicata* or authority under the FDCPA or TCPA (or its

14  companion Texas statute) that requires a consumer to litigate all claims arising out of a series of

15  phone calls by a debt collector in one suit merely because they involve the same parties."[15] The

16  court also denied Defendant's request for an injunction prohibiting Mr. Mack from bringing any

17  further litigation against it and in fact it would appear the court attempted to send a message to

18  the Defendant in stating "Because the Court declines to find that the lawsuits, **as a matter of**

19  **law,** arise from the same nucleus of operative facts, there is nothing before the Court at this time

20  that would indicate any "vexatious, harassing, or duplicative" conduct by Plaintiff. **In any**

21  **event, it seems to the Court that, if Defendant stopped calling Plaintiff, Plaintiff would stop**

22  **filing suits against it.**" (Emphasis added)[16]

---

[14] Exhibit 8 Pg. 7 ¶3 (Report and Recommendation of United States Magistrate Judge 4:13-cv-265)
[15] Exhibit 8 Pg 6 ¶1 (Report and Recommendation of United States Magistrate Judge 4:13-cv-265)
[16] Exhibit 8 Pg 8 ¶1 (Report and Recommendation of United States Magistrate Judge 4:13-cv-265)

-- 8 --

OPPOSITION TO MOTION TO
PRECLUDE DUPLICATIVE LITIGATION
11-md-2286 MMA (MDD)

**B.** **Why We Should Not be Here Today**

Apparently the Defendant "did not get the message" that the District Court was attempting to convey. The District Court clearly did not have a problem with the above board litigation strategy employed by Mr. Mack but instead indicated that the Defendant might want to give some thought to its own actions. Instead of doing so or engaging Mr. Mack in any settlement discussions to possibly reach a global resolution to conserve judicial resources the Defendant has inexplicably refused to do so and proceeded to move those four cases to the MDL. It has now moved a total of 29 suits to date that were filed in low cost Texas small claims court to federal court at a horrendously high monetary and time cost and then taken additional action to remove them to this MDL. Why? The Defendant has sought to move every case filed by Mr. Mack to the MDL immediately upon removal to the District Court. Why? So Mr. Mack can't file a summary judgment motion in the Texas Court with all the supporting evidence that he already has in his possession to adjudicate the cases in his favor in the District Court? The facts in Mr. Mack's cases don't need an MDL to sort them out in discovery. They are very plain and simple and THAT simple fact is well known to the Defendant because Mr. Mack already provided his evidence to it in discovery at the District Court. The Defendant's actions in moving the cases to the MDL are completely unnecessary and are taken to be punitive in nature to Mr. Mack. For what purpose is this being done? To say that the actions of the Defendant have created an unnecessary waste of precious and scarce judicial resources is an understatement. The Defendant doesn't need the MDL to make discovery in Mr. Mack's cases "more efficient or economical" or avoid disparate rulings when he is willing to discuss settlement and **it has already settled two cases with him**. In the *very first case* it was willing to take judgment

-- 9 --

against itself admitting liability on the same set of fact issues that apply to all the calls made and also settled with Mr. Mack on a second call as well when cornered on discovery. Why did settlement efforts and ANY discussion of settlement end there?? There obviously must be another reason for the Defendant spending more than $12,000 in federal filing fees alone and countless hours and what must be tens of thousands of dollars for legal services to move those cases rather than engage the Plaintiff in any substantive settlement discussion to *possibly* reach a settlement and conserve court resources.

The Defendant argues that it is Mr. Mack who is a vexatious litigant because he is filing a number of lawsuits instead of filing a claim for all calls in one suit. Mr. Mack's actions have been taken to create a low cost incentive for settlement with the Defendant. The Texas District Court already stated that Mr. Mack's actions are NOT vexatious.[17] He is simply following his well-planned and *above board litigation strategy* in dealing with **Goliath** who has a very public history of abuse and sordid litigation tactics in dealing with plaintiffs that have sued it when it violates their rights. Mr. Mack has from the very beginning always been willing to discuss a reasonable settlement of all issues. In fact it is the Defendant who is vexatious in refusing to engage in ANY settlement discussions but instead **unnecessarily** flooding multiple courts including this one with cases, filings and motions and wasting multiple court resources for no reason other than delay and "payback" to Mr. Mack because he wants to be compensated for **all** violations of his rights according to statute. Why doesn't the Defendant engage Mr. Mack at the small claims level? Why is the Defendant willing to spend this inordinate amount of money and effort defending against one *pro se* plaintiff who it has already admitted liability to and paid in a

---

[17] Exhibit 8 Pg 8 ¶1 (Report and Recommendation of United States Magistrate Judge 4:13-cv-265)

-- 10 --

previous court action?  Why does it refuse to engage in **any** further settlement discussions but instead burdens multiple courts including this one and wastes their scarce resources with its vexatious and punitive litigation strategy just to punish Mr. Mack?  Surely it cannot have the idea that it for some reason now bears no liability for making the rest of the violative calls when it has already admitted to doing so with the very first one in a court proceeding……. or can it? The answers to those questions are very obvious.  **All** courts have always encouraged parties in a dispute to attempt to settle the issues between them to save precious judicial resources and Mr. Mack has tried to engage the Defendant in settlement discussions since before filing the first action yet it remains intransigent to even discuss settlement outside of the first two cases.  Why? Mr. Mack even reached out to Jenner Block LLP in an yet another attempt to elicit settlement discussion to no avail.  The only response was the filing of the motion at issue here.  No other communication was made.

The Defendant is not using the MDL for its intended purpose to deal with a myriad of discovery issues such as might be the case in a plane crash situation where discovery concerning a multitude of things such as aircraft maintenance, pilot training, fueling, baggage handling, and a host of similar subjects would be at issue in claims brought as a result of the crash.  The MDL statute was passed by Congress in an effort to *simplify* the discovery process for complex cases and make it more *efficient and convenient* to the parties involved.  It is obvious when looking at the history of MDL 2286 that none of these things are being accomplished with it being formed almost four years ago and still having new cases added on a near weekly basis yet failing to even have a motion filed to certify a class after numerous orders to do so by the court and then looking at what is happening with Mr. Mack.  More delay tactics by the Defendant possibly in concert

-- 11 --

with the plaintiff's attorneys?  In reality it has become a dumping ground to bury litigation on

TCPA issues brought against the Defendant.  One can only wonder if this is being done possibly

in hopes of a new favorable Declaratory Ruling by the FCC in response to its presentation to the

FCC in February 2012 pleading for relief when using predictive dialers. If so the Defendant just

struck out on that pitch with the July 10, 2015 release of the 2015 FCC Omnibus Declaratory

Ruling[18] relating to the TCPA petitions that have been pending before it.  That Declaratory

Ruling by the FCC reiterates and clarifies its previous ruling that predictive dialers such as those

admittedly used by the Defendant in its ex parte presentation to the FCC[19] **are** an ATDS stating

in part: . We also reiterate that predictive dialers, as previously described by

the Commission, satisfy the TCPA's definition of "autodialer"…  It also makes

clear that the called party is the person who subscribes to and uses the phone number called

which is the case with Mr. Mack with the Commission stating in part: We find that the

"called party" is the subscriber, *i.e.*, the consumer assigned the telephone

number dialed and billed for the call.   One other very obvious fact that doesn't need

extensive discovery is the fact that the number where the calls to Mr. Mack were initiated is a

number that is shown right on the Defendant's own website as a number it calls consumers

from.[20]

Maybe this FCC ruling will break the logjam in this MDL so things can move forward.

Mr. Mack hopes that is the case needless to say.  With the issues for discovery in the cases Mr.

Mack has in the MDL and in other courts as simple as they are it should not take years or even a

[18] TCPA Omnibus Declaratory Ruling and Order available at:  https://www.fcc.gov/document/tcpa-omnibus-
declaratory-ruling-and-order
[19] See Exhibit 9 Pg 10  (Copy of ex parte presentation to FCC February 2012)
[20] See Exhibit 10  (Copy of page from Defendant's website) Last found on July 13, 2015 at:
https://www.midlandcreditonline.com/help-center/phone-calls-faqs/

-- 12 --

period of a number of months going forward to answer and clarify them so his cases can be moved back to the original jurisdiction for trial.   It is obvious that the Defendant has no inclination to even discuss settlement with Mr. Mack so that would be the likely path forward. The MDL most assuredly on its face is NOT convenient to the "parties" such as Mr. Mack as a pro se litigant but rather to *one* party, the Defendant, and is in fact prejudicial to Mr. Mack.

　　　　In Mr. Mack's case there is NO reason for his cases to be in the MDL other than delay and possibly the hope that after years and years of delay and legal jockeying by the attorneys there will be a settlement of the class action (if it is ever certified) that can be used as a "pattern settlement" which it will try and use to settle other cases for peanuts for the plaintiffs.   A recent and classic example of how the plaintiffs come out on the short end of the stick in a class action settlement and the lawyers become literally rich overnight from one class action is the Capital One TCPA class action settlement in MDL 2416.   Each class member received approximately $4 total no matter how many calls they had been subjected to yet the statute provides a **minimum** of $500 per call in statutory damages while the attorneys netted a cool $15,668,265 for 4268 hours of work which equates to over *$3,671 per hour* for the attorneys.   As is usually the case, the plaintiffs get next to nothing for the violations of their rights but the lawyers make more in fees for one class action than most Americans make in a lifetime of work.   Mr. Mack has no desire to be in that situation which is why he has studied the consumer statutes and learned the court rules and brought his actions individually.   He simply wants to be fairly compensated and fairly treated by the courts according to the law for the violations of his rights by the Defendant and nothing more.

-- 13 --

1    What started out as a combination of several class actions to allegedly simplify discovery

2  issues in MDL 2286 has become nothing more than a black hole for every TCPA case brought

3
    against the Defendant as evidenced by the fact that after almost 4 years since the inception of
4
5  MDL 2286 there STILL has not even been a motion to certify a class filed for the original cases

6  and yet going on 200 cases have been moved to the MDL and they continue to be added.  Any

7  reasonable person including Mr. Mack would not view that as an efficient process of litigation to

8  resolve simple legal controversies like TCPA issues.  Instead it can't help but be viewed as an
9
    exercise in delay of due process for all plaintiffs but especially for those plaintiffs such as Mr.
10
11  Mack who are not part of and who choose to not be a part of any class action against the

12  Defendant or any settlement resulting from those actions.  Mr. Mack brought his actions *pro se*

13  as he has against other defendants for similar violations of the TCPA and has **always** been able

14
    to resolve the issues amicably with the defendants in a reasonable amount of time because **he** is
15
16  reasonable.  Mr. Mack only wishes to have his rights upheld under Federal Rule of Civil

17  Procedure 1 which states: These rules govern the procedure in all civil actions and proceedings

18  in the United States district courts, except as stated in Rule 81. They should be construed and

19  **administered to secure the just, speedy, and inexpensive determination of every action and**
20
21  **proceeding**. (Emphasis added)  It is obvious that Midland Credit Management, Inc.'s actions in

22  dealing with Mr. Mack are an effort to delay his claims, deny him due process and punish him

23  for having the audacity to bring claims against it and not be willing to settle for peanuts no

24  matter what the cost is to them or to the judicial system.  It uses the Courts to bludgeon people

25  like Mr. Mack and coerce them to settle for several cents on the dollar of the damages available
26
27  to them by statute which is the exact opposite of what it does when it purchases junk debt

28                                              -- 14 --

information for several pennies on the dollar and seeks to collect full face value for it with no

proof in hand using abusive litigation tactics as well as never-ending calls to people like Mr.

Mack who don't owe them a cent.  Mr. Mack wants something similar to face value for the

statutory damages he is entitled to as a result of the Defendant's admitted violative actions......

nothing more.

## III.   Conclusion

The facts surrounding Mr. Mack's claims are clear, simple and admitted to by the

Defendant in the first case Offer of Judgment.  The only possible reason for the vexatious,

abusive and underhanded litigation strategy using the MDL being employed by the Defendant is

to bludgeon Mr. Mack into submission at any cost to itself and the cost of wasted resources of

the courts and have **Goliath** dictate the terms of settlement rather than Mr. Mack getting a fair

and **timely** hearing of his grievances.  To **Goliath** David Mack is nothing more than another

worm in the chicken yard.  **Goliath** views David Mack as one of those consumer rights *infidels*

who must be crushed like a bug, silenced, and prohibited from standing up for himself by

exerting his rights in the courts and this court should not allow it to do so.  This court should not

be hoodwinked any more than the Texas District Court when it looks at the **real** reason why we

are here today.  These cases should never have been brought to the MDL but more importantly

the court should look very closely at the **reason** they were brought here.  That reason is not what

an MDL is intended to be used for.  The Defendant's actions are vexatious, underhanded,

unwarranted a waste of resources and should not be condoned by this court.  For it to point a

finger and complain about Mr. Mack's actions is like the fire calling the kettle black.  It doesn't

wash!

-- 15 --

For this Court to grant Defendant's motion to combine cases from all jurisdictions would be to sanction and condone the underhanded, vexatious and punitive behavior of the Defendant. While the Plaintiff fully understands the need for all courts to manage their dockets efficiently and the fact they have complete discretion to do so he believes that to grant the Defendant's motion to consolidate cases given the history of this litigation would do nothing more than embolden the Defendant to be even more abusive and coercive to Mr. Mack going forward as well as to any other litigant, especially a pro se, who would seek to bring an action against it. It obviously has shown it is very good at using club mentality tactics when dealing with its opponents in litigation whether they be a plaintiff or defendant. It would also not be in the spirit of the courts giving fair treatment to all parties to combine the cases. The Defendant has caused the situation it now finds itself in and the court should not help it escape it but instead make it accountable for its own actions. The member cases such as Mr. Mack's in MDL 2286 sit in a computer stayed with no activity and require no maintenance or ongoing cost. There have been just 5 CTO's issued and Mr. Mack will argue no more if they are issued because it is obvious the Panel overlooks his arguments which is their prerogative. To combine the cases would have a negligible effect on the workload of the court in actuality but doing so would greatly reward the Defendant by relieving it of the responsibilities to deal with multiple litigation that it has brought upon itself for no good reason. To combine the cases would be even more prejudicial to Mr. Mack and incredibly advantageous to the Defendant while eliminating little work for the court overall. Mr. Mack would invite the court to be cautious and creative in dealing with this situation given the fact that the FCC has just released its TCPA Omnibus Declaratory Ruling which without doubt will have a positive effect on breaking the logjam of litigation waiting for

-- 16 --

their clarification on the rules.  Mr. Mack as a suggestion would we willing to abide by a stay for

a limited period of time of all cases to enable this Court to possibly find a way to move things

forward toward a quicker resolution as a result of the FCC ruling.  The Court might also suggest

that the Defendant engage the Plaintiff in settlement discussions to see if a global solution can be

found.  As previously stated, Mr. Mack has the utmost respect for this Court and Judge Anello

and believes the Court will take into consideration all that has been presented and come to a fair

decision regarding the requested consolidation of cases.  Mr. Mack fully realizes that this Court

has the discretion to combine the cases but it also has the discretion to *decline* to combine the

cases or grant the Defendant's motion.

Defendant's request that the Court order Mr. Mack to not only combine all cases but to

file any other claims he may have against the Defendant into the existing litigation in the foreign

jurisdiction of the Southern District of California now is without merit.  The Plaintiff simply

states that this Court does NOT have jurisdiction to issue such an order.  This Court has

jurisdiction over the cases transferred to it from the Texas District Court but it has no authority

or jurisdiction over the Plaintiff to compel him to bring *new* actions in a foreign jurisdiction and

he declines do so.  That request by the Defendant is yet one more example of the unscrupulous

lengths to which it will go to attempt to be punitive to Mr. Mack.  It knows better.  The Court

should take ample notice of such.

WHEREFORE, the Plaintiff asks this Honorable Court to carefully consider the

ramifications of its decision on whether to consolidate the cases and what effect it will have not

only on the Court but on the parties involved.  Plaintiff does not believe consolidation is

-- 17 --

appropriate given the overall circumstances and would only benefit the Defendant while being

prejudicial to the Plaintiff.  Plaintiff requests that is Honorable Court deny Defendant's motion.

DATED: July 13, 2015

David E. Mack
Pro Se

## CERTIFICATE OF SERVICE

This is to certify that I have served a true and correct copy of the foregoing document to the
parties listed below by First Class USPS mail.

Amy Gallegos
JENNER & BLOCK LLP
633 West 5th Street, Suite 3600
Los Angeles, CA 90071

DATED: July 13, 2015

David E. Mack Pro Se
7720 McCallum Blvd. #2099
Dallas, Texas 75252
972-735-9642
mack2001@swbell.net

-- 18 --

OPPOSITION TO MOTION TO
PRECLUDE DUPLICATIVE LITIGATION
11-md-2286 MMA (MDD)

# Exhibit 1

**From:** Manley, Reid <rmanley@burr.com>
**To:** David Mack <mack2001@swbell.net>
**Cc:** Thompson, Stephanie <sthompson@burr.com>
**Sent:** 3/31/2014 1:58 PM
**Subject:** RE: Mack v. Midland

Thanks for the quick reply. I too would like to try to resolve the case without moving to transfer the case to the MDL in California.

In your complaint, you state the you are seeking $1525. My client has authorized me to settle the case for $1000. Midland would also waive the balance owed on the debt. In exchange, you would have to sign a confidential settlement agreement and general release and dismiss the case with prejudice. I look forward to hearing from you.

**From:** David Mack [mailto:mack2001@swbell.net]
**Sent:** Monday, March 31, 2014 11:49 AM
**To:** Manley, Reid
**Subject:** Re: Mack v. Midland

Mr. Manley,

Thank you for your email. I have had some recent computer issues and did not get your phone message information unfortunately. My apologies for not responding sooner.

I prefer that we discuss this matter via email rather than by phone so there is a documented record of our discussion for future reference.

The suit I filed against Midland is the first of many that I can file against MCM in regard to TCPA and FDCPA violations.

I actually received 110 calls to my wireless phone from MCM without my consent and I contacted them directly before commencing any legal action in an attempt to resolve matters. Unfortunately they chose not to respond to my efforts to mitigate damages and reach a settlement without litigation.

I filed my first case in small claims court rather than federal court as a means to get the full attention of MCM to see if the issues at hand could be resolved with minimal litigation costs involved for both parties. Again, I am attempting to minimize any costs in resolving this dispute between the parties.

I am fully aware of the MDL that Midland is involved in in California regarding TCPA violations and do not wish to have my dispute taken into that venue being a pro se litigant hence my filing of the case for a single call in small claims court. As previously stated, there are in excess of 100 calls that were made in violation of the TCPA and FDCPA so there are substantial issues to be resolved but yet the violations are crystal clear. Your client NEVER had any consent to call my wireless phone using ATDS capable equipment and harassing me in doing so 110 times.

Now that you know what the bigger picture is in regard to my claims, please let me know what MCM wants to do to resolve this situation. I am willing to consider a *reasonable* offer of settlement of the matters at hand.

Please be aware that I am very knowledgeable of the TCPA and FDCPA and the case law regarding these matters and that I fully intend to seek *fair* compensation for the damages I have incurred as a result of your client's actions. This in no way should be interpreted as being a nuisance lawsuit but instead should be seen as an effort to resolve matters to minimize time and expense to both parties if at all possible.

I have attached a spreadsheet with data on all the calls I received from MCM on my wireless phone so you can see the complete picture. Please let me know how your client wishes to proceed with this situation.

I appreciate your cooperation in attempting to resolve this matter.

Best Regards,

David Mack

----- Original Message -----
**From:** Manley, Reid
**To:** mack2001@swbell.net
**Cc:** Thompson, Stephanie
**Sent:** Monday, March 31, 2014 10:03 AM
**Subject:** Mack v. Midland

Mr. Mack, my name is Reid Manley and I will be representing Midland in the lawsuit that you just filed against them. I have left you several messages asking that you call me to discuss the case and settlement. Could you please give me a call? Thanks

BURR • • • FORMAN

Reid S. Manley • *Partner*

Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203
direct 205-458-5439 • fax 205-244-5675 • cell 205-266-7851
rmanley@burr.com • www.burr.com

ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

Circular 230 Notice - Regulations adopted by the Internal Revenue Service require us to inform you that any federal tax advice contained in this communication (including attachments) (I) is not intended or written by Burr & Forman LLP to be used, and cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer, and (II) is not written to support the promotion or marketing of any transaction(s) or matter(s) addressed in this communication.

# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

|  |  |  |
|---|---|---|
| DAVID E. MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 4:14-cv-00200-RAS-DDB |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OFFER OF JUDGMENT

Pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendant Midland Credit Management, Inc. ("Midland"), by and through its undersigned counsel, specifically reserving its right to seek arbitration of plaintiff's claims pursuant to 9 U.S.C. § 1, *et seq.* and all defenses under Fed. R. Civ. P. 12, hereby makes this offer of judgment to plaintiff David E. Mack ("Plaintiff"):

1. Judgment to be entered against it in this action in favor of Plaintiff in the amount of TWO THOUSAND FIVE HUNDRED ONE DOLLARS and NO/100 ($2,501.00), plus reasonable attorney's fees, costs, and post-judgment interest as allowed by law relating to Plaintiff's claims against Defendant.

2. Any attorney's fees, costs, and post-judgment interest as allowed by law recoverable by Plaintiff are separate and apart from and offered in addition to the total of $2,501.00.

20682705 v1

3.     Any attorney's fees, costs, and post-judgment interest as allowed by law recoverable by Plaintiff are to be fixed by the Court in accordance with applicable law if the parties cannot agree on an amount.

4.     This offer contemplates all of Plaintiff's claims asserted against Defendant.

Respectfully submitted this 22 day of April , 2014.

Reid S. Manley
Texas Bar No. 24047520
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rmanley@burr.com

Attorney for Defendant
MIDLAND CREDIT MANAGEMENT, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on the following by Electronic Filing, and/or by U.S. First Class Mail, hand delivery, fax or email on this 22 day of April , 2014:

David E. Mack
7720 McCallum Boulevard, #2099
Dallas, Texas 75252
Telephone:      (972) 735-9642
Email: mack2001@swbell.com

OF COUNSEL

20682705 v1

2

# Exhibit 3



FILED

MAY 2 2014

BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

DAVID E. MACK
*Plaintiff,*

§
§
§
§

vs

§
§

Case No. 4:14-cv-200

MIDLAND CREDIT
MANAGEMENT, INC.
*Defendant.*

§
§
§
§
§

## NOTICE OF ACCEPTANCE OF DEFENDANT'S OFFER OF JUDGMENT

COMES NOW, the Plaintiff, David E. Mack, who hereby gives the Defendant and this Honorable Court Notice of his ACCEPTANCE of the Offer of Judgment made by the Defendant, Midland Credit Management, Inc., made on April 22, 2014 in the amount of $2501.00 plus reasonable attorney's fees, costs, and post-judgment interest as related to the causes of action brought in the above styled cause of action. *See* Exhibit 1

Dated: May 2, 2014

Respectfully Submitted,

David E. Mack
7720 McCallum Blvd. #2099
Dallas, Texas 75252
972-735-9642

# CERTIFICATE OF SERVICE

This is to certify a true and correct copy of the foregoing document was sent to the below named party by first class USPS mail.

Dated: May 2, 2014

David F. Mack

Reid S. Manley
BURR & FORMAN LLP
420 North 20th Street Suite 3400
Birmingham, Alabama 35203

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID E. MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 4:14-cv-00200-RAS-DDB |
| MIDLAND CREDIT MANAGEMENT, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S OFFER OF JUDGMENT

Pursuant to Rule 68 of the Federal Rules of Civil Procedure, defendant Midland Credit Management, Inc. ("Midland"), by and through its undersigned counsel, specifically reserving its right to seek arbitration of plaintiff's claims pursuant to 9 U.S.C. § 1, *et seq.* and all defenses under Fed. R. Civ. P. 12, hereby makes this offer of judgment to plaintiff David E. Mack ("Plaintiff"):

1.      Judgment to be entered against it in this action in favor of Plaintiff in the amount of TWO THOUSAND FIVE HUNDRED ONE DOLLARS and NO/100 ($2,501.00), plus reasonable attorney's fees, costs, and post-judgment interest as allowed by law relating to Plaintiff's claims against Defendant.

2.      Any attorney's fees, costs, and post-judgment interest as allowed by law recoverable by Plaintiff are separate and apart from and offered in addition to the total of $2,501.00.

3.     Any attorney's fees, costs, and post-judgment interest as allowed by law recoverable by Plaintiff are to be fixed by the Court in accordance with applicable law if the parties cannot agree on an amount.

4.     This offer contemplates all of Plaintiff's claims asserted against Defendant.

Respectfully submitted this ____ day of _____, 2014.

                                    _____
                                    Reid S. Manley
                                    Texas Bar No. 24047520
                                    BURR & FORMAN LLP
                                    420 North 20th Street, Suite 3400
                                    Birmingham, Alabama 35203
                                    Telephone: (205) 251-3000
                                    Facsimile: (205) 458-5100
                                    rmanley@burr.com

                                    Attorney for Defendant
                                    MIDLAND CREDIT MANAGEMENT, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on the following by Electronic Filing, and/or by U.S. First Class Mail, hand delivery, fax or email on this ____ day of _____, 2014:

                        David E. Mack
                   7720 McCallum Boulevard, #2099
                        Dallas, Texas 75252
                   Telephone:     (972) 735-9642
                   Email: mack2001@swbell.com

                                    _____
                                    OF COUNSEL

2068706 v1                              2

# Exhibit 4

Case 4:14-cv-00200-RAS-DDB   Document 11   Filed 07/03/14   Page 1 of 2 PageID #: 62

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

DAVID E. MACK,                          )
                                        )
         Plaintiff,                   )
                                        )
v.                                      )      CIVIL ACTION NO.
                                        )      4:14-cv-00200-RAS-DDB
MIDLAND CREDIT MANAGEMENT,              )
INC.,                                   )
                                        )
         Defendant.                   )

## JUDGMENT

    This case having come before the court on Plaintiff David E. Mack's ("Plaintiff")

acceptance of an offer made by defendant Midland Credit Management, Inc. ("Midland")

pursuant to Rule 68 of the Federal Rules of Civil Procedure, [Doc. 9], the court finds as follows:

    1.    On April 22, 2014, Midland offered to let judgment be taken against it in the

amount of $2,501.00, plus reasonable costs.

    2.    On May 2, 2014, Plaintiff accepted that offer.

    3.    Plaintiff submits that his reasonable costs in this matter are $117.11.

    THEREFORE JUDGMENT IS ENTERED IN FAVOR of Plaintiff David E. Mack, and

against Midland in the amount of $2,618.11. All claims and causes of action against Midland are

hereby dismissed. All pending motions are denied as moot. The Clerk is directed to close the case.

    **IT IS SO ORDERED.**

        SIGNED this the 2nd day of July, 2014.

                        *Richard A. Schell*

                        RICHARD A. SCHELL
                        UNITED STATES DISTRICT JUDGE

AGREED TO BY:

*/s/ David E. Mack* (with permission)
David E. Mack, Plaintiff
7720 McCallum Boulevard, #2099
Dallas, Texas 75252
Telephone:      (972) 735-9642
Email: mack2001@swbell.com

*/s/ Reid S. Manley*
Reid S. Manley
Texas Bar No. 24047520
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rmanley@burr.com

Attorney for Defendant
MIDLAND CREDIT MANAGEMENT, INC.

2

# Exhibit 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 5 2014

DAVID J. MALAND, CLERK
BY
DEPUTY_____

| | |
|---|---|
| **DAVID E. MACK,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.** |
| | ) **4:14-cv-00200-RAS-DDB** |
| **MIDLAND CREDIT MANAGEMENT, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## SATISFACTION OF JUDGMENT

Plaintiff David E. Mack hereby notifies the Court that all amounts owed by defendant Midland Credit Management, Inc. as a result of the judgment in this case have been paid in full and the judgment in this case is satisfied in full.

Respectfully submitted this 5th day of August, 2014.

David E. Mack
7720 McCallum Boulevard, #2099
Dallas, Texas 75252
Telephone:    (972) 735-9642
Email: mack2001@swbell.com

20754483 v1

# Exhibit 6

**From:** David Mack <mack2001@swbell.net>
**To:** Springfield, Frank <fspringfield@burr.com>
**Sent:** 1/2/2015 12:53 PM
**Subject:** Re: Mack v. Midland

Mr. Springfield,

Thank you for the update. Releasing all the Midland entities is what I expected and I have no issue with that. I am an ethical guy and don't deal in the "gotcha" stuff. I just want to be fairly compensated for what occured with the phone calls in this whole situation. That is all I have wanted since day one and hopefully we are now making substantive progress to that end.

As far as our discussion goes that can wait until Monday as family should come first especially during the holidays. Please forward the settlement agreement so we can get that out of the way and I will assume the deposition has been cancelled. Please let me know Monday AM when you would be available to talk but please keep in mind I will be on a conference call from 1:00 to 3:00 PM EST on Monday as well unless there is a change to those plans over the weekend.

I will look for the settlement agreement and respond either with the signed agreement or any suggested revisions I may need.

Thanks your your cooperation in getting matters moving.

    **Original Message:**
    From: Springfield, Frank <fspringfield@burr.com>
    To: 'David Mack' <mack2001@swbell.net>
    Sent: 1/2/2015 11:34:40 AM
    Subject: Mack v. Midland

    Mr. Mack,

    One point of clarification on the settlement is that it would release all Midland entities as to all claims/facts asserted in the 265 suit. Midland is fine with limiting it to just this case. Please confirm that this is agreeable. It if is agreeable, I will cancel the deposition for Monday. Assuming that it is agreeable, let's plan on having a call Monday when we otherwise would have been having your deposition. I am generally available. I could do after 3 today if I have to, but we have family coming in from out of town today, so Monday would work better.

    **From:** David Mack [mailto:mack2001@swbell.net]
    **Sent:** Friday, January 02, 2015 11:04 AM
    **To:** Springfield, Frank
    **Subject:** Re: Mack v. Midland

    Mr. Springfield,

    Thank you for both of your emails this morning. I will address the issues you have brought up here.

    Regarding the settlement offer for case 265, the offer of $▮▮▮ made by your client is satisfactory. The terms of the settlement agreement should reflect as you mentioned, that it is in settlement of **ONLY** case 265 and no other issues between the parties and upon receipt of the settlement proceeds I will file a motion to dismiss with prejudice in that cause of action.

    In the short term, after completion of the settlement agreement I will file a notice of settlement

with the court so they are apprised of the progress being made which is standard procedure in our district. Please forward the draft settlement agreement to me for my review and upon approval I will sign and return a scanned copy to you. Please let me know if you need the original agreement via regular mail or whether the scanned document will suffice. The federal court here only has a skeleton crew today so I would file the notice of settlement on Monday.

In regard to global settlement, I would be happy to finally have some serious discussion of that matter to see what we can come up with. I am going to be tied up on a conference call until approximately 3:00 PM your time this afternoon and would be available to talk wtih you after that. The later time would hopefully also give you time to look over my discovery responses so you can get an idea what information I have available to move my case(s) forward.

Please let me know a time a little after 3:00 PM EST that you would be available to speak and whether you would like me to call you or you contact me. You obviously have my phone number from the pleadings. I hope we can at least start the process of honestly trying to get these matters settled and start the new year off on a much more positive note.

I look forward to your response and the draft settlement agreement.

Yours Truly,

David Mack


**Original Message:**
From: Springfield, Frank <fspringfield@burr.com>
To: 'David Mack' <mack2001@swbell.net>
Sent: 1/2/2015 10:40:05 AM
Subject: Mack v. Midland

Mr. Mack,

If you can please still let me know when you have a second today to discuss the 265 case and where we are globally. In the meantime, I wanted to let you know that I just spoke with my client and finally received settlement authority for the 265 case that I will go ahead and pass along. Midland is willing to offer to pay ███ to settle the 265 case if we can reach an agreement by the close of business (5 pm central time) today. In exchange, Midland will require that you sign (with your signature notarized) a confidential settlement agreement and release (releasing all claims asserted against Midland in the 265 case) and that the 265 case be dismissed with prejudice. Please let me know if this is acceptable or if you have any questions. Thanks.

**From:** Springfield, Frank
**Sent:** Friday, January 02, 2015 10:06 AM
**To:** 'David Mack'
**Subject:** RE: Mack v. Midland

Mr. Mack,

Thanks for your emails last night. I am sorry if you were offended by my email. We simply had not received your discovery responses or any indication from you that they had been sent and I wanted to make sure that I received them for the deposition on Monday. Based on your email it appears that they will be received today, which will be fine. Is there a time today that you would be available for a short call so that I can fill you in on where are with respect to settlement? If so, let me know what time works for you. Thanks.

**From:** David Mack [mailto:mack2001@swbell.net]
**Sent:** Thursday, January 01, 2015 10:44 PM
**To:** Springfield, Frank; Watson, Kristen
**Cc:** Manley, Reid
**Subject:** Re: Mack v. Midland

Mr. Springfield,

Your frivilous threat of a motion to compel is not well taken by me. Discovery was properly SERVED timely on December 29, 2014 as required by the FRCP and is scheduled to be delivered to your office on Friday January 2, 2015. There is NO requirement for me to send it to you via email and I decline to waste my time doing so.   Here is the link to the USPS website for tracking information regarding the answers to discovery.
https://tools.usps.com/go/TrackConfirmAction.action?
tRef=fullpage&tLc=1&text28777=&tLabels=70131710000112575120

You may want to refer to your copy of the email I sent to Kristen Watson with additional details.

I will have documents and the phone that received the calls with me at deposition.

Best Regards,

David Mack

> **Original Message:**
> **From:** Springfield, Frank <fspringfield@burr.com>
> **To:** Watson, Kristen <kwatson@burr.com>, mack2001@swbell.net
> <mack2001@swbell.net>
> **Cc:** Manley, Reid <rmanley@burr.com>
> **Sent:** 12/31/2014 9:16:46 AM
> **Subject:** Mack v. Midland
>
> David,
>
> Please email us your discovery responses by 8 am on 1/2/15. If we have not received them by then, we will have
> no choice but to file a motion to compel.

BURR ••• FORMAN          R. Frank Springfield • *Partner*

**Birmingham Office** • map it
Suite 3400 • 420 North 20th Street • Birmingham, Alabama 35203
direct 205-458-5187 • fax 205-244-5707 • main 205-251-3000

**Orlando Office** • map it
Suite 800 • 200 South Orange Avenue • Orlando, Florida 32801
direct 407-540-6685 • fax 407-641-9268 • main 407-540-6600

fspringfield@burr.com • www.burr.com
ALABAMA • FLORIDA • GEORGIA • MISSISSIPPI • TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

| | |
|---|---|
| **From:** | David Mack <mack2001@swbell.net> |
| **To:** | Springfield, Frank <fspringfield@burr.com>, Watson, Kristen <kwatson@burr.com> |
| **Cc:** | Manley, Reid <rmanley@burr.com> |
| **Sent:** | 1/1/2015 11:32 PM |
| **Subject:** | Re: Mack v. Midland |

Mr. Springfield,

Settlement was put forward very plainly by me almost a month ago to Mr. Manley. Mr. Manley wanted me to make an offer of settlement and I informed him that I NEVER make an initial OFFER of settlement. I told him what the statutory damages were, which IS a demand, at that time via email and very clearly told him that it was up to his client to make an offer of settlement in this matter because they were the ones who created the violations and wanted to get the matter resolved. What do you think me telling you what the statutory damages in the case are? I find it almost incomprehensible that you don't understand THAT was the demand. From there it is up to your client to make a GOOD FAITH offer of global settlement. I don't understand how you believe that I am unwilling to make a global settlement demand. If you were told that you were very plainly misinformed.

In regard to case 265 I did, in fact, make an offer to settle in the amount of $2500 for that case. I inquired some time later of Mr. Maley as to why I hadn't heard anything back regarding settlement and he informed me that your client rep at Midland was busy working on other things. I find it utterly ridiculous that if THEY wanted to settle this matter they haven't come back to me with a counter-offer regarding global settlement or even case 265 in almost a month. It appears they still have the same head in the sand posture regarding this whole situation. I have made it known numerous times to Mr. Manley I was willing to engage in settlement negotiations to attempt to resolve these matters but it appears the desire for settlement is very one-sided which makes for absolutely no progress whatsoever.

I was told by your office that your client wanted to settle things globally rather than resolving things piecemeal and asked me to make a settlement offer for case 265 and globally which I did and it appears that effort died on the vine.

Don't attempt to put the blame on me regarding settlement negotiations as that is not going to work as my efforts toward settlement are well documented in emails and court filings if the court would like to see them.

I hope this answers your inquiry sufficiently.

Best Regards,

David Mack

> **Original Message:**
> From: Springfield, Frank <fspringfield@burr.com>
> To: Watson, Kristen <kwatson@burr.com>, mack2001@swbell.net <mack2001@swbell.net>
> Cc: Manley, Reid <rmanley@burr.com>
> Sent: 12/31/2014 9:40:25 AM
> Subject: Mack v. Midland
>
> Mr. Mack,
>
> With Reid being out today, I wanted to also follow up with you and make sure I understand where you stand with respect to settlement of this case and globally. Am I correct that your demand for this case is $2500 and that you are unwilling to make a global demand?

**From:** Springfield, Frank
**Sent:** Wednesday, December 31, 2014 9:17 AM
**To:** Watson, Kristen; mack2001@swbell.net
**Cc:** Manley, Reid
**Subject:** RE: Mack v. Midland

David,

Please email us your discovery responses by 8 am on 1/2/15.  If we have not received them by then, we will have no choice but to file a motion to compel.

BURR ꞏꞏꞏ FORMAN          R. Frank Springfield ꞏ *Partner*

**Birmingham Office ꞏ** map it
Suite 3400 ꞏ 420 North 20th Street ꞏ Birmingham, Alabama 35203
direct 205-458-5187 ꞏ fax 205-244-5707 ꞏ main 205-251-3000

**Orlando Office ꞏ** map it
Suite 800 ꞏ 200 South Orange Avenue ꞏ Orlando, Florida 32801
direct 407-540-6685 ꞏ fax 407-641-9268 ꞏ main 407-540-6600

fspringfield@burr.com ꞏ www.burr.com
ALABAMA ꞏ FLORIDA ꞏ GEORGIA ꞏ MISSISSIPPI ꞏ TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

**From:** Watson, Kristen
**Sent:** Wednesday, December 31, 2014 8:45 AM
**To:** mack2001@swbell.net
**Cc:** Springfield, Frank; Manley, Reid
**Subject:** Mack v. Midland

David,

Frank and Reid are out of the office today and asked that I send the following email on their behalf.  As you know, we need to notify the court by Monday, January 5 whether we have agreed on a mediator in case numbers 414 and 481.  Would you be agreeable to using Christopher Nolland, who is located in Dallas?  Also, can you please email us your responses to Midland's discovery requests?  They were due on December 29 and we will need them before your deposition on Monday.  Thank you.

BURR ꞏꞏꞏ FORMAN          Kristen P. Watson ꞏ *Attorney at Law*

Suite 3400 ꞏ 420 North 20th Street ꞏ Birmingham, Alabama 35203
direct 205-458-5169 ꞏ fax 205-244-5676 ꞏ main 205-251-3000
kwatson@burr.com ꞏ www.burr.com
ALABAMA ꞏ FLORIDA ꞏ GEORGIA ꞏ MISSISSIPPI ꞏ TENNESSEE

The information contained in this email is intended for the individual or entity above. If you are not the intended recipient, please do not read, copy, use, forward or disclose this communication to others; also, please notify the sender by replying to this message, and then delete this message from your system. Thank you.

# Exhibit 7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID E. MACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 4:14-cv-00265-ALM |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS

**COMES NOW** defendant Midland Credit Management, Inc. ("Midland"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 12(c), hereby files this Motion for Judgment on the Pleadings. In support of its Motion, Midland states as follows:

## I. INTRODUCTION

Plaintiff's Amended Complaint ("Complaint") must be dismissed, pursuant to Fed. R. Civ. P. 12(c), because it is barred by doctrine of *res judicata* and the rule against claim-splitting. Plaintiff's Complaint alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), Telephone Consumer Protection Act ("TCPA"), and state law based on a single alleged phone call. Before filing the instant lawsuit, Plaintiff filed a complaint against Midland that was virtually identical to this Complaint and was also based on a single phone call.[1] In the prior

---

[1] Since filing the first lawsuit and the present action, Plaintiff has filed **two additional, virtually identical** lawsuits based on a single phone call. *See Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00414-DDB, Doc. 4; *Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00481-DDB, Doc. 5. Plaintiff has also filed two additional lawsuits against Midland and, while Midland has not been served, it expects that these lawsuits are also based on a single alleged phone call. *See Mack v. Midland Credit Management, Inc.*, 32-SC-14-00222 (Collin County, Tex. Justice Ct. July 15, 2014); *Mack v. Midland Credit Management, Inc.*, 32-SC-14-00275 (Collin County, Tex. Justice Ct. Aug. 21, 2014).

lawsuit, Midland served an Offer of Judgment Pursuant to Rule 68 of the Federal Rules of Civil Procedure, which Plaintiff accepted, and judgment was entered on July 3, 2014.   As such, Plaintiff suffered a substantive defeat in a court of competent jurisdiction -- the U.S. District Court for the Eastern District of Texas — relating to issues involved in the same transaction or occurrence that forms the foundation of the instant lawsuit.  The doctrine of *res judicata* requires this Court to respect the decision of its sister court and prohibits Plaintiff from asserting claims that should have been raised in the prior lawsuit.  Therefore, it is abundantly clear that Plaintiff is barred from proceeding with the instant lawsuit.

Additionally, Plaintiff's claims are barred by the rule against claim-splitting.   Three weeks before initiating the instant lawsuit in Collin County Justice Court, Plaintiff filed a virtually identical lawsuit in the same court which was also based on a single phone call that allegedly occurred **only three days** before the phone call at issue in this case.  Less than three months after filing the instant lawsuit, Plaintiff filed two additional, virtually identical lawsuits in the same court which were also based on a single phone call that occurred **within the same week** as the phone call at issue in this case.  Without question, Plaintiff knew of **all four** phone calls at the time he filed the first lawsuit.  Plaintiff's attempt to avoid a statutory cap on damages under the FDCPA and harass Midland is a complete waste of judicial resources.  Moreover, Plaintiff's Complaint must be dismissed because his claims could--and should--have been brought in one action.  Accordingly, Plaintiff's Complaint must be dismissed in its entirety.

---

In an effort to help the Court conserve judicial resources, Midland notifies the Court that it is concurrently filing the same Motion in the other two cases that Plaintiff filed against Midland.  The cases are *Mack v. Midland Credit Management, Inc.*, Case No. 4:2014-cv-00414, and *Mack v. Midland Credit Management, Inc.*, Case No. 4:2014-cv-00481, which are pending before Judge Schell.

## II. STATEMENT OF THE ISSUES

Pursuant to Local Rule 7(a)(1), the issue before this Court is whether Midland is entitled to judgment on the pleadings because a court of competent jurisdiction entered a final judgment on the merits addressing the same causes of action alleged in the present lawsuit and because Plaintiffs' claims are improperly split.

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.   The Prior Lawsuit.

1.      Before filing the present action, on March 14, 2014, Plaintiff filed a **virtually identical** petition in the Collin County Justice Court. (*See Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00200-RAS-DDB, Doc. 3.) In the first lawsuit, Plaintiff also filed an amended complaint asserting violations of the FDCPA, TCPA, and state law based on a single phone call. (*See Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00200-RAS-DDB, Doc. 5. A copy of Plaintiff's Amended Complaint is attached hereto as Exhibit "A.")[2] The only difference is that Midland allegedly called his wireless phone on November 29, 2013 and **at a different time**. (*See id.* at ¶ 16.)

2.      On April 3, 2014, Midland filed a notice of removal removing the action to the U.S. District Court for the Eastern District of Texas. (*See Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00200-RAS-DDB, Doc. 1.)

3.      On April 22, 2014, Midland served an Offer of Judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure. (*See Mack v. Midland Credit Management, Inc.*, Case No.

---

[2] The Court is permitted to take judicial notice of court filings, which are a matter of public record, and consider them without converting Midland's motion to dismiss into a motion for summary judgment. *See Van Duzer v. U.S. Bank Nat'l Ass'n*, --- F. Supp. 2d ---, 2014 WL 357878, at *4 (S.D. Tex. Jan. 31, 2014).

4:14-cv-00200-RAS-DDB, Doc. 6-1. A copy of the Offer of Judgment is attached hereto as Exhibit "B.")

4.      Plaintiff accepted the Offer of Judgment, and Judgment was entered on July 3, 2014. (*See Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00200-RAS-DDB, Doc. 11. A copy of the Judgment is attached hereto as Exhibit "C.")

**B.      Factual Allegations and Procedural History of the Present Lawsuit.**

5.      On April 7, 2014, Plaintiff filed a Petition against Midland in the Collin County, Texas Justice Court alleging violations of the FDCPA, TCPA, and Texas law. (*See* Doc. 3, Compl.)

6.      On April 29, 2014, Midland filed a Notice of Removal removing the action to this Court. (*See* Doc. 1.)

7.      On May 2, 2014, Plaintiff filed his First Amended Complaint alleging violations of the TCPA, FDCPA, and Texas law based on a single call allegedly made to his cell phone. (*See* Doc. 6.)

8.      Plaintiff's Complaint asserts violations of sections 1692d(6) and 1692e(11) of the FDCPA for failing to identify who was calling Plaintiff and failing to identify the purpose of the call. (*See id.* at ¶¶ 15-16.) Plaintiff also alleges that Midland violated the TCPA and § 305.053 of the Texas Business Code by calling his cell phone number using an automatic telephone dialing system without his prior consent. (*See id.*) Plaintiff alleges that he received a call on his wireless phone on December 2, 2013. (*See id.*)

9.      As relief, Plaintiff requested statutory damages, costs, and attorney's fees in the amount of $1,525.00. (*See* Doc. 3.)

## IV. STANDARD OF REVIEW

The standard of review for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion. *See Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). Thus, determining the propriety of granting a motion for judgment on the pleadings requires courts to accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the plaintiff. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (5th Cir. 2007); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" a formulaic recitation of the elements of a cause will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The Supreme Court has recently stated that Rule 8 demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937 (2009) (citing *Twombly*, 550 U.S. at 555)[3]. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). Facts that are merely consistent with the plaintiff's legal theory will not suffice when, without some further factual enhancement they stop short of the line

---

[3] While the *Twombly* and *Iqbal* standard was articulated in connection with determining the validity of a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6), the same standard applies when considering a motion for judgment on the pleadings brought pursuant to Fed. R. Civ. P. 12(c). *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)."). In fact, the Fifth Circuit even quotes the language of *Twombly* when considering whether to grant a Rule 12(c) motion. *See id.*

between possibility and plausibility of entitlement to relief." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 n.9 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 557). As noted by the Supreme Court, Plaintiff must "nudge[] [his] claims across the line from conceivable to plausible, [otherwise, his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## V. ARGUMENT

### A. Plaintiff's Claims Are Barred by the Doctrine of *Res Judicata* and Must Be Dismissed.

The doctrine of *res judicata* bars Plaintiff's claims and requires the dismissal of his lawsuit. When a federal court is asked to give *res judicata* effect to a federal court judgment, it is required to apply federal law. *See Cuauhtil v. Chase Home Fin., LLC.*, 308 F. App'x 772, 773 (5th Cir. 2009) (citing *Bradley v. Armstrong Rubber Co.*, 130 F.3d 168, 179 (5th Cir. 1997)); *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 715 (5th Cir. 1975 ("Federal law clearly governs the question whether a prior federal court judgment based on federal question jurisdiction is *res judicata* in a case also brought . . . under federal question jurisdiction."). Because Midland is attempting to utilize a decision of the U.S. District Court for the Eastern District of Texas to bar further litigation, federal law on *res judicata* controls. Under federal law, *res judicata* requires: (1) identical parties; (2) jurisdiction for the prior judgment; (3) a final judgment on the merits; and (4) the same cause of action. *See Cuauhtil*, 308 F. App'x at 773. In the instant case, each element of the doctrine of *res judicata* is satisfied and Plaintiff's claims should be barred.

### 1. Identical Parties.

The parties in this case are identical to those in the prior lawsuit. Here, Plaintiff filed suit against Midland, who was the named defendant in the prior action. Thus, the first element of *res judicata* is satisfied.

## 2.    Jurisdiction for the Prior Judgment.

The prior lawsuit was properly removed to the U.S. District Court for the Eastern District of Texas and, thus, the court had jurisdiction to render a judgment in the prior lawsuit.  Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." 28 U.S.C. § 1331.  Removal jurisdiction based upon a federal question exists when a federal question is presented on the face of a plaintiff's complaint. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Because Plaintiff asserted claims against Midland based upon alleged violations of the FDCPA and TCPA, which are federal consumer protection statutes, Plaintiff's action was a civil action arising under the Constitution, laws, or treatises of the United States. *See* 47 U.S.C. § 227; 15 U.S.C. §§ 1692 *et seq.*  Accordingly, Plaintiff's TCPA and FDCPA claims arise under the laws of the United States and could have been originally filed in federal court. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 753 (2012) (holding that the Eleventh Circuit Court of Appeals erred in dismissing Plaintiff's TCPA claims for lack of federal subject matter jurisdiction because Federal courts have § 1331 jurisdiction over claims that arise under federal law and the Plaintiff's TCPA claims arise under federal law); *Stewart v. Alonzo*, No. C-08-347, 2009 WL 174938, at *1 (S.D. Tex. Jan. 26, 2009) (finding court had jurisdiction over FDCPA claims pursuant to 28 U.S.C. § 1331).  The U.S. District Court for the Eastern District of Texas, therefore, had jurisdiction to enter the judgment on Plaintiff's TCPA and FDCPA claims.

Additionally, the court had jurisdiction to render a judgment on Plaintiff's state law claim. Plaintiff asserted a violation of Texas Business Code Ann. § 305.053, which is coextensive with the TCPA.  The court exercise supplemental jurisdiction over Plaintiff's Texas state law claim because the claim formed part of the same case or controversy as Plaintiff's alleged TCPA and

FDCPA violations. The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), provides, in

pertinent part, as follows:

> [I]n any civil action of which the district courts have original
> jurisdiction, the district court shall have supplemental jurisdiction
> over all other claims that are so related to claims in the action
> within such original jurisdiction that they form part of the same
> case or controversy . . .

In the instant case, Plaintiff's Texas state law claim is related to the conduct that forms

the basis for Plaintiff's TCPA and FDCPA claims. Thus, it is clear that Plaintiff's state law claim

in this case is "so related to claims in the action within [the court's] original jurisdiction" that

they form part of the same case or controversy and, as such, fall squarely within this Court's

supplemental jurisdiction as provided under 28 U.S.C. § 1367(a); *see also* 28 U.S.C. § 1441(c)

("[w]henever a separate and independent claim or cause of action within the jurisdiction

conferred by section 1331 of this title is joined with one or more otherwise non-removable

claims or causes of action, the entire case may be removed and the district court may determine

all issues therein . . ."). Moreover, Plaintiff's state law claim does not raise novel or complex

issues of law, does not predominate over Plaintiff's demand for relief under the TCPA and

FDCPA, and arises from the same transaction or occurrence. *See id.* (citing 28 U.S.C. §

1367(c)). It was therefore proper for the court to exercise jurisdiction over all claims asserted in

Plaintiff's Complaint.

### 3.    A Final Judgment on the Merits.

Plaintiff's acceptance of the offer of judgment amounts to a prior judgment rendered on

the merits. Courts in several circuits have held that a judgment entered pursuant to Rule 68 of

the Federal Rules of Civil Procedure constitutes a final judgment for the purposes of *res judicata.*

*See, e.g., M.J. ex rel. Beebe v. United States*, 721 F.3d 1079, 1083 n.4 (9th Cir. 2013); *Banks v.*

*Int'l Union Elec., Elec., Technical, Salaried, & Mach. Workers*, 390 F.3d 1049 (8th Cir. 2004);

*Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 504 (10th Cir. 2002). Thus, the requirement that the prior judgment be rendered on the merits has been satisfied.

### 4. The Same Cause of Action.

The instant federal court lawsuit and the prior lawsuit involved the same causes of action because Plaintiff's FDCPA and TCPA claims against Midland arose from the same nucleus of operative fact, and could--and should--have been brought in the prior lawsuit.[4] To determine whether the same cause of action element is met, the Fifth Circuit applies the Restatement (Second) of Judgment's transactional test and requires that the two actions be based on the "same nucleus of operative fact." *See Eubanks v. FDIC*, 977 F.2d 166, 171 (5th Cir. 1992). "The rule is that res judicata 'bars all claims that were or **could have been** advanced in support of the cause of action on the occasion of its former adjudication.'" *Matter of Howe*, 913 F.2d 1138, 1144 (5th Cir. 1990) (citation omitted). As explained below, Plaintiff's FDCPA and TCPA claims involve the same cause of action.

---

[4] Plaintiff's Amended Complaint alleges violations of both the TCPA and Texas Business Code § 305.053. The Texas Business Code provides that "[a] person who receives a communication that violates 47 U.S.C. § 227 . . . may bring an action in this state against the person who originates the communication." *See* Tex. Bus. Code § 305.053(a). Thus, the alleged conduct that forms the basis for Plaintiff's Texas Business Code claim is the same alleged conduct that forms the basis for his TCPA claim.

Additionally, the *Masters* court recently determined that a plaintiff is not entitled to double recovery under both the TCPA and Texas Business Code § 305.053 for a single violation. *See v. Wells Fargo Bank S. Cent., N.A.*, No. A-12-CA-376-SS, 2013 WL 3713492, at *3 (W.D. Tex. July 11, 2013). The court said that "[t]here is no indication in either the TCPA or in Texas's analogue that either legislative body intended to allow double recovery under both state and federal law for the same TCPA violations." *See id.* Rather, federal and state courts have concurrent jurisdiction over TCPA claims, and the Texas statute was adopted to allow Texas citizens to enforce TCPA violations in a state forum. *See id.* (citing *Mims v. Arrow Fin. Servs., LLC*, --- U.S. ---, 132 S. Ct. 740, 747 (2012)). In other words, "plaintiffs have a choice of forum rather than two separate avenues for recovery." *See id.*

### a.   Plaintiff's FDCPA Claim Involves the Same Cause of Action.

In both lawsuits, Plaintiff alleged that Midland violated the FDCPA when it failed to

identify the caller and the purpose of the call during a single phone call. While there is no case

law in the Fifth Circuit discussing the application of *res judicata* principles to FDCPA claims

based on separate phone calls, courts in sister circuits have found a plaintiff cannot bring

separate lawsuits based on separate telephone calls made and messages left by the same

defendant for the same plaintiff because such calls arise from the same nucleus of operative fact.

Rather, causes of action arising from such phone calls or messages must be brought in the same

action, and bringing separate lawsuits for each call or message would have a preclusive effect.

*See Beeders v. Gulf Coast Collection Bureau*, 632 F. Supp. 2d 1125 (M.D. Fla. 2009); *Cohen v.

Am. Credit Bureau, Inc.*, No. 10-5112 (WJM), 2012 WL 84729, at *10 (D.N.J. Mar. 13, 2012).

In *Beeders v. Gulf Coast Collection Bureau*, the plaintiff filed ten separate lawsuits each

relating to one of ten telephone messages left by the defendant over the course of several months.

632 F. Supp. 2d 1125. Each complaint alleged that the defendant violated § 1692d(6) by failing

to meaningfully identify the caller. *See id.* To determine damages under the FDCPA, the

*Beeders* court was required "to consider the frequency and persistence of the debt collector's

noncompliance with the statute, the nature of the non-compliance, and to what extent the non-

compliance was intentional," which included considering "other calls/telephone messages to

determine the frequency and persistence of defendant's alleged non-compliance." *See id.* at 1128

(citing 15 U.S.C. § 1692k(b)(1). The court said that:

> [t]o sustain a cause of action under the FDCPA for any one call . . . the court must
> address the facts of each of the ten calls/telephone messages, including the date of
> each message and its contents. **These facts form a nucleus of operative fact
> that is identical in each suit. The litigation of any one of these claims would
> have claim preclusive effect of the other cases. These claims, which seek the
> same remedy and share the same nucleus of operative fact, are parts of the**

<u>same cause of action and, therefore, should be joined in the same suit as
separate claims within the same cause of action.</u>

*Id.* at 1129 (emphasis added).  The court also found that all of the calls occurred before the first suit was filed, and, thus, an action based on one message would bar the others under claim preclusion because they were duplicative.  *Id.* (citing *I.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551 (11th Cir. 1986) (stating "a suit is duplicative of another suit if the parties, issues, and available relief do not significantly differ between the two actions")).  Further, the *Beeders* court held that recovery of statutory damages under 15 U.S.C. § 1692k(b)(2) is limited to $1,000.00 **per action** and a plaintiff is not eligible to recover $1,000.00 **per violation**.  Thus, all of the plaintiff's FDCPA claims based on phone messages had to be joined in a single action. *Id.*

Relying on *Beeders*, the court in *Cohen v. American Credit Bureau, Inc.* found that claims asserted in separate lawsuits filed in succession and based on a single message left on a plaintiff's answering machine would be given preclusive effect.  No. 10-5112 (WJM), 2012 WL 84729, at *10 (D.N.J. Mar. 13, 2012).  In *Cohen*, plaintiff filed suit alleging violations of the FDCPA, and while the complaint referenced fifteen separate violations, plaintiff attempted to limit her claim to just one based on the theory that she could bring a separate lawsuit for each violation based on each phone message.  *Id.* at *2.  The *Cohen* court found "that withholding already accrued violations and bringing separate lawsuits *seriatim* would also violate the entire controversy doctrine," which is "a preclusionary principle intended to avoid the fractionalization of litigation by requiring joinder in a single action of all claims between the same parties arising out of the same circumstances."  *Id.* at *11.

Here, there is no question Plaintiff's current FDCPA claims arise from the same nucleus of operative fact as the previous claims and should have been brought in one action.  Plaintiff

filed the first lawsuit only three weeks before filing the instant lawsuit, and his FDCPA claims were based on calls made on November 29, 2013 and December 2, 2013, respectively. As Plaintiff's first lawsuit was filed on March 14, 2014, Plaintiff was clearly aware of his claims but, instead, deliberately chose to bring them separately. As explained by the *Beeders* and *Cohen* courts, such litigation strategy is prohibited. Moreover, Plaintiff's amended complaint in the first action contains virtually identical allegations and requests the same relief. In support of his FDCPA claim, Plaintiff alleges that:

> • On December 2, 2013 at 8:43 AM Midland called Plaintiff's wireless phone number [XXX]-[XXX]-[XXXX] from 800-237-0512. . . . The caller failed to identify who was calling the Plaintiff or to identify the purpose of the call. Defendant's failure to disclose the identity of the caller or purpose of its call were violations of 15 U.S.C. § 1692d and/or § 1692d(6) & § 1692e(11).

(*See* Doc. 6, ¶ 16.) Plaintiff alleged the following in support of his FDCPA claim in his first lawsuit:

> • On November 29, 2013 at 9:35 AM Midland called Plaintiff's wireless phone number [XXX]-[XXX]-[XXXX] from 800-237-0512. . . . The caller failed to identify who was calling the Plaintiff or to identify the purpose of the call. Defendant's failure to disclose the identity of the caller or purpose of its call were violations of 15 U.S.C. § 1692d and/or § 1692d(6).

(*See Mack v. Midland Credit Management, Inc.*, Case No. 4:14-cv-00200-RAS-DDB, Doc. 5, ¶ 16.) In both cases, Plaintiff requests the same relief: $1,000.00 in statutory damages, attorney's fees and costs, and post-judgment interest. Because Plaintiff was **required** to bring his FDCPA claims in one lawsuit, his FDCPA claim is barred by the doctrine of *res judicata*.

### b.   Plaintiff's TCPA Claim Involves the Same Cause of Action.

Plaintiff's TCPA claim also involves the same cause of action and is barred by *res judicata*. The TCPA prohibits calling a cell phone using an automatic telephone dialing system or an artificial or prerecorded voice, unless the call is made for emergency purposes or with prior express consent. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA allows a plaintiff to recover

"actual monetary loss from such violation, or receive up to $500 in damages for each such violation, whichever is greater." *See* 47 U.S.C. § 227(b)(3)(B). The TCPA also authorizes treble damages, if the court finds that the defendant willfully or knowingly violated the TCPA. *See id.* at § 227(b)(3)(C). Unlike the FDCPA, the TCPA allows a plaintiff to recover statutory damages for each call.

Although the *Beeders* court did not address whether litigating TCPA claims separately would be barred, it held that Florida Consumer Collection Practices Act ("FCCPA") claims based on separate messages must be brought in the same action, even though the statutory recovery was based on an award of $1,000 **per violation**. In *Beeders*, the plaintiff alleged that the defendant violated § 559.72(7) of the FCCPA, which prohibits "the willful communication with a debtor or debtor's family at a frequency that can be reasonably expected to harass." *See* 632 F. Supp. 2d at 1129. The court found that "[t]he facts necessary to maintain the cause of action in any one suit are identical to those necessary to maintain each of the other suits. Because these claims seek the same remedy and share identical facts, they are parts of the same cause of action for purposes of claim preclusion. . . ." *Id.*

Here, there is no question the TCPA claims asserted in the prior lawsuit arise from the same nucleus of operative fact as the claims asserted in the present case. Plaintiff will be required to prove the same set of facts to support his TCPA claim as those needed to support his TCPA claim in the prior lawsuit. Even if Plaintiff could recover for each alleged violation (though he cannot), the fact that the TCPA authorizes an award based on each call does not allow Plaintiff to bring separate lawsuits based on each call. Thus, Plaintiff's TCPA claim is barred by the doctrine of *res judicata.*

**B.** **Plaintiff's Claims Are Barred by the Rule Against Claim-Splitting and Must Be Dismissed.**

Plaintiff's Amended Complaint must also be dismissed for the additional reason that the rule against claim splitting prevents Plaintiff from maintaining two (or more) separate lawsuits against Midland arising from the same cause of action. The rule against claim-splitting bars "a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action." *See Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08-CV-1168-D, 2009 WL 305874, at *4 (N.D. Tex. Feb. 9, 2009) (citing *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 273 F. App'x 256, 265 (4th Cir. 2008)). In other words, "the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim." *Id.* (citing *Sensormatic Sec. Corp.*, 273 F. App'x at 265; *FDIC v. Nelson*, No. 93-1590, 1994 WL 93409, at *2 n.5 (5th Cir. Mar. 15, 1994) (holding that Fifth Circuit applies the "'same transaction' test, i.e., whether the earlier and later claims are based on the same nucleus of operative fact" to determine whether a claim has been split)).

Although the analysis is similar to the *res judicata* analysis, the rule against claim-splitting does not require that a prior judgment be entered. *See Ameritox, Ltd.*, 2009 WL 305874, at *5 (collecting cases); *see also Katz v. Gerardi*, 655 F.3d 1212, 1218 (10th Cir. 2011); *Brady v. UBS Fin. Serv., Inc.*, 538 F.3d 1319, 1327 n.10 ("The first suit need not reach final judgment before a motion to dismiss based on improper-claim splitting can be granted."). As explained by the Tenth Circuit:

> To be sure, claim splitting and res judicata both serve the same interests of promoting judicial economy and shielding parties from vexatious concurrent or duplicative litigation. But claim splitting is more concerned with the district court's comprehensive management of its docket, whereas res judicata focuses on protecting the finality of judgments.

*Katz*, 655 F.3d at 1218. Thus, "where a plaintiff files two cases in the same court involving the same subject matter, seeking the same claims for relief against the same defendants," the second lawsuit must be dismissed. *Id.* (affirming dismissal of second lawsuit for claim-splitting where parties and claims were the same). Additionally, a court's decision to dismiss a case based on claim-splitting is reviewed for abuse of discretion. *Compare Ameritox, Ltd.*, 2009 WL 305874, at *5 *and Hartsel Springs*, 296 F.3d 982, 985 (10th Cir. 2002) (reviewing dismissal for claim splitting for abuse of discretion) *with Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (reviewing application of res judicata de novo).

Here, there is no question Plaintiff filed lawsuits in the same court, involving the same subject matter and seeking the same relief from Midland. As explained above, the allegations against Midland and the relief sought in Plaintiff's Amended Complaint in this lawsuit is virtually identical to the allegations in the prior lawsuit. The only real difference is the date and time of the calls. Thus, Plaintiff's claims arise from the same nucleus of operative fact and his claims are improperly split.

Further, Plaintiff's litigation strategy is no different from that in *Beeders* and *Cohen*. By filing separate lawsuits based on a single call that Midland allegedly made to Plaintiff's cell phone, Plaintiff seeks to bring his claims piecemeal to avoid the $1,000 statutory cap on damages under the FDCPA. Plaintiff's vexatious litigation strategy harasses Midland and causes it to incur unnecessary expenses by litigating each claim separately. Significantly, Plaintiff's duplicative lawsuits waste limited judicial resources. Although Plaintiff is *pro se*, he is not permitted to bring meritless litigation.[5] *See Thanedar v. Time Warner, Inc.*, 352 F. App'x 891, 900 (5th Cir. 2009) ("It is well-settled that a plaintiff's *pro se* status does not give him a 'license

---

[5] Plaintiff has a history of filing lawsuits against various defendants and has filed <u>over thirty in the last three years.</u> (*See* Exhibit "D" attached.)

to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir.1986))). Accordingly, Plaintiff's Complaint must be dismissed in its entirety.

## C. The Court Should Enjoin Plaintiff from Filing Additional Lawsuits Against Midland Based on Phone Calls Made Before March 14, 2014.

Midland has reason to believe Plaintiff will continue to file lawsuits alleging violations of the FDCPA and TCPA based on a single alleged phone call and, therefore, requests that the Court issue an injunction barring Plaintiff from filing future lawsuits based phone calls made before the date Plaintiff filed his first lawsuit against Midland, March 14, 2014. The Court has the authority "to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *See Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) (citing *Farguson*, 808 F.2d at 360 (recognizing the district court's inherent power to protect its jurisdiction and judgments and to control its own dockets); *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1115 (5th Cir. 1986) (holding district court may impose a pre-filing injunction, which would bar a litigant from filing any additional actions without first obtaining leave from the district court to deter vexatious filings)). To determine whether to impose a pre-filing injunction, courts should consider the following four factors:

> (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.

*Id.* (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)). A pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *See Farguson*, 808 F.2d at 360 (upholding injunction that barred

plaintiff from filing further actions based on any matter set forth in complaint because it was "specific and limited" in that it related "only to the same claims against the same defendants").

Plaintiff filed __four virtually identical lawsuits__ based on the same legal theories and same set of facts. Plaintiff's vexatious litigation strategy has unnecessarily increased Midland's litigation costs in an effort to harass Midland. Significantly, Plaintiff's duplicative lawsuits waste limited judicial resources and clog the Court's dockets. There is no real question that Plaintiff's claims could — and should—have been brought in one lawsuit. This Court and its sister courts should not have to consider and adjudicate Plaintiff's claims over and over. Accordingly, the Court should issue an injunction barring Plaintiff from filing further lawsuits alleging violations of the FDCPA and TCPA, and arising from alleged phone calls made before March 14, 2014.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is barred by the doctrine of *res judicata* and the rule against claim splitting and, therefore, must be dismissed. Additionally, the Court should issue an injunction barring future FDCPA and TCPA claims filed by Plaintiff against Midland based on alleged phone calls made before March 14, 2014.

**WHEREFORE, PREMISES CONSIDERED,** Midland respectfully requests that this Court issue an Order dismissing Plaintiff's Complaint in its entirety, with prejudice. Midland further requests that this Court issue an Order enjoining Plaintiff from filing future lawsuits against Midland alleging violations of the FDCPA and TCPA based on alleged phone calls made before March 14, 2014.

Respectfully submitted this 26th day of August, 2014.

s/ Reid S. Manley
Reid S. Manley
Texas Bar No. 24047520
BURR & FORMAN LLP
420 North 20th Street, Suite 3400

Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rmanley@burr.com

Attorney for Defendant
MIDLAND CREDIT MANAGEMENT, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served on the following by Electronic Filing, and/or by U.S. First Class Mail, hand delivery, fax or email on this 26th day of August, 2014:

David E. Mack
7720 McCallum Boulevard, #2099
Dallas, Texas 75252
Telephone:     (972) 735-9642
Email: mack2001@swbell.com

s/ Reid S. Manley
OF COUNSEL

# Exhibit 8

# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

DAVID E. MACK §
§
V. §          CASE NO. 4:14-CV-265
§          Judge Clark/Judge Mazzant
MIDLAND CREDIT MANAGEMENT, INC. §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Defendant Midland Credit Management, Inc's Motion for Judgment on the Pleadings (Dkt. #13). After considering the motion, the responses, and the relevant pleadings, the Court finds the motion should be denied.

This case was filed by Plaintiff David E. Mack on April 7, 2014, in Collin County, Texas. Defendant removed this case to this Court on April 29, 2014, and Plaintiff filed an amended complaint on May 2, 2014.

In his amended complaint (Dkt. #6), Plaintiff asserts the following claims against Defendant Midland Credit Management, Inc.: violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692d, 1692d(6), 1692e(11), violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii), and violation of the Texas Business and Commerce Code § 305.053.[1] Specifically, Plaintiff alleges that Defendant called Plaintiff's cell phone on December 2, 2013, at 8:43 a.m. using an automatic telephone dialing system (ATDS) without having any business with Plaintiff, without his consent, and at an inconvenient time with no person on the other line and no ability to leave a message.

---

[1] Although both Plaintiff and Defendant cite to the "Texas Business Code," it is the "Texas Business and Commerce Code" that proscribes conduct which is also prohibited by the the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. *See* TEX. BUS & COM. CODE § 305.053.

Defendant filed its motion for judgment on the pleadings on August 26, 2014 (Dkt. #13). Defendant claims that Plaintiff has already settled a case against it in this Court, Case No. 4:14-cv-200, arising out of phone calls made to him.[2]

Defendant argues that Plaintiff's claims are barred by the doctrine of *res judicata* and must be dismissed; that Plaintiff's claims are barred by the rule against claim-splitting and must be dismissed; and that this Court should enjoin Plaintiff from filing additional lawsuits against it for phone calls made before March 14, 2014. In support of its motion, Defendant submits the following materials: (1) Plaintiff's First Amended Complaint from Case No. 4:14-cv-200; (2) Defendant's April 22, 2014 Offer of Judgment for Case No. 4:14-cv-200; (3) July 2, 2014 Judgment for Case No. 4:14-cv-200; and (4) list of federal and state court lawsuits filed by Plaintiff David Mack (*See* Dkts. #13-1 - #13-4).

Plaintiff has filed a response in opposition. Plaintiff submits the following materials in support of his response: (1) David Mack's Notice of Intent to Sue letter to Midland Credit Management, Inc. dated February 26, 2014; (2) Certified Mail Tracking with receipt date of March 3, 2014; (3) March 31, 2014 email to attorney Reid Manley from Plaintiff attaching spreadsheet of "Calls from MCM to My Wireless Phone" listing approximately 110 calls from Midland Credit Management between 11/29/2013 and 1/21/2014; (4) March 31, 2014 email from Reid Manley to Plaintiff re: settlement; (5) April 7, 2014 Notice of Tag-Along Action filed in In re: Midland Credit Management TCPA Litigation; (6) April 8, 2014 Notice to Counsel that Case No. 4:14-cv-200 "is not appropriate for inclusion in this MDL"; (7) April 22, 2014 letter from Reid Manley to Plaintiff re: Defendant's Offer of Judgment in Case No. 4:14-cv-200; and (8)

---

[2] As noted in Defendant's motion, Defendant has filed essentially identical motions in other suits filed by Plaintiff regarding other phone calls made to him. *See* Cases No. 4:14-cv-414 and 4:14-cv-481. The motions in those actions were pending before United States Magistrate Judge Don D. Bush, and Judge Bush entered a similar report and recommendation in both cases on November 21, 2014. Because the same arguments are made in all the cases, Judge Bush forwarded a copy of his report and recommendation to the undersigned, and the findings are virtually identical.

May 2, 2014 Notice of Acceptance of Defendant's Offer of Judgment in Case No. 4:14-cv-200 (*See* Dkts. #18-1 - #18-8).

On October 20, 2014, Defendant filed a reply (Dkt. #22). On October 30, 2014, Plaintiff filed a sur-reply (Dkt. #23).

## LEGAL STANDARD

Defendant brings its motion under Federal Rule of Civil Procedure 12(c).[3] The standard for deciding a Rule 12(c) motion for judgment on the pleadings is the same as a Rule 12(b)(6) motion to dismiss. *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). In examining a motion for judgment on the pleadings, therefore, the court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

A claim will survive if it "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S. Ct. 1955, 1969, 167 L. Ed.2d 929 (2007). In other words, a claim may not be dismissed based solely on a court's supposition that the pleader is unlikely "to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 563 n.8.

Although detailed factual allegations are not required, a plaintiff must provide the grounds of his entitlement to relief beyond mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. The complaint must be factually suggestive, so as to "raise a right to relief above the speculative level" and into the "realm of plausible liability." *Id.* at 555, 557 n.5. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[3] Generally, Rule 12(c) motions are reserved for when the pleadings are closed. Defendant's motion was filed before the January 15, 2015 pleadings deadline in this case (*See* Dkt. #17). Nonetheless, since the complaint has not been amended, the Court considers Defendant's motion as filed.

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009)

(quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. 1955). For a claim to have facial plausibility, a

plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant

is liable for the alleged misconduct. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

Therefore, "where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is

entitled to relief." *Id.* (internal quotations omitted).

A district court may consider documents attached to a motion to dismiss only if the

documents are referred to in the plaintiff's complaint and are central to the plaintiff's claims.

*Scanlan v. Texas A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins v. Morgan*

*Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Causey v. Sewell Cadillac-*

*Chevrolet*, 394 F.3d 285, 288 (5th Cir. 2004). The Fifth Circuit has also held that courts are

permitted to refer to matters of public record when deciding a motion to dismiss under Rule

12(b)(6). *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1996). "[T]aking judicial notice of

public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and

does not transform the motion into one for summary judgment." *Motten v. Chase Home Fin.*,

2011 WL 2566092 at *2 (S.D. Tex. 2011) (*citing Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th

Cir. 2011)).

## ANALYSIS

First, the Court addresses Defendant's argument that Plaintiff's claims are barred by *res*

*judicata.* *Res judicata* applies when (1) the parties in a prior and present suit are identical; (2) a

court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was final and

on the merits; (4) the plaintiff raised the same claim or cause of action in both suits. *Oreck*

4

*Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009). Claim preclusion, or *res judicata*,

bars the litigation of claims that either have been litigated or should have been raised in an earlier

suit. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004).

There is no dispute between the parties in this case that the parties are identical to those

in Case No. 4:14-cv-200 or that this Court had proper jurisdiction over the prior judgment.

Neither does Plaintiff dispute that a final judgment was entered on the prior case.[4]

The main dispute between the parties is whether claims involving all of the different

phone calls are part of the same cause of action, and thus, had to be brought in the same lawsuit

to avoid being barred by *res judicata*. The Fifth Circuit has explained:

> To determine whether two suits involve the same claim or cause of action, this
> court has adopted the transactional test of the Restatement (Second) of Judgments,
> § 24. Under that test, the preclusive effect of a prior judgment extends to all
> rights the original plaintiff had with respect to all or any part of the transaction, or
> series of connected transactions, out of which the original action arose. What
> factual grouping constitutes a transaction, and what groupings constitute a series
> are to be determined pragmatically, giving weight to such considerations as
> whether the facts are related in time, space, original or motivation, whether they
> form a convenient trial unit, and whether their treatment as a unit conforms to the
> parties' expectations or business understanding or usage. The critical issue is
> whether the two actions under consideration are based on the *same nucleus of
> operative facts*.

*Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395-96 (5th Cir. 2004) (internal citations,

quotations, and alterations omitted) (emphasis in original).

---

[4] Because the Court finds that the case should not be dismissed based on *res judicata* at this time, the Court declines
to address whether a final judgment entered under a Rule 68 offer of judgment constitutes a final judgment on the
merits for the purposes of *res judicata*. The Court notes, however, that Defendant has cited to no governing Fifth
Circuit authority to show that, as a matter of law, the final judgment here was sufficient. Indeed, Fifth Circuit
authority indicates that a court may consider the intention of the parties when determining whether *res judicata*
effect is to be given to a decree entered by consent of the parties. *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d
318, 325 -326 (5th Cir. 2006) ("*Res judicata* applies where the parties to a settlement objectively manifest an intent
to cement their agreement with claim preclusion."). Whether there was a manifest intent between a plaintiff and a
defendant regarding an offer of judgment in a prior action, therefore, may not be a matter to be resolved on a motion
for judgment on the pleadings, but it is not at issue here.

In this case, Plaintiff's claims arise out of a call made on December 2, 2013, at 8:43 a.m. Plaintiff's claims in Case No. 4:14-cv-200 involved a call made on November 29, 2013, at 9:35 a.m. Other than the fact that the calls were made to the same phone number by the same Defendant, the facts alleged do not show that the calls "are related in time, space, origin, or motivation." *Id.* "While an action... may raise the same legal issues that would also be in question in an similar type of action involving a similarly situated [fact pattern], the operative facts of the two actions would be distinct." *Id.* at 397. Defendant has not identified any principle of *res judicata* or authority under the FDCPA or TCPA (or its companion Texas statute) that requires a consumer to litigate all claims arising out of a series of phone calls by a debt collector in one suit merely because they involve the same parties. The Court cannot say that, taking all of Plaintiff's allegations as true, this case involves the "same nucleus of operative facts" such that a separate lawsuit would not be plausible on its face. *Id.*

While the Court may consider the matters of public record filed in Plaintiff's prior suit, this Court finds that an analysis requiring a piercing of the pleadings to determine the scope of Defendant's Offer of Judgment regarding "Plaintiff's claims against Defendant" in Case No. 4:14-cv-200 is not appropriate at this procedural stage (Dkt. #13-2). The Court must determine only whether Plaintiff has pleaded facts which, accepted as true, state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009); *see also Test Masters Educ. Servs. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir.2005) (noting that generally a *res judicata* contention cannot be brought in a motion to dismiss). Plaintiff has pleaded such facts here.

The Court is not convinced by Defendant's reliance on the opinion in *Beeders v. Gulf Coast Collection Bureau*, 632 F. Supp. 2d. 1125 (M.D. Fla. 2009). Not only is it not binding precedent on this Court, but the court in *Beeders* was addressing a motion for summary

6

judgment, not a motion for judgment on the pleadings. Based on the pleadings alone, this Court cannot determine, as the *Beeders* court did, that in order to sustain a FDCPA claim on the December 9, 2013 call, it must also address the facts of the other calls made by Defendant, including the one made on November 29, 2013. *See id.* at 1129.

Because the Court declines to find, without piercing the pleadings, that this case involves the same transaction or same nucleus of operative facts as Case No. 4:14-cv-200, Defendant's arguments regarding claim-splitting also fail. *See Black v. North Panola Sch. Dist.,* 461 F.3d 584, 589 (5th Cir. 2006) ("The requirement that the litigation 'involve the same claim premised upon the same body of operative fact as was previously adjudicated' comports with the prohibition against claim-splitting protected by res judicata."); *Ameritox, Ltd. v. Aegis Sci. Corp.,* 2009 WL 305874, 4 (N.D. Tex. 2009) ("In a claim splitting case, the second suit will be barred if the claim involves the same parties and arises out of the same transaction or series of transactions as the first claim.").

Although "a main purpose behind the rule preventing claim splitting is to protect the defendant from being harassed by repetitive actions based on the same claim," Defendant did not raise the issue of Plaintiff's other pending lawsuits before the Court entered its Judgment in the earlier filed case. *Matter of Super Van Inc.,* 92 F.3d 366, 371 (5th Cir. 1996). This may very well constitute the "dishonest (or at least less than forthright) behavior to gain tactical advantage" which is, in fact, discouraged by the Fifth Circuit's principles on claim-splitting. *Id.*

There is nothing in the record that would support Defendant's argument that Plaintiff's multiple lawsuits waste judicial resources.[5]  Moreover, at least as to the suits pending before the

---

[5] Nothing about this Court's findings herein should be construed to mean that this Court would condone the filing of 110 separate lawsuits, if they arise from a common nucleus of operative fact. Such would be a waste of judicial resources. The Court's analysis here is limited to whether this case should be dismissed on the pleadings alone. The allegations before the Court are simply insufficient to make such a finding at this time.

undersigned, Defendant did not, and has not, requested consolidation of any of the suits it now contends arise from the same nucleus of operative facts. *See* FED. R. CIV. P. 42 (permitting consolidation of actions involving "a common question of law or fact.").

Finally, Defendant argues that the Court should issue an injunction barring Plaintiff from filing future lawsuits based on phone calls made before the date Plaintiff filed his first lawsuit against Midland. "In determining whether it should impose a pre-filing injunction or should modify an existing injunction to deter vexatious filings, a court must weigh all the relevant circumstances, including the following four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 189 (5th Cir. 2008). Because the Court declines to find that the lawsuits, as a matter of law, arise from the same nucleus of operative facts, there is nothing before the Court at this time that would indicate any "vexatious, harassing, or duplicative" conduct by Plaintiff. In any event, it seems to the Court that, if Defendant stopped calling Plaintiff, Plaintiff would stop filing suits against it.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends Defendant Midland Credit Management, Inc's Motion for Judgment on the Pleadings (Dkt. #13) be **DENIED.**

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

8

specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of November, 2014.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE

# Exhibit 9



Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

February 27, 2012

**VIA ELECTRONIC DELIVERY**

Marlene H. Dortch, Secretary
Federal Communications Commission
445 12th Street, SW
Room TWA325
Washington, DC  20554

Re:     Notice of *Ex Parte* Presentation
        CG Docket No. 02-278

Dear Ms. Dortch:

On Thursday, February 23, 2012, J. Brandon Black, President and Chief Executive Officer of Encore Capital Group, Inc. ("Encore"), along with Michele C. Farquhar and Mark W. Brennan of Hogan Lovells US LLP, counsel to Encore and Midland Credit Management, Inc. ("Midland"), a subsidiary of Encore, met with Mark Stone, Mike Jacobs, Kurt Schroeder, and Karen Johnson of the Consumer & Governmental Affairs Bureau regarding the Telephone Consumer Protection Act ("TCPA") and issues related to the use of predictive dialers.

During the meeting, the Encore and Midland representatives expressed support for Commission efforts to promote innovation and examine whether predictive dialers used for non-telemarketing purposes should be considered "automatic telephone dialing systems" (or "autodialers") under the TCPA.  As described in more detail in the attached presentation that was distributed at the meetings, the representatives explained that the predictive dialers in use today provide significant benefits to businesses and consumers, such as:

- Protecting consumers from improper calls, including by restricting calls to certain numbers, certain individuals, certain hours, a certain number of times per telephone number, and a certain amount of time between calls;

- Allowing businesses with a legitimate need to contact a large number of specific consumers to do so accurately and efficiently;

- Promoting compliance with other statutes and regulations;

- Avoiding the risk of human dialing error; and

- Reducing costs for consumers and businesses.

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.  Hogan Lovells refers to the international legal practice comprising Hogan Lovells US LLP, Hogan Lovells International LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses with offices in: Abu Dhabi  Alicante  Amsterdam  Baltimore  Beijing  Berlin  Boulder  Brussels  Caracas  Chicago  Colorado Springs  Denver  Dubai  Dusseldorf  Frankfurt  Hamburg  Hanoi  Ho Chi Minh City  Hong Kong  Houston  London  Los Angeles  Madrid  Miami  Milan  Moscow  Munich  New York  Northern Virginia  Paris  Philadelphia  Prague  Rome  San Francisco  Shanghai  Silicon Valley  Singapore  Tokyo  Warsaw  Washington DC  Associated offices: Budapest  Jeddah  Riyadh  Zagreb

Marlene H. Dortch, Secretary                    - 2 -                    February 27, 2012

In addition, the representatives discussed technical issues related to predictive dialers, including whether such equipment sold today includes the capacity to generate or dial random or sequential numbers.

       The representatives also explained that allowing the use of predictive dialers for non-telemarketing purposes would not lead to an increase in the number of calls that consumers receive or impose additional costs on consumers, as callers can already make calls to those same consumers today through manual dialing.  Moreover, now that almost one-third of all households only have wireless telephones (with that number expected to continue rising), blanket restrictions on calls to those telephone numbers are hindering innovation and significantly limiting the ability of companies to provide service to their customers and contact their accountholders.  Finally, the representatives highlighted the skyrocketing number of TCPA claims and class actions involving alleged autodialer use, adding that TCPA class actions are increasingly targeting predictive dialer use.

       The representatives described several actions that the Commission could take to distinguish predictive dialers from autodialers for purposes of TCPA regulation.  For example, the Commission could eliminate predictive dialers that lack the capacity to generate or dial random or sequential numbers from the autodialer restriction.  It could also find that, for predictive dialers that have the capacity to generate or dial random or sequential numbers, such dialers should not be treated as autodialers unless the caller actually uses the capacity to generate or dial random or sequential numbers.  In addition, the Commission could revise the definition of "automatic telephone dialing system" and "autodialer" in its rules and add a new definition of "predictive dialer," as previously described by Encore.[1]

       Pursuant to Section 1.1206(b) of the Commission's rules, I am filing this notice electronically in the above-referenced dockets.  Please contact me directly with any questions.

Respectfully submitted,

/s/ Michele C. Farquhar

Michele C. Farquhar
Counsel to Encore Capital Group, Inc. and
Midland Credit Management, Inc.
Partner
michele.farquhar@hoganlovells.com
D 1+ 202 637 5663

cc:    Mark Stone
       Mike Jacobs
       Kurt Schroeder
       Karen Johnson

---

[1] See Ex Parte filing by Midland Credit Management, Inc. and Encore Capital Group, Inc., CG Docket No. 02-278, at 2 (filed Sept. 22, 2011).



# The Need to Reexamine the Regulation of Predictive Dialers Under the TCPA

Encore Capital Group, Inc. and Midland Credit Management, Inc.

FCC Meeting
February 23, 2012



There is an urgent need for the FCC to examine whether predictive dialers should always be considered "automatic telephone dialing systems" ("autodialers") under the Telephone Consumer Protection Act ("TCPA").

# Overview

- Introduction
- Background on the TCPA, autodialers, and predictive dialers.
- The confusion caused by the FCC's 2003 and 2008 decisions.
- The benefits of today's innovative predictive dialers.
- Changed circumstances since the FCC's 2003 and 2008 decisions.
- Solution

# Introduction

- Encore has a birds-eye view of how technology is improving our economy and our society.

  **In our business, <u>innovation</u> is everything.**

- Encore supports the FCC's efforts to make new technologies available to more consumers and businesses, thereby expanding economic and educational opportunities.
- Encore also supports the FCC's recent Robocall Report and Order, which affirms that the FCC does not want to discourage informational calls to consumers.

# Background on the TCPA

- Congress enacted the TCPA specifically to curb aggressive <u>telemarketing</u> practices.
  - Using automatic dialing equipment to make hundreds of thousands of unsolicited calls to random or sequential telephone numbers.
  - Calling sequential telephone numbers in a way that ties up a block of telephone numbers and creates public safety risks.
- The TCPA was not intended to restrict businesses from placing informational and other non-telemarketing calls to their customers and accountholders, including on their wireless telephones.

# Background on Autodialers and Predictive Dialers

- The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."
  - The TCPA restricts autodialed calls to wireless telephone numbers.
- A "predictive dialer" includes equipment that dials telephone numbers in a manner that predicts the time when a consumer will answer the telephone and an agent of the caller will be available to take the call.

# The FCC's TCPA Decisions Have Created Confusion

- The FCC has distinguished between autodialed telemarketing calls and the use of predictive dialers for non-telemarketing calls.
- In the 2003 TCPA Order and 2008 Declaratory Ruling, however, the FCC determined that some predictive dialers are considered autodialers, creating confusion in the industry.
- The decisions have also resulted in skyrocketing class action litigation.
- The regulatory confusion / litigation environment is harming businesses <u>and</u> consumers.

# The Benefits of Today's Predictive Dialers

- Predictive dialers are used to place a variety of non-telemarketing calls
  - Examples include appointment reminders, fraudulent activity / potential identity theft checks, payment confirmations, data security breach notifications, and pending insurance lapse courtesy calls.
  - The FCC recognized the value of these informational calls in the recent Robocall Report and Order.

# The Benefits of Today's Predictive Dialers (cont'd)

- Promote consumer privacy.
- Protect consumers against improper calls and manual dialing errors.
- Increase productivity
- Lower costs for consumers.
- Facilitate regulatory compliance with Federal and State laws regarding consumer calls.

# Circumstances Regarding Predictive Dialers Have Changed

- Predictive dialers are increasingly used for non-telemarketing purposes and are not used to generate or dial random or sequential numbers.
  - Encore and other companies that use predictive dialers to reach consumers have absolutely no need to generate or dial random or sequential numbers (nor can they benefit from such dialing).
- The current generation of predictive dialers are far more sophisticated devices than traditional autodialers and do not have the ability to generate or dial random or sequential numbers.
  - Under the FCC's current approach, even a typical smartphone could be considered an "autodialer."

# Circumstances Regarding Predictive Dialers Have Changed (cont'd)

- There has also been a dramatic shift in the use of wireless telephones over the last decade (recognized by the FCC in its recent Robocall decision).

  - Today, wireless service is so inexpensive and accessible that it has replaced landline service for one-third of the U.S. population

  - Consumers can easily "port" their wireline number to their wireless device.

# The Solution

**The Commission should clarify that predictive dialers may be used for non-telemarketing purposes, especially when they are not used to generate or dial random or sequential numbers.**

# www.hoganlovells.com

Hogan Lovells has offices in:

| | | | | |
|---|---|---|---|---|
| Abu Dhabi | Colorado Springs | Houston | New York | Silicon Valley |
| Alicante | Denver | Jeddah* | Northern Virginia | Singapore |
| Amsterdam | Dubai | London | Paris | Tokyo |
| Baltimore | Dusseldorf | Los Angeles | Philadelphia | Ulaanbaatar* |
| Beijing | Frankfurt | Madrid | Prague | Warsaw |
| Berlin | Hamburg | Miami | Riyadh* | Washington DC |
| Brussels | Hanoi | Milan | Rome | Zagreb* |
| Budapest* | Ho Chi Minh City | Moscow | San Francisco | |
| Caracas | Hong Kong | Munich | Shanghai | |

"Hogan Lovells" or the "firm" refers to the international legal practice comprising Hogan Lovells International LLP, Hogan Lovells US LLP, Hogan Lovells Worldwide Group (a Swiss Verein), and their affiliated businesses, each of which is a separate legal entity. Hogan Lovells International LLP is a limited liability partnership registered in England and Wales with registered number OC323639. Registered office and principal place of business: Atlantic House, Holborn Viaduct, London EC1A 2FG. Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia.

The word "partner" is used to refer to a member of Hogan Lovells International LLP or a partner of Hogan Lovells US LLP, or an employee or consultant with equivalent standing and qualifications, and to a partner, member, employee or consultant in any of their affiliated businesses who has equivalent standing. Rankings and quotes from legal directories and other sources may refer to the former firms of Hogan & Hartson LLP and Lovells LLP. Where case studies are included, results achieved do not guarantee similar outcomes for other clients. New York State Notice: Attorney Advertising.

© Hogan Lovells 2011. All rights reserved.

* Associated offices

# Exhibit 10

Case 3:11-md-02286-MMA-MDD   Document 237   Filed 07/15/15   Page 97 of 97

FAQs    Forms    Contact

HOME    WHO IS MCM?    ARE YOU A CUSTOMER?    HELP CENTER    PAYMENT OPTIONS    MAKE A PAYMENT

Search

## Help Center

Help Center Wizard

Tools and Resources

Frequently Asked Questions

## Contact Us

Talk to an Account Manager

Zip Code 

Or Call

# 877.240.2377

Get started on a
Personal Payment Program

 MCM & Encore
Capital enacts
industry-first
Consumer Bill of
Rights.

English | En Español

## Phone Calls from MCM

It is important that our customers get their questions answered and so we've developed this handy set of FAQs to our customers better understand what we do and how we can help.

About    Payment    Assistance & Validation    **Phone Calls**

### Who is calling me from 855-789-8625?

Midland Credit Management communicates with our customers via letters and phone calls. If you received a phone call from 855-789-8625, 855-798-4722, 855-789-8625, 855-967-7399, 855-877-4328, 855-891-8849, 855-808-0414, 855-798-4722, 855-789-8625, 877-411-5551, 866-580-4780, 877-237-0512, 800-265-8825, 866-927-7380, 877-411-6748, 877-822-9054, or 877-236-7498, MCM is trying to contact you regarding a personal business matter. Please call us back at your earliest convenience or register for online account management.

LEARN MORE ABOUT MCM        🔒 LOOK UP YOUR ACCOUNT

### How can I stop getting phone calls?

*Please understand that this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.



8875 Aero Drive, Suite 200, San Diego, California 92123 | Call 877.240.2377
© Midland Credit Management, Inc. All Rights Reserved. Privacy Policy and State Disclosures

Encore Capital Group is a Certified
Professional Receivables Company
(C1312-1009)

➕ GOT FEEDBACK?