Douglas J. Campion (SBN 75381)
THE LAW OFFICES OF DOUGLAS J. CAMPION, APC
17150 Via Del Campo,  Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Email:  doug@djcampion.com

James O. Latturner
EDELMAN COMBS LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone: (312) 739-4200
Email:  info@edcombs.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | Case No. 11-md-2286-MMA (MDD)<br>Member cases: 10-cv-02261<br>10-cv-02600<br>10-cv-02368<br>10-cv-02370<br>**CLASS ACTION**<br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: December 8, 2015<br>Time: 2:00 p.m.<br>Courtroom:  3A<br>Judge Michael M. Anello |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.  Introduction  ...................................................................................1

II. Statement of Facts ...........................................................................2

    A. Factual Background.....................................................................2

    B. Proceedings to Date ...................................................................3

    C. Consent Order ............................................................................3

III. The Settlement ...............................................................................4

    A. The Class ....................................................................................4

        1. The Definition of the Settlement Class................................4

        2. The Two Categories of Settlement Class Members ..............5

            a. The Direct Mail Notice Group ....................................5

            b. The Publication Notice Group ....................................5

    B. Cash and Credit Settlement Fund ..............................................6

        1. The Cash Component of the Settlement Fund .......................6

        2. The Credit Component of the Settlement Fund .....................7

        3. Payment of Costs of Notice and Claims Administration........7

        4. Payment of Attorneys' Fees and Costs of
           Litigation to Plaintiffs' Counsel...............................................8

    C. The Class Notice ........................................................................8

    D. The Claims Process ..................................................................10

        1. Filing a Claim.....................................................................10

        2. Determining if the Claim is a Cash Component
           Or Credit Claim...................................................................10

        3. Notification of Credit Component Group Members
           And Opportunity to Contest Inclusion.................................11

    E. Opportunity to Opt Out and Object ..........................................11

    F. Scope of Release ......................................................................12

    G. Termination of Settlement.........................................................12

    H. Payment of Notice and Administrative Costs by Defendants ........12

I. Class Representatives' Incentive Awards .......................................... 13

J. Attorneys' Fees and Litigation Expenses ........................................ 13

K. *Cy Pres* Distribution .................................................................... 13

IV. Argument ......................................................................................... 13

   A. Legal Standards for Preliminary Approval of a Class
   Action Settlement ............................................................................ 13

   B. The Proposed Settlement is Fair, Reasonable and
   Adequate and Should be Preliminarily Approved – Liability
   Is Highly Contested and Both Sides Face Significant Challenges
   In Litigating this Case .................................................................... 15

      1. The Settlement Benefits The Class Because Defendants
      Are Accepting the Class Members' Representations About
      Consent and Thereby Tacitly Waiving Any Defense Based
      On Consent As To Settlement Class Members ......................... 15
      2. The Settlement Provides Relief To Settlement Class
      Members for Whom Individual Suits Would Not Be
      Economical .............................................................................. 16

   C. This Settlement With a Value of In Excess of $20 Million
   Provides a Fair and Substantial Benefit to the Class ...................... 17

   D. The Settlement Was Reached As The Result of Arms'-
   Length Negotiation, Without Collusion, With the
   Assistance of an Experienced Mediator ........................................... 20

   E. Experienced Counsel Have Determined That the
   Settlement is Appropriate and Fair to the Class .............................. 21

   F. The Class Should be Preliminarily Certified for Settlement
   Purposes ......................................................................................... 22

   G. The Proposed Method of Class Notice is Appropriate ................ 22

   H. The Court Should Appoint Plaintiffs as the Class
   Representatives and Co-Lead Counsel as Class Counsel ................ 24

   I. The Court Should Appoint KCC as the Claims Administrator ...... 25

   J. A Final Approval Hearing Should be Scheduled .......................... 25

V. Conclusion ......................................................................................... 25

# Table Of Authorities

**Cases**

*Couser v. Apria Healthcare, Inc.*,
     13-cv-00035-JVS-RNB, (C.D. Cal. Oct. 27, 2014) ............................18

*Cullen v. Whitman Medical Corp.*,
     197 F.R.D. 136, 143 (E.D. Pa. 2000) ..................................................18

*Eovaldi v. First Nat'l Bank*,
     57 F.R.D. 545 (N.D. Ill. 1972) ...........................................................16

*Follansbee v. Discover Fin. Serv., Ltd.*,
     No. 99 C 3827, 2000 WL 804690, at *5 (N.D. Ill. June 21, 2000).....18

*Fox v. Asset Acceptance, LLC,*
     14-cv-734-GW (FFMx)  (C.D.Cal. Aug. 17, 2015) ............................19

*Gutierrez v. Barclays Group*,
     3:10-cv-01012-DMS-BGS (S.D. Cal. March 12, 2012) ....................18

*Hanlon v. Chrysler Corp.,*
     150 F.3d 1011 (9th Cir. Cal. 1988) ..............................................14, 22

*Haynes v. Logan Furniture Mart, Inc.*,
     503 F.2d 1161, 1165 (7th Cir. 1974)..................................................16

*In re Folding Carton Antitrust Litigation*,
     75 F.R.D. 727, 732 (N.D. Ill. 1977) ...................................................17

*In re Global Crossing Sec. and ERISA Litig.*,
     225 F.R.D. 436, 460 (E.D. Pa. 2000) .................................................20

*In re Lloyd's Am. Trust Fund Litig.*,
     2002 U.S. Dist. LEXIS 22663, 45 (S.D.N.Y. Nov. 26, 2002) ............18

*In re Omnivision Tech., Inc.*,
     559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) ..................................20

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.,*
     163 F.R.D. 200 (S.D.N.Y. 1995).........................................................14

*In re Wireless Facilities, Inc. Sec. Litig. II*,

253 F.R.D. 607 (S.D. Cal. 2008)....................................................21, 22

*Kirkorian v. Borelli*,

695 F. Supp. 446 (N.D. Cal.1988) .....................................................15

*Lake v. First Nationwide Bank*,

156 F.R.D. 615, 628-629 (E.D.Pa 1994)............................................17

*Lerwill v. Inflight Motion Pictures, Inc.*,

582 F.2d 507, 512 (9th Cir. 1978).......................................................24

*Linney v. Cellular Alaska P'ship*,

151 F.3d 1234 (9th Cir. 1998)............................................................14

*Mullane v. Central Hanover Bank & Trust Co.*,

339 U.S. 306 (1950) ...........................................................................22

*National Rural Tele. Coop. v. DIRECTV, Inc.*,

221 F.R.D. 523 (C.D. Cal. 2004) .......................................................19

*Officers for Justice v. Civil Service Comm'n*,

688 F.2d 615 (9th Cir. 1982)..............................................................14

*Pepper v. Midland Credit Management, Inc.*,

37-2011-00088752-CU-BT-CTL (Cal. Superior Ct.,

San Diego, Sept. 9, 2013).................................................................18

*Pigford v. Glickman*,

185 F.R.D. 82, 109 (D. D.C. 1999).....................................................18

*Hurwitz v. R.B. Jones Corp.*,

76 F.R.D. 149 (W.D.Mo. 1977) .........................................................16

*Scholes v. Stone, McGuire & Benjamin*,

143 F.R.D. 181, 189 (N.D. Ill. 1992) ..................................................16

*Silber v. Mabon*,

18 F.3d 1449, 1454 (9th Cir. 1994).....................................................22

*Utility Reform Project v. Bonneville Power Admin*,

869 F.2d 437 (9th Cir. 1989)...............................................................14

*West Virginia v. Chas. Pfizer & Co.,*

    440 F.2d 1079 (2d Cir. 1971)..........................................................14

*Ybarrondo v. NCO Financial Systems, Inc.,*

    05-cv-02057-L-JMA (S.D. Cal.Oct. 8, 2009)......................................19

**Statutes**

28 U.S.C § 1715(b)...............................................................................22

47 U.S.C § 227 *et seq*......................................................................3, 12

California Civil Code § 1542.................................................................12

**Rules**

Fed. R. Civ. P. 23..................................................................................2

Fed. R. Civ. P. 23(b)(3).........................................................................2

Fed. R. Civ. P. 23(c)(2)(B)..............................................................22, 23

Fed. R. Civ. P. 23(e)............................................................................13

Fed. R. Civ. P. 23(e)(1)(B)...................................................................23

**Other**

4 Herbert B Newberg, *Newberg on Class Actions*

    (4th ed. 2002 and Supp. 2004) § 11.25 *et seq*, §13.64................13, 14

S. REP. NO. 102-178, at 6 (1991),

    as reprinted in 1991 U.S.C.C.A.N. 1968, 1973..................................20

Manual for Complex Litigation (4th ed. 2004) § 21.63 *et seq*....................13

Manual for Complex Litigation (4th ed. 2004) § 21.632 ........................13, 15

Manual for Complex Litigation (4th ed. 2004) § 21.633 .............................13

Manual for Complex Litigation (4th ed. 2004) § 21.634 .............................13

*Newberg on Class Actions* § 8:29 (5th ed.) ....................................22

5 James Wm Moore, *5 Moore's Fed. Prac.* (3d ed. 2001) §23.165[3]........14

## I.   **INTRODUCTION**

Plaintiffs Christopher Robinson, ("Robinson"), Eduardo Tovar ("Tovar"), and Dave Scardina ("Scardina") (collectively "Plaintiffs"), move   for preliminary approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by defendants Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. ("Encore") (collectively referred to as "Defendants").[1] The terms [2] of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") attached as Exhibit 1 to the Declaration of Douglas J. Campion In Support of Motion for Preliminary Approval ("Campion Decl.") filed herewith.

The Settlement provides the following benefits to the Class:

1.  $13,0000,000 Credit Component, with pro rata credits to be credited to the Approved Claimants with outstanding balances on their present collection accounts with Defendants, reducing the amounts owed to Defendants.

2.  $2,000,000 Cash Component, with pro rata cash payments to be paid to the Approved Claimants that either never had a collection account with Defendants, or if they did, they presently have a zero balance.

3.  All costs of Notice and Claims Administration presently estimated to be between $3,098,608 and $3,352,407, based on estimated claims rates of 1% and 5%, respectively, paid by Defendants. Administration costs include the cost of direct-mail Postcard Notice to approximately 6,156,500 persons, publication and internet banner notice to the remainder of the Settlement Class, estimated to be an additional 35 million persons.

4.  Attorneys' fees and costs of litigation to be paid by Defendants to Plaintiffs' counsel, subject to Court approval, in the amount of up to $2,400,000.

Thus, the Settlement has a value of at least $20 million.

---

[1] Plaintiffs and Defendants are referred to collectively as "the Parties".
[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

The Settlement, which was negotiated over a period of thirty months, resulted from approximately eleven mediation sessions with Judge Herbert Hoffman (Ret.), additional negotiations between the Parties, informal discovery and formal confirmatory discovery, including interrogatories, document requests and a Rule 30(b)(6) deposition.

While Plaintiffs are confident of a favorable determination on the merits, they have determined that the proposed Settlement provides significant benefits to, and is in the best interests of, the Settlement Class. Plaintiffs also believe that the Settlement is appropriate in light of the expense and time required to pursue the Litigation, as well as the uncertainty, risk, and difficulties of proof inherent in prosecuting claims like those asserted by Plaintiffs. Similarly, as evidenced by the Agreement, Defendants believe they have substantial and meritorious defenses to Plaintiffs' claims, but nonetheless have determined that it is desirable to settle the Litigation on the terms set forth in the Agreement.

Accordingly, Plaintiffs move the Court for an order preliminarily approving the proposed Settlement as fair, adequate and reasonable, and within the range of possible final approval and provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) for settlement purposes. Plaintiffs seek confirmation that previously appointed Plaintiffs' Interim Co-Lead Counsel may continue to serve as Co-Lead Counsel for the Class for settlement purposes. Plaintiffs seek Court approval of the Notice program, and that it constitutes the best notice practicable under the circumstances, and satisfies due process, Rule 23, and other applicable law. Lastly, Plaintiffs seek an Order setting the date and time for the Final Approval Hearing, and setting Claims, Objection and Opt-Out deadlines.

## II.   STATEMENT OF FACTS

### A.   Factual Background

Defendants or their subsidiaries were at all relevant times, and in particular between November 2, 2006 through August 31, 2014, inclusive (the "Class

Period"), involved or engaged in the business of purchasing debts owed, or allegedly owed by consumers, and attempting to collect them. In this suit, Plaintiffs allege that, in their efforts to collect debts from consumers, Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.,* ("TCPA"), by calling cellular telephones without "prior express consent," using an "automatic telephone dialing system" and/or using an "artificial or prerecorded voice," and that Plaintiffs are entitled to statutory damages. Defendants have denied and continue to deny that they violated the TCPA.

### B.   <u>Proceedings to Date</u>

On November 2, 2010 and December 17, 2010 respectively, Plaintiffs Robinson and Tovar filed actions against Defendants in this Court. On May 11, 2011, Plaintiff Scardina filed an action against Defendants in the United States District Court for the Northern District of Illinois. The complaints in all three actions alleged that Defendants violated the TCPA.  Campion Decl. ¶ 2.

On October 11, 2011, Plaintiffs' actions were transferred to this Court for coordinated or consolidated pretrial proceedings. (Dkt. No. 1.) On March 13, 2012, the Court appointed Interim Co-Lead Counsel and Liaison Counsel. (Dkt. No. 21.) On July 11, 2013, Plaintiffs filed a Consolidated Complaint (Dkt. No. 23) which Defendants answered on August 17, 2012. (Dkt. No. 27.) On December 3, 2012, Defendants filed a Motion to Stay on Primary Jurisdiction Grounds (Dkt. No. 40) which, after briefing and oral argument, the Court denied on January 7, 2013. (Dkt. No. 45.)  *Id.* ¶ 3. Subsequent to that ruling, the Parties began protracted settlement discussions with the assistance of mediator Judge Herbert B. Hoffman (Ret.) of Judicate West, resulting in a settlement, approximately thirty months later. *Id.*

### C.  <u>Consent Order</u>

On September 9, 2015, the U.S. Consumer Financial Protection Bureau ("CFPB") entered a consent order ("Consent Order"), 2015-CFBB-0022, with, *inter alia*, the Defendants in this case, MCM, Midland Funding and Encore.  The

Consent Order requires Defendants to cease and desist in certain practices relating to their debt collection practices.   After investigation, Plaintiffs' counsel have concluded that the Consent Order will have little or no impact on the settlement because Defendants have represented the accounts of identified class members in the Notice List total only 11,557 out of the 6,156,500 identified class members are affected by the Consent Order (.0018772029%).  Campion Decl. ¶ 22.

### III.   THE SETTLEMENT

### A.   THE CLASS.

#### 1.   The Definition Of The Settlement Class.

The terms "Class", "Class Members", or "Settlement Class" are defined in the Agreement, § 2.10 (a), as follows:

> The Settlement Class consists of all persons in the United States who were called on a cellular telephone by Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) in connection with the collection of an alleged debt using a dialer or by artificial or prerecorded voice message without prior express consent during the period from November 2, 2006 through August 31, 2014, inclusive.[3]

There are a total of approximately 41 million persons in the Settlement Class, with approximately 6,156,500 persons in the Settlement Class that have been identified as members of the Class that will be mailed personal, direct mail Notice as detailed below. Agreement, §8.04. Telephone numbers that may have been used by the approximately 41 million persons in the Settlement Class are listed in a searchable database containing every cell phone number called by Defendants during the Class Period ("the Cellphone Number List") to be provided to the Claims Administrator. Agreement, §§8.03-8.04. The method of determining Class membership and those getting Direct Mail Notice was confirmed by Plaintiffs'

---

[3] Excluded from the Settlement Class are the Judges to whom this Litigation is assigned, any member of the Judges' staffs and immediate families, and any person who validly requests exclusion from the Class. Agreement, §2.10 (b).

counsel as sufficient during the confirmatory discovery process. Campion Decl. ¶¶ 11, 13, 21. Also as part of the Settlement process, and as part of the confirmatory discovery process, an independent third party, CompliancePoint, was hired to analyze that entire database of numbers to confirm 1) the number of numbers on the list, and 2) how many of the called numbers were in fact cellphone numbers. Agreement, § 5.04. (The cost is to be paid for by Defendants as part of the cost of Claims Administration.)   CompliancePoint's report confirmed that there were 41,892,483 numbers but of that amount, 172,021 were not cellphone numbers, reducing the number of cell phone numbers on their list to approximately 41,720,462, a number within less than 1% of the number represented by Defendants as having been called. Campion Decl. ¶ 12.   Therefore, Plaintiffs' counsel are satisfied that the number of cellphones called that make up the Class is accurate.

**2.      The Two Categories Of Settlement Class Members.**

The Settlement Class consists of two categories of persons: 1) Persons who were called by Defendants and can be identified from Defendants' records ("the Direct Mail Notice Group"); and 2) persons who were called by Defendants who cannot be identified from Defendants' records ("the Publication Notice Group"). The category in which any Settlement Class Member falls depends on whether Defendants' records identify them by name and address.

**a.      The Direct Mail Notice Group.**

Based on Defendants' records, there are approximately 6,156,500 members of this group and they will all be mailed personal, direct mail Notice. Agreement, §§ 2.26; 8.03-8.04; Campion Decl. ¶¶ 10, 12. The number of Settlement Class Members on the Notice List (the list of persons receiving direct-mail notice) was confirmed in written confirmatory discovery responses and in a confirmatory discovery Rule 30(b)(6) deposition.   Campion Decl., ¶¶ 13, 21.

**b.      The Publication Notice  Group.**

MOTION  FOR  PRELIM.
APPROVAL OF SETTLEMENT

The second category of persons in the Settlement Class contains of persons called by Defendants who are not on the Notice List. This group consists of Settlement Class Members for whom Defendants do *not* have a record that identifies them as receiving a call on a cell phone. These Settlement Class Members may or may not have, or had, any accounts with Defendants. Agreement, §2.06. There are approximately 35,279,415 such cellphone numbers on that list. The persons that own or have owned those numbers called during the Class Period will receive notice of the Settlement by Internet and Publication Notice. The amount of cellphone numbers called in this group was also confirmed in written confirmatory discovery responses and in a confirmatory discovery Rule 30(b)(6) deposition. Campion Decl., ¶¶ 10-13, 21. Therefore, Plaintiffs' counsel are satisfied with the process of determining Class membership and the number of Class members.

### B.      Cash and Credit Settlement Fund.

Under the Settlement, Defendants agree to pay or give credits to existing accounts in an amount of $15,000,000 to settle this lawsuit. That amount consists of a $2 million Cash Component and a $13 million Credit Component.

### 1.      The Cash Component Of The Settlement Fund.

The Cash Component of the Settlement Fund is chiefly for those Settlement Class Members who do not owe, or who do not believe they owe, Defendants any money. Agreement, §§ 5.02, 11.03. Each Settlement Class Member eligible to receive a share of the Cash Component of the Settlement Fund will receive a *pro rata* share; the amount of each Settlement Class Member's recovery will depend on the number of valid cash component claims that are submitted. There is no minimum or maximum amount that any Settlement Class Member is entitled to receive. Agreement, § 5.02.   The Cash Component is less than the Credit Component because the group to be covered by the Cash Component is estimated by Defendants to be approximately 10% of the persons on the Notice List. Campion Decl., ¶ 5. In addition to payments to Settlement Class Members, the

Cash Component will pay incentive payments to Plaintiffs ($2,500 each for a total of $7,500), and if necessary the fees and costs of a Special Master for any mediation services required in connection with the administration and implementation of the Settlement. Any portion of the $2 million Cash Component of the Settlement Fund from uncashed checks will be donated to one or more approved *cy pres* recipients. *Id*.; Agreement, §§ 5.02, 8.08, 11.04.

### 2. The Credit Component Of The Settlement Fund.

The Credit Component of the Settlement Fund is for those Settlement Class Members who Defendants believe have existing balances on one or more accounts for which Defendants are attempting to collect. Agreement, § 5.01. Each Settlement Class Member eligible to receive a share of the Credit Component of the Settlement Fund will receive a *pro rata* share of the Credit Component, the amount of which will depend on the number of approved Credit Component claims. *Id*. The recovery will be in the form of a credit on the account on which money is owed by the Settlement Class Member receiving a Credit Component amount. If such a Settlement Class Member has more than one account, the credit will go to the account with the smallest balance. *Id.* If the balance on the account with the smallest balance is less than the *pro rata* account credit, then the remaining portion of the credit will be applied to the account with the next highest balance. *Id.* If the amount of the *pro rata* account credit exceeds the balance of all of a Settlement Class Member's accounts, he or she is not entitled to any cash payment. *Id.* In determining whether a claimant has an outstanding balance on an account, Defendants may, but are not required to, disregard any amounts owed to Defendants for which Defendants have determined that they will not pursue collection efforts within a reasonable time. *Id.*

### 3. Payment of Costs of Notice and Claims Administration.

The Agreement requires Defendants to pay separately for all costs of Direct Mail Notice and Publication Notice and Claims Administration, and that estimate is

between $3,098,608 and $3,352,407, based on estimated claims rates of 1% to 5%. Agreement, §§ 8.06 – 8.07; Campion Decl. ¶ 7. Defendants' payment of administration costs is a value to the Class because otherwise those costs would be paid by and deducted from the Settlement Fund.

### 4. <u>Payment of Attorneys' Fees and Costs of Litigation to Plaintiffs' Counsel.</u>

In addition, Defendants agree to pay attorneys' fees and costs of litigation to Plaintiffs' counsel, subject to Court approval, in the amount not to exceed $2,400,000. Agreement, §§ 5.05, 6.01. That, too, is a value to the Settlement Class as otherwise counsel would be seeking payment of fees and costs from the Settlement Fund.  Thus, the Settlement has a value of at least $20 million.

### C. <u>The Class Notice</u>

As detailed in the "Settlement Notice Plan", Exhibit E to the Agreement, the Notice Plan to be administered by the Claims Administrator includes direct mail notice, publication of the notice in national consumer publications, internet banner ads strategically placed to maximize the dissemination of the Notice, a dedicated Settlement Website, a long form notice substantially in the form of Exhibit B to the Agreement, which, *inter alia*, will be posted on the Settlement Website, a press release, and a toll-free number to call to obtain more information about the Settlement. *See* Agreement, §§ 9.03-9.07 and Exhibits B, D-F to the Agreement and KCC's Declaration of Daniel Rosenthal Re Settlement Notice Plan and Notice Documents, ¶¶6-11 ("Rosenthal Decl.") filed herewith.

This Settlement Notice Plan has been developed by the Claims Administrator KCC based upon their many years of experience. Agreement, Ex. E, Rosenthal Decl. Notice of the Settlement will be disseminated by the forms of notice determined to best reach both the identified persons who are receiving Direct Mail Notice and the persons who will receive Publication Notice only. *See* analysis in the Settlement Notice Plan; as developed the notice is anticipated to reach

approximately 75.2% of likely Settlement Class members, on average 1.8 times each. *See* Agreement, Exhibit E, pp. 5-10; Rosenthal Decl. ¶ 28.

KCC will provide individual notice via direct mail by a Postcard Notice to the approximately 6,156,500 Direct Mail Notice Class Members. Agreement, §9.01, Exhibit C, Exhibit E at 11; Rosenthal Decl. ¶ 17. That postcard Notice summarizes the terms of the Settlement, instructs how to make a claim, how to opt out or object, and directs the recipient to a toll-free telephone number and a website, www._____.com, to obtain more information about the Settlement. Agreement, Exhibit C. Before mailing the postcard Notice, the Claims Administrator will obtain updated addresses from the United States Postal Service's National Change of Address database. To attempt to further reach the Class Members, the Claims Administrator will re-mail notices that are returned as undeliverable that contain a forwarding address and will undertake a reasonable search to locate current addresses for persons whose notices are simply returned undeliverable. Agreement, § 9.01. Rosenthal Decl. ¶¶ 17-18.

Publication Notice of the Settlement will be disseminated pursuant to the Settlement Notice Plan developed by KCC, Exhibit E; Rosenthal Decl. ¶¶ 19-22. That notice will include the publication and internet banner notice, all intended and calculated to reach the approximately 35 million persons whom Defendants called but whose identities are unknown. Notice of the Settlement will be disseminated in national consumer publications including Cosmopolitan, People, Reader's Digest and National Geographic, which have adult audiences ranging from over 16 million persons (Cosmopolitan) to over 42 million persons (People). *Id*., *see* Agreement, Exhibit E, pp. 12-13.  A press release will be issued and disseminated to further disseminate notice of the Settlement and to facilitate internet searches about the Settlement. See Agreement, Ex. F. As set forth in Exhibit E, Settlement "Notice Plan" prepared by KCC, pp. 5-10 and the Rosenthal Decl. ¶ 28, KCC's Notice Plan is expected to reach 75.2% of Class Members, on average 1.8 times each. That is

MOTION FOR PRELIM.
APPROVAL OF SETTLEMENT

sufficient to meet Ninth Circuit requirements, as detailed below.

### D.   The Claims Process.

#### 1.   Filing a Claim.

Settlement Class Members shall have 90 days from the beginning of the notice period to submit claims. Agreement, § 7.02. A claim can be submitted by calling a toll-free number, submitting a claim online at the Settlement Website, or by submitting a completed Claim Form that is downloaded from the Settlement Website to the Claims Administrator by mail or otherwise. Agreement, § 10.02. Settlement Class Members can submit only one claim regardless of the number of accounts they may have or regardless of the number of times they were called by Defendants. Agreement, §§ 10.01, 10.03. If any person believes they were called by Defendants, but are not identified in Defendants' records and therefore did not receive a Notice Postcard, they can easily check with the Claims Administrator to determine if their cell phone number is on the Cell Phone Number List. Agreement, § 10.03.  If it is, they can make a claim, as detailed below.

A person is deemed an "Approved Claimant" by the Claims Administrator if he or she submits a claim and is either (1) a person who received the Postcard Notice with a Claim Identification number; or (2) a person who did *not* receive Direct Mail Notice but his or her cell phone number was called by Defendants and the cell phone number is contained on the Cell Phone Number List, the list of all the numbers called by Defendants during the Settlement Class Period. *Id*.  By filing a claim, the claimants are acknowledging that they were called without consent, as per the claim instructions.

#### 2.   Determining if the Claim is a Cash Component or Credit Claim.

If an Approved Claimant has no existing account with Defendants, that Claimant will receive a portion of the Cash Component, on a pro rata basis. Agreement, §§10.03; 11.02. In order to determine which claims are to be included

in the Cash Component Group or the Credit Component Group, the Claims Administrator will provide the Defendants with the Approved Claims as received on a rolling basis during the Claims Period. The Defendants will then determine from their records whether the Approved Claimants have an existing account with Defendants and will so advise the Claims Administrator as expeditiously as they are able, with the goal of expediting the claims process and the Court approval process by having the analysis as complete as possible by the end of the Claims Period. If there is an existing account for the Approved Claimant, that Approved Claimant will receive a credit from the Credit Component portion, on a pro rata basis.

### 3.   Notification of Credit Component Group Members and Opportunity to Contest Inclusion.

The Claims Administrator will notify by mail each of the Credit Component Approved Claimants and advise them that Defendants have an existing account for them, that they will be receiving a credit, and the approximate range of the estimated amount of such credit. Agreement, § 11.03.That notice will also advise the Approved Claimant that he or she may dispute whether he or she owes money to Defendants, and the deadline by which to communicate that dispute. Agreement, § 11.03. Any Approved Claimant who fails to contest the receipt of an account credit within the applicable time period (14 days from the date of mailing of the Claims  Administrator's letter) shall be conclusively determined to be entitled to a pro rata share of the Credit Component, and not a share of the Cash Component, of the Settlement Fund. Any Approved Claimant who, within the 14 day period, avers in good faith that they do not believe they have an existing account with Defendants shall receive a *pro rata* share of the Cash Component. Agreement § 11.03.

### E.   Opportunity to Opt Out and Object.

Settlement Class members have the right to opt out of the Settlement Class or to object to the terms of the Settlement. Agreement, §§ 12.01, 12.02.  The Direct Mail Notice, the Q & A Notice on the Settlement Website, and information

-11-

available by calling the Toll-Free Number, will inform Settlement Class members of these rights. Agreement, Exs. B and C.

### F.    Scope of Release.

Settlement Class Members (those who do not opt-out of the Settlement) release claims related to calls using an "automatic dialing system or an "artificial or prerecorded voice" as asserted in the Consolidated Complaint Agreement , § 16.01.[4] The release also covers "any and all provisions, right and benefits, which [Plaintiffs and the Settlement Class] now have or in the future may be conferred to them by section 1542 of the California Civil Code." Agreement, § 16.02.

### G.    Termination of Settlement.

If more than 7,500 persons opt-out of the Settlement Class, then Defendants, in their sole discretion, have the right to terminate the Settlement. Agreement, §17.02.  In addition, if the Settlement is not finally approved by the Court or is materially modified in the course of approval proceedings, the Parties have the right to unilaterally terminate the Agreement. Agreement, § 17.01.

### H.    Payment of Notice and Administrative Costs by Defendants.

The Agreement provides that Defendants shall pay all costs of notice and administration of the Settlement. The estimated costs of Direct Mail Notice and establishing the claims administration procedures are to be deposited by Defendants into the Settlement Fund Account administered by the Claims Administrator, KCC,

---

[4] "Released Claims" means "any and all liabilities, claims, causes of action, damages, penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, suspected or unsuspected, which were asserted in the Action or are related to the claims asserted in the Action, any and all claims relating to the making, placing, dialing or initiating of calls using an automatic telephone dialing system or artificial or prerecorded voice, and all claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations promulgated thereunder or related thereto, and any and all claims for violation of any laws of any state that regulate, govern, prohibit or restrict the making, placing, dialing or initiating of calls using an automatic telephone dialing system, an artificial or prerecorded voice, or any automated process or technology." Agreement, § 16.01.

shortly after Preliminary Approval and the remainder paid monthly, with all costs paid no later than two weeks after the Effective Date. Agreement, § 8.06, 8.07.

### I.       Class Representatives' Incentive Awards.

The Settlement contemplates payment of $2,500 each to the three Class Representatives, subject to Court approval. Agreement, §§ 6.02-6.03. Defendants have agreed not to oppose a request for payment of such amounts. *Id.*

### J.       Attorneys' Fees And Litigation Expenses.

Subject to the Court's approval, the Settlement contemplates, and Defendants agree not to oppose, an award of attorneys' fees and litigation costs of up to $2,400,000 to be paid separate and apart from the Settlement Fund. Agreement, §§5.05; 6.01; Campion Decl. ¶23.

### K.       *Cy Pres* Distribution.

Any checks distributed from the Cash Component of the Settlement Fund which remain uncashed 180 days after they are issued shall be distributed to one or more *cy pres* recipients chosen by Settlement Class Counsel, agreed to by Defendants, and approved by the Court. Agreement, §§ 8.08, 11.04.

## IV.   ARGUMENT

### A.       Legal Standards for Preliminary Approval of a Class Action Settlement

A class action may not be dismissed, compromised or settled without the approval of the court. Fed. R. Civ. Proc. 23(e). As described in the *Manual for Complex Litigation* (Fourth) (Fed. Judicial Center 2004) ("*Manual*") § 21.63, *et seq.*, Rule 23 prescribes defined procedures and criteria for settlement approval in class action settlements, including preliminary approval, dissemination of notice to class members, and a fairness hearing. *Manual*, §§ 21.632, 21.633, 21.634.

The purpose of the Court's preliminary evaluation of a settlement is to determine whether it is within the "range of reasonableness," and, thus, whether disseminating notice to the class and scheduling a formal fairness hearing is merited. *See* 4 Herbert B. Newberg, *Newberg on Class Actions* § 11.25 *et seq.*, and

§ 13.64 (4th ed. 2002 and Supp. 2004). Preliminary approval does not require the Court to make an in-depth and final determination that a settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *See* 5 James Wm. Moore, *Moore's Federal Practice – Civil* § 23.165[3] (3d ed.). Thus, in considering a potential settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute, *West Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1086 (2d Cir. 1971), and need not engage in a trial on the merits. *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

The decision to approve or reject a proposed settlement "is committed to the sound discretion of the trial judge[.]" *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This discretion is to be exercised "in light of the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," because settlements minimize potentially substantial litigation expenses for both sides and conserves judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F. 3d 1234, 1238 (9th Cir. 1998) (quotations omitted); *Utility Reform Project v. Bonneville Power Admin.*, 869 F. 2d 437, 443 (9th Cir. 1989). *Officers for Justice,* 688 F.2d at 625. As a result, courts should exercise their discretion to approve settlements "in recognition of the policy encouraging settlement of disputed claims." *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

Preliminary approval of the settlement should be granted if there are no "reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." *Manual*, § 21.632, at 321.

Furthermore, the opinion of experienced counsel supporting the settlement is entitled to considerable weight in deciding whether to give preliminary approval to a settlement. *See., e.g.*, *Kirkorian v. Borelli*, 695 F.Supp. 446 (N.D. Cal.1988) (opinion of experienced counsel carries significant weight in court's determination of the reasonableness of the settlement).

Based on these standards, Plaintiffs respectfully submit that for the reasons detailed below, the Court should preliminarily approve the proposed Settlement as fair, reasonable and adequate.

**B.** **The Proposed Settlement Is Fair, Reasonable and Adequate and Should Be Preliminarily Approved -- Liability is Highly Contested and Both Sides Face Significant Challenges in Litigating this Case.**

Although both Plaintiffs and Defendants strongly believe in the merits of their respective positions, they are acutely aware of the uncertainties and risks associated with complex class action litigation generally and this case in particular. Plaintiffs and Class Counsel have carefully balanced the risks of continued protracted and contentious litigation, and potentially adverse rulings on class certification and the merits, against the benefits to the Class of the Settlement including the significant Settlement Fund. Campion Decl. ¶ 8; Declaration of James Latturner in Support of Preliminary Approval ("Latturner Decl.") ¶ 8. Similarly, Defendants recognize that if Plaintiffs succeed in both certifying a class and winning on the merits, the potential damages could be substantially higher than the Settlement agreed upon here. Because of the costs and risks to both sides, the Settlement presents a fair and reasonable alternative to continued litigation.

**1.** **The Settlement Benefits The Class Because Defendants Are Accepting the Class Members' Representations About Consent and Thereby Tacitly Waiving Any Defense Based On Consent As To Settlement Class Members.**

Defendants are tacitly waiving any defense that could be raised against that a Settlement Class Member consented to receive the calls at issue. Defendants collect

on many credit card accounts. Credit card agreements often provide that if the card is used, the cardmember is agreeing to be robocalled at any number that can be located for the cardmember. As the assignees of such an account, Defendants could raise the consent defense in those individual cases.  In addition, there are other ways of obtaining consent.

Here, in contrast, and as a benefit to Settlement Class Members, Defendants are agreeing to take class members at their word when they submit their claims and thereby acknowledge that they did not provide consent.   This removes consent as an issue and Settlement Class Members recover money or credits without having to contend with Defendants' consent defense.

### 2.    The Settlement Provides Relief To Settlement Class Members for Whom Individual Suits Would Not Be Economical.

Among other benefits, this case benefits Settlement Class Members who only received one or a very few calls. Where a Class Member has just received a handful of calls, an individual suit is not economically feasible; either no attorney will take the case or, if an attorney does take the case, most of any recovery would go to attorneys' fees and costs. Conversely, Settlement Class Members who received a significant number of calls are free to opt out of the Settlement Class.

Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 189 (N.D. Ill. 1992); *Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149 (W.D.Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165

MOTION  FOR  PRELIM.
APPROVAL OF SETTLEMENT

(7th Cir. 1974).

     In this case there is no better method available for the adjudication of the claims which might be brought by each individual debtor. The vast majority of debtors are undoubtedly unaware that their rights are being violated. In addition, persons from whom Defendants are attempting to collect allegedly delinquent debts are, by definition, unlikely to be able to pay to retain counsel to protect their rights on an individual basis.

     The special efficacy of the consumer class action has been noted by courts and is applicable to this case:

> A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit. This is particularly important where, as here, a large number of small and medium sized claimants may be involved. In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted). Another court noted:

> Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action. As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis. These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.' 7B Wright et al., §1778, at 59.

*Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628-629 (E.D.Pa 1994).

## C.   This Settlement With a Value In Excess of $20 Million Provides a Fair and Substantial Benefit to the Class.

     As set forth above in section III. B., Defendants have agreed to pay cash and allocate credits, pay costs of notice and claims administration and attorneys' fees and costs to settle this action. The amount Settlement Class members will directly

receive consists of a $15,000,000 Settlement Fund, divided into a $2 million Cash Component and a $13 million Credit Component. The $13 million Credit Component of the Settlement will distributed to members of the Settlement Class who were called by Defendants and who have accounts with Defendants with a positive balance. Agreement, § 5.01.

Debt forgiveness provides real value to the Class Members. "The courts often approve class action settlements that employ debt forgiveness and other non-cash benefits as all or part of the settlement consideration." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 45 (S.D.N.Y. Nov. 26, 2002) (citing *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 143 (E.D. Pa. 2000) (approving settlement providing cash, forgiveness of indebtedness of class members to defendants and other non-monetary relief); *Follansbee v. Discover Fin. Serv., Ltd.*, No. 99 C 3827, 2000 WL 804690, at *5 (N.D. Ill. June 21, 2000) (approving settlement providing cash and credits usable by some class members to pay down debt to defendant); *Pigford v. Glickman*, 185 F.R.D. 82, 109 (D. D.C. 1999) (approving settlement providing cash and forgiveness of debt owned by some class members), *aff'd*, 340 U.S. App. D.C. 420, 206 F.3d 1212 (D.C. Cir. 2000).

This settlement is similar to other class action settlements providing credits that have been given final approval. *See Couser v. Apria Healthcare, Inc.*, 13-cv-00035-JVS-RNB, Dkt. No. 45, p. 9 (C.D. Cal. Oct. 27, 2014) (preliminarily approving TCPA settlement providing for, depending on the circumstances, "a cash payment, forgiveness of debt owed to Apria, and/or a voucher for future account balanced with Apria", given final approval on March 9, 2015); *Gutierrez v. Barclays Group*, 3:10-cv-01012-DMS-BGS (S.D. Cal. March 12, 2012) (TCPA class action where class members were given an estimated $100 credit on their credit card balance with Barclays as part of the settlement); *Pepper v. Midland Credit Management, Inc.*, 37-2011-00088752-CU-BT-CTL (Cal. Superior Ct., San Diego, Sept. 9, 2013) (final approval of call recording settlement (Cal. Pen. Code §

632) where each class member was to be given up to $1,000 in debt relief); *Ybarrondo v. NCO Financial Systems, Inc*., 05-cv-02057-L-JMA (S.D. Cal.Oct. 8, 2009) (final approval of FDCPA class settlement that provided for, in part, a waiver of consumer debt with a face value of $5.8 million); *Fox v. Asset Acceptance, LLC,* 14-cv-734-GW (FFMx) (C.D.Cal. Aug. 17, 2015) ECF 69  (preliminarily approving settlement of $800,000 in credits to Defendant's account holders, out of a $1,000,000 settlement, with a $200,000 cash component, final approval hearing to be held in Feb. 2016).

It is of course unknown at this time what the exact amount of individual, pro rata relief Class members in the Credit and Cash Component group will receive. Once the claims are filed and evaluated, those numbers will be known and presented at the Final Approval hearing. However, based on historical claims rates for claims in TCPA cases, it is anticipated the claims rate will be between 2% and 5% for the Direct Mail Notice Group. Based upon the 6,156,500 persons in the Direct Mail Notice Group, the pro rata amount of relief based on $15,000,000 and a 2% claims rate would result in about 123,130 persons receiving approximately $122 in credits or cash. At a 5% claims rate, it would result in about 307,825 persons receiving approximately $49.00 in credits or cash.  Therefore, the range of expected cash or credits is well within the range received in other TCPA cases, as will be provided at Final Approval. Thus, the amount each Settlement Class member shall receive is fair, reasonable, and adequate given the purposes of the TCPA and the risk, expense, and uncertainty of continued litigation.

The purpose of the TCPA is to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls. S. REP. NO. 102-178, at 6 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1973. Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be

available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (noting that it is "well settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery"); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460 (E.D. Pa. 2000) ("the fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement; rather, the percentage should be considered in light of strength of the claims"); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. Jan. 9, 2008) (court-approved settlement amount that was just over 9% of the maximum potential recovery). At statutory damages of $500 per violation for the 41,435,915 cell phone telephone numbers called, Defendants' potential damages are in the unreachable tens of billions of dollars.

### D. The Settlement Was Reached As the Result of Arms'-Length Negotiation, Without Collusion, With the Assistance of an Experienced Mediator.

The Settlement is the result of intensive arms-length negotiation, including more than eleven mediation sessions with Judge Herbert Hoffman (Ret.) plus extensive negotiations between the Parties on their own as well. Agreement, § 1.06. Campion Decl., ¶ 3; Latturner Decl., ¶ 3. In connection with the Settlement, Class Counsel conducted written and oral confirmatory discovery to ascertain the accuracy of Defendants' representations in mediation as to the number and identity of the Settlement Class members and the cell phone numbers called by Defendants. Campion Decl, ¶¶ 11-13; 21. The Settlement provides for an independent technology consultant hired by KCC, CompliancePoint, who confirmed that the telephones numbers on Defendants' Cell Phone Number List are indeed exclusively cell phone numbers, and confirmed that the amount of cellphone numbers on the Cell Phone Number List is 41,720,462. Plaintiffs' counsel are satisfied that the information provided by Defendants relating to the number of persons in the

Settlement Class and the number of cell phones called is correct, as confirmed by Defendants under penalty of perjury in confirmatory discovery. *Id.*

The parties began settlement negotiations just as responses to formal discovery were due from both sides and as many depositions of Defendants had been noticed. A substantial amount of time was required to work out the many details about the settlement, including data production, payment of claims, including their amounts, how the Settlement Fund would be allocated, how best to determine the identify of Class Members, and how best to disseminate notice. Campion Decl., ¶3. The time and effort spent on settlement negotiations, as well the time spent with Judge Hoffman in the settlement process, militate in favor of preliminary approval of the proposed Settlement, as they strongly indicate there was no collusion. *See In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008) ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.").

### E.   Experienced Counsel Have Determined That the Settlement Is Appropriate and Fair to the Class.

The Parties are represented by counsel experienced in complex class action litigation. Co-Lead Counsel have extensive experience in class actions and, in particular, experience in class actions relating to consumer protection, including the TCPA. Campion Decl., ¶¶ 24- 32; Latturner Decl. Ex. 1. Counsel for Defendants similarly have extensive experience based upon a long track record in complex class actions.[5] They have vigorously defended Defendants throughout this Action. Class Counsel believe that under the circumstances, the proposed Settlement is fair, reasonable and adequate and in the best interests of the Class Members. Campion Decl., ¶ 8; Latturner Decl. ¶ 8.

---

[5]   DLA Piper's website states, *inter alia*, that "We regularly represent many of the world's leading corporations in putative class actions filed in state and federal courts nationwide. . . . ."

### F. The Class Should Be Preliminarily Certified For Settlement Purposes.

Courts have long acknowledged the propriety of certifying classes for settlement purposes. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes").

### G. The Proposed Method of Class Notice Is Appropriate.

Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must direct the "best notice practicable" under the circumstances to class members. Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received." *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.[6]

As *Newberg on Class Actions* § 8:29 (5th ed.) states, publication may be "used in lieu of individual notice in certain circumstances", and cites to authorities recognizing the need to allow publication notice when the names and addresses of the Class members cannot be reasonably ascertained.[7]

---

[6]   Defendants have agreed to provide the requisite Class Action Fairness Act ("CAFA") Notices pursuant to 28 U.S.C. Section 1715(b) within 10 days of the filing of this motion and to pay for the costs of those Notices. Agreement, § 9.08.

[7]   *Id.* at Footnote 3: "See, e.g., *Hughes v. Kore of Indiana Enterprise, Inc.,* 731 F.3d 672, 676–77, 86 Fed. R. Serv. 3d 647 (7th Cir. 2013) ("The members of the class in this case can't be identified through *reasonable* effort, effort commensurate with the stakes …. When reasonable effort would not suffice to identify the class members, notice by publication, imperfect though it is, may be substituted."); . . . the *Manual for Complex Litigation, Fourth,* § 21.311 ("Publication in magazines, newspapers, or trade journals may be necessary if individual class members are not identifiable after *reasonable effort or as a supplement to other notice efforts."*); 6A

Pursuant to Fed. R. Civ. P. 23(e)(1)(B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal". Rule 23(c)(2)(B) also sets forth requirements as to the content of the notice. The notice must concisely and clearly state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through counsel if he or she so desires; (v) that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, as described in detail above in Section III.C., the Settlement Notice Plan (Agreement, Exhibit E), which includes Direct Mail Notice, publication notice, internet banner notice, a press release, and the Formal Q & A Form Notice to be posted on the settlement website, meets all the requirements of Fed. R. Civ. P. 23(c)(2)(B). *See* Agreement, Exhibits B-E and Rosenthal Decl.

The notice program provided by the Agreement was designed to reach the largest possible number of Settlement Class Members as possible. A notice program reaching 75% of the class as here is certainly acceptable.[8] The Federal Judicial Center, "Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide", p. 3, says "it is reasonable to reach between 70-95%" of the class with a combination of direct mail and publication efforts. This plan is

_____

*Fed. Proc., L. Ed. § 12:312* ("Publication alone may be sufficient notice to class members under [Rule 23(c)(2)(B)] where notice by publication is the only practical alternative, such as where, in view of the large number of class members, it would be extremely difficult to identify class members for purposes of individual notice or would require more than reasonable effort to identify all class members so as to give individual notice, or where no list of the potential class members is available and no list can be compiled under the particular circumstances.").

[8] *In re Motor Fuel Termperature Sales Practices Program,* 279 F.R.D. 598, 618 (D. Kans 2012)   (court approved notice plan in an MDL case where print and media notice was estimated to reach 75 % of the class).

MOTION  FOR  PRELIM.
APPROVAL OF SETTLEMENT

estimated by KCC to reach approximately 75.2% of likely Settlement Class members, on average 1.8 times each. *Id.*, pp. 5-6. Of the persons scheduled to receive Direct Mail Notice, factoring in likely undeliverable postcards, that is calculated to reach 5,935,582 of the 6,156,500 Settlement Class Members contained in the Notice List by Direct Mail Notice. *See* Agreement, Exhibit E, "Settlement Notice Plan", p 11; Rosenthal Decl. ¶ 28. Thus, the extensive notice plan satisfies the requirements of due process, is the best notice practicable under the circumstances, and constitutes sufficient notice.

### H. **The Court Should Appoint Plaintiffs As The Class Representatives and Co-Lead Counsel As Class Counsel.**

"[T]wo criteria for determining the adequacy of representation have been recognized. First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). The adequacy of representation requirement is met here. Plaintiffs seek to have the Law Offices of Douglas J. Campion, APC and Edelman, Combs, Latturner & Goodwin, LLC, who have been acting as interim co-lead counsel as per this Court's Order (Dkt. No. 21), be confirmed as co-lead counsel to facilitate the settlement. Plaintiffs also seek to have the Law Office of David Schafer, who has been acting as interim liaison counsel per the Court's same Order, be appointed liaison counsel for all purposes related to the Settlement. Defendants have no objection to Interim Co-Lead Counsel continuing in that role. Agreement, § 4.01. As recognized by the Court in its Order, Dkt. No. 21, Plaintiffs' counsel all have extensive experience sufficient to be appointed as Class Counsel here. Campion Decl., ¶¶ 24-32; Latturner Decl., Ex. 1. In addition, Plaintiffs request that the three Plaintiffs, Christopher Robinson, Eduardo Tovar, and Dave Scardina, be appointed as the

Settlement Class Representatives. Plaintiffs understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel. Campion Decl., ¶35; Latturner Decl., ¶ 27. Plaintiffs Scardina Decl. ¶ 3; Robinson Decl. ¶ 8; Tovar Decl. ¶ 3.  Plaintiffs have no interests that are antagonistic or in conflict with the Settlement Class members. Campion Decl., ¶¶33-34; Latturner Decl., ¶ 25; Scardina Decl. ¶ 6; Robinson Decl. ¶ 7; Tovar Decl. ¶ 6. Plaintiffs and the Settlement Class Members seek the same relief, *i.e.*, money damages for Defendants' alleged unlawful actions. Considering the identity of claims, there is no potential for conflicting interests in this action.

### I.  **The Court Should Appoint KCC as the Claims Administrator.**

The Parties have agreed upon, and request that the Court appoint, KCC to serve as the Claims Administrator. Agreement, § 8.01.    KCC specializes in providing administrative services in class action litigation, and has extensive experience in administering consumer protection and privacy class action settlements. Campion Decl., ¶ 18; Rosenthal Decl. ¶¶ 6-11.

### J.   **A Final Approval Hearing Should Be Scheduled.**

The last step in the settlement approval process is the formal fairness or final approval hearing. The Parties request that the hearing be held not before 230 days after the date of entry of the Preliminary Approval Order to allow sufficient time for providing CAFA Notice, direct mail and publication notice, the additional mailing of the credit notice to the persons receiving credits to their accounts, and the 90 day claims period.

### IV.   **CONCLUSION**

For all the foregoing reasons, the Parties respectfully request that the Court enter an order preliminarily approving the proposed Settlement.

Respectfully submitted,

Date:  November 6, 2015          By:  */s/ Douglas J. Campion*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LAW OFFICES OF DOUGLAS J. CAMPION, APC**
Douglas J. Campion
17150 Via Del Campo, Suite 100
San Diego, California 92127
*doug@djcampion.com*
Telephone: (619) 299-2091
Facsimile: (619) 858-0034


By:  */s/ James O. Latturner*

**EDELMAN COMBS LATTURNER & GOODWIN, LLC**
James O. Latturner
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
info@edcombs.com
Telephone: (312) 739-4200
Facsimile: (312) 419-0379

***Attorneys for Plaintiff and the Proposed Class***