Douglas J. Campion (SBN 75381)
THE LAW OFFICES OF DOUGLAS J. CAMPION, APC
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Email: doug@djcampion.com

James O. Latturner
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379
Email: info@edcombs.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | Case No. 11-md-2286-MMA (MDD)<br>Member cases: 10-cv-02261<br>10-cv-02600<br>10-cv-02368<br>10-cv-02370<br>**CLASS ACTION**<br>**DECLARATION OF DOUGLAS J. CAMPION IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date:  December 8, 2015<br>Time:  2:00 p.m<br>Courtroom:  3A<br><br>Judge Michael M. Anello |

I, Douglas J. Campion, declare:

1. I am one of the attorneys for the Plaintiffs, Christopher Robinson ("Robinson"), Eduardo Tovar ("Tovar"), and Dave Scardinia ("Scardina"), in this action ("Midland MDL"). I submit this declaration in support of the Motion for Preliminary Approval of the Class Action Settlement. I am licensed to practice law in California and this Court as well as all federal courts in this state. If called as a witness, I would competently testify to the matters herein from personal knowledge.

## CASE HISTORY

2. On November 2, 2010, counsel for Plaintiff Robinson, including the my office, the Law Offices of Douglas J. Campion, filed an action in this Court against Defendants. On December 17, 2010, counsel for Plaintiff Eduardo Tovar, including liaison counsel, Law Offices of David Schafer, PLLC, filed an action against Defendants in this Court. Finally, on May 11 2011, counsel for Plaintiff Scardina, Edelman, Combs, Latturner & Goodwin, filed an action against Defendants in the United States District Court for the Northern District of Illinois. The complaints in all three actions alleged that Defendants violated the TCPA by using an automatic telephone dialing system or an artificial or prerecorded voice to call cell phones without the prior express consent of the call recipients.

3. On October 11, 2011, Plaintiffs' actions were transferred to this Court for coordinated or consolidated pretrial proceedings. (Dkt. No. 1.) On March 13, 2012, the Court appointed as Interim Co-Lead Counsel my firm and the Edelman Combs firm. Liaison Counsel was also appointed. (Dkt. No. 21.) On July 11, 2013, Plaintiffs filed a Consolidated Complaint (Dkt. No. 23) which Defendants answered on August 17, 2012. (Dkt. No. 27.) On December 3, 2012, Defendants filed a Motion to Stay on Primary Jurisdiction Grounds (Dkt. No. 40) which, after briefing and oral argument, the Court denied on January 7, 2013. (Dkt. No. 45.) Subsequent

to that ruling, the Parties began protracted settlement discussions with the assistance of mediator Judge Herbert B. Hoffman (Ret.) of Judicate West, and continued settlement discussions about the details of the settlement on their own for many months as well, resulting in a settlement, approximately thirty months later. Those discussions included many negotiations over many details, including the determination of the Class Members and their identities, how claims would be made and paid, whether in credits or cash, notice issues and funding issues. A true and correct copy of the "Settlement Agreement and Release" is attached hereto as Exhibit 1.

### DEFINITION OF THE SETTLEMENT CLASS

4. The Settlement Class consists of:

> All persons in the United States who were called on a cellular telephone by Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) in connection with the collection of an alleged debt using a dialer or by artificial or prerecorded voice message without prior express consent during the period from November 2, 2006 through August 31, 2014, inclusive.

Agreement, §2.10(a). Excluded from the Settlement Class are the Judges to whom this Litigation is assigned, any member of the Judges' staffs and immediate families, and any person who validly requests exclusion from the Class. Agreement, §2.10(b). There are approximately 41,435,915 persons in the Settlement Class.

### ADEQUACY OF SETTLEMENT

5. Under the Settlement, Defendants, Midland Funding, LLC, Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc., (collectively, "Defendants") shall pay up to approximately $20,485,348 in cash and credits. (That amount depends on the total cost of notice and claims administration, estimated to be between $3,098,608 at a 1% claims rate and $3,352,407 based on a 5% claims

rate.) This amount will be distributed as follows: a $15 million Settlement Fund will be created, consisting of a $2 million Cash Component and a $13 million Credit Component, for Settlement Class Members who make a claim. The Cash Component of the Settlement Fund will be distributed as follows:

- To compensate Settlement Class Members on a *pro rata* basis that either never had a collection account with Defendant, or if they did, they presently have a zero balance;
- To pay incentive awards to the Plaintiffs ($2,500 each for a total of $7,500);
- To pay taxes and tax-related expenses, and if necessary the fees and costs of a Special Master for any mediation services required in connection with the administration and implementation of the Settlement.

The Cash Component is less than the Credit Component because Defendants represented that group is approximately 10% of the persons in the Credit Group, i.e., still having open accounts with Defendants, Any portion of the $2 million Cash Component of the Settlement Fund that remains after the deadline for checks to be cashed will be donated to one or more approved *cy pres* recipients. Agreement, §§ 5.02, 8.08, 11.04.

6. The $13 million Credit Component of the Settlement will be distributed to persons with outstanding balances on their present collection accounts with Defendants as a pro rata credit, reducing the amounts owed to Defendants on their accounts.

7. Separate and apart from the $15 million Settlement Fund, and subject to Court approval, Defendants agree to pay $2,400,000 for attorneys' fees and costs, Agreement, §§ 5.05, 6.01., and all costs and expenses associated with notice and claims administration, presently estimated to be between $3,098,608 and $3,352,407, based on estimated claims rates of 1% and 5%, respectively, and

adding in the $13,260 for CompliancePoint's analysis. Those administration costs include the cost of direct-mail Postcard Notice to 6,156,500 persons, publication notice to the remaining 35,279,415 members of the Settlement Class, as well as the cost of claims administration. Agreement §§ 8.06-8.07. See Declaration of Daniel Rosenthal Re Settlement Notice Plan and Notice Documents filed herewith.

8. The Named Plaintiffs in this matter and their counsel believe that the claims asserted in this action have merit. However, they also recognize the burdens, uncertainty and risks inherent in continuing this litigation. These risks include uncertainties particular to class actions generally such as the risk of class certification being denied. These risks also include the uncertainties related to litigating potential defenses that Defendants might raise such as whether Settlement Class Members consented to receive robocalls or prerecorded or artificial voice messages on their cell phones. The expense and effort required to litigate such defenses would be substantial. Even if Plaintiffs had obtained a judgment against Defendants, subsequent appeals would have further delayed the ultimate resolution of the case, further indicating that a settlement is preferable to further continued, protracted, burdensome, and expensive litigation. Thus, the named Plaintiffs and their counsel have concluded that it is fair, desirable and beneficial to the Class that the action be fully and finally compromised, settled and dismissed with prejudice pursuant to the terms and conditions set forth in this Settlement Agreement. With the payment by Defendants of the settlement amounts as set forth in the Settlement Agreement and herein, totaling in excess of $20,000,000, I believe the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

9. Based upon my 38 years of experience in practicing law, and litigating class actions for approximately 26 years, it is my opinion that this settlement should be approved by the Court as fair and reasonable.

## NOTICE PROCESS

10. To provide notice of the settlement to all Class members, Defendants created a "Cell Phone Number List" consisting of all approximately 41,435,915 cellular telephone numbers Defendants called during the Class Period. The Cell Phone List was extracted from that larger list of calls made to both cellular telephones and landline telephones during the class period. From the Cell Phone Number List, Defendants created a "Notice List" consisting of approximately 6,156,500 Settlement Class Members whom Defendants can actually identify by names and addresses from their records as having been called by Defendants. The "Notice List" Class members will receive direct mail notice postcards about the settlement. The remaining Class members that cannot be identified by name or address (approximately 35,279,415) will receive notice pursuant to a Notice Plan prepared by KCC consisting of other types of notice, including publication, a press release and internet notice. See Settlement Agreement, Exhibit E. That Notice Plan is expected to reach 75.2% of the Class members, on average 1.8 times each. *Id*. at pp.5-10.

11. I understand from confirmatory discovery, including interrogatories, document requests and a Rule 30(b)(6) deposition, that to create the Notice List, Defendants reviewed their outbound dial lists to locate the calls made to cell phones during the Class Period, matched them to Midland accounts, and matched them to names and addresses for those accounts. Thus, that call record data was analyzed and refined to create a database of individuals who Defendants can identify from their records as having been called and who otherwise meet the class definition.

12. Both the Cell Phone Number List and the Notice List were provided to KCC, who retained an independent information technology consultant CompliancePoint pursuant to the Settlement Agreement to confirm that essentially all the numbers on both lists were indeed cell phone numbers. They ran the lists and provided a report confirming that there were 41,892,483 numbers called, but of that

number, 172,021 appeared no to be cellphone numbers, leaving approximately 41,720,462 cellphone numbers having been called. They are all on the Cellphone Number List, which includes the approximately 6,156,500 numbers on the Notice List. Less than 1% of the numbers were not in fact cellphones, which I understand could be due to the porting or moving phone numbers between cellphones and landlines.

13. The methodology used to assemble both the Cell Phone Number List and the Notice List was confirmed in the confirmatory discovery performed pursuant to the settlement, specifically in a Rule 30(b)(6) deposition that I took as well as sworn interrogatory responses and documents produced by Defendants. Plaintiffs' Co-Lead Counsel are comfortable that the Cell Phone Number List and the Notice List are accurate based upon representations by defense counsel, confirmatory discovery responses from Defendant provided under penalty of perjury, including documents produced, investigation by Co-Lead Counsel, , and the opinion of CompliancePoint, the independent technology consultant retained by KCC to confirm the number of cellphones called, constituting the members of the Class.

14. Everyone in the Notice List will receive Direct Mail Notice in the form of a postcard summarizing the details of the Settlement, advising the Class Members how to file claims by, *inter alia*, using a Claim Identification number on the postcard to expedite the filing of claims, and providing a toll free telephone number and a Settlement Website address. *See* Agreement, §§ 8.03-8.04 and Ex. C. KCC will mail the direct mail notice to the Settlement Class Members to all Class Members on the Notice List. KCC shall also conduct reasonable searches and re-mail any returned class notices. Agreement §§ 2.07, 8.01.

15. Everyone on the Cell Phone List will receive notice of the settlement pursuant to KCC's Notice Plan. Agreement, Ex. E. That Notice Plan includes internet notice, the settlement website and publication in four consumer magazines

over a ten week period. *Id*. at pp.5-10. . Those include Cosmopolitan, People, Reader's Digest and National Geographic. *Id*. at 7.

16. In addition, class counsel will issue a neutrally worded press release which will help facilitate notice among the class members and draw particular attention from various search engines driving traffic to the settlement website. Agreement § 9.05; Exhibit F.

17. We have prepared a longer, more detailed Notice in question and answer format to be posted on the Settlement Website. That Notice attempts to answer all the possible questions a Class Member might have about the Settlement. Agreement §9.04, Exhibit B. Furthermore, a Settlement Website will be established and maintained containing all the information about the Settlement. Agreement, § 9.06. The various forms of notice being provided pursuant to this settlement adequately inform the Class members about the settlement and their rights to opt out or object to the Settlement.

18. The Parties' proposed Claims Administrator, KCC, will be responsible for implementing the various forms of notice. KCC specializes in providing administrative services in class action settlements and is experienced in doing so. KCC estimates based upon their many years of experience in this business that 75.2% of the Class Members will see the Notice on average 1.8 times each. Ex. E, pp. 5-6. I believe the proposed notice procedures comply with all constitutional and statutory notice requirements.

## CLAIMS PROCESS

19. A Class Member may make a claim in the following ways:

    a. Submit a claim by calling the toll-free number established for the administration of this settlement class;

    b. Submit a claim online through the settlement website, which has been specifically designed for the administration of this settlement class; or

   c. Mail in a completed claim form which can be downloaded from the settlement website.

Agreement § 10.02.

20. Class counsel has specifically designed the claims process to be as straightforward as possible to maximize the amount of claims filed. For a person who receives direct mail postcard notice, he or she only needs to provide a name, a Claim Identification number from the postcard notice, and a current address. A person who receives publication notice submits a claim by providing the administrator with one or more cell phone numbers that the person believes Defendants called. KCC then compares the cell phone number provided to the numbers on the Cell Phone Number List. If a cell phone number provided by the putative class member matches a cell phone number on the Cell Phone Number List, then the person is entitled to make a claim. Agreement § 10.03.

## CONFIRMATORY DISCOVERY

21. We negotiated a confirmatory discovery process to confirm the accuracy of the numbers and data we were provided during mediation by Defendants. Agreement, § 15.01. The purpose was to confirm the total number of Class Members and to confirm the efficacy of the process and methodology used to obtain that number. Confirmatory discovery consisted of: A representative of Defendants sat for a Rule 30(b)(6) deposition; Defendants provided sworn interrogatory responses; and Defendants provided documents in response to Plaintiffs' document requests. Defendants also provided the Cell Phone Number List and the Notice List to KCC who retained an independent third information technology consultant CompliancePoint to review and analyze the cellphone number lists and confirm that the numbers on the lists were cell phone numbers, and the number of cellphones called were as represented. Co-Lead Counsel are also satisfied from the confirmatory discovery that the Cell Phone Number List reflects the number of persons in the Settlement Class.

## Consent Order Investigation

22. Plaintiffs' counsel learned after the Settlement Agreement was executed that the U.S Consumer Financial Protection Bureau ("CFPB") entered a Consent Order on September 9, 2015 requiring Defendants to cease and desist in certain collection practices. The Consent Order deemed certain of Defendant's accounts uncollectible and / or required Defendants to provide refunds on certain accounts. We were concerned that if those accounts deemed uncollectible were of Class Members who filed claims, then those Class Members would not be entitled to credits on those accounts and would thus qualify for the Cash Component. We inquired of defense counsel as to how many of the Class Members' accounts would be affected and, after they did their investigation, we were told that only 11,557 out of the identified Class Members, the 6,156,500, would be affected (.0018772029%). If the claims rate is in line with prior consumer cases, we therefore expect only between 100 and 300 claims to be affected, and to move from the credit component to the Cash Component. Therefore, we believe the settlement will not be affected by the Consent Order in any material way.

## ATTORNEYS' FEES AND COSTS

23. Subject to Court approval, the Agreement provides that Defendants will pay attorneys' fees and litigation costs separate from the Cash and Credit Components, in a negotiated amount of $2,400,000. Defendants will not oppose a request in that amount. Agreement, § 6.01.

## CLASS COUNSEL'S EXPERIENCE

24. The Law Offices of Douglas J. Campion, APC, along with Edelman, Combs, Latturner & Goodwin, LLC, interim Co-Lead Counsel appointed in this Court's Order of March 13, 2012 (Dkt. No. 21), seek to be confirmed as class counsel for all purposes of this action and for proceeding with the settlement.

25. My experience is sufficient to act as Class Counsel in this case as I have extensive experience in the area of the TCPA class action litigation and

handling other class action litigation, including consumer class actions. I presently work with and have worked with Edelman, Combs, Latturner & Goodwin, LLC in a number of other Class action cases as co-counsel and in my opinion they are qualified to act as Class Counsel. . Their qualifications and experience is set forth in an Exhibit to the Declaration of James O. Latturner in Support of Preliminary Approval filed herewith. My qualifications are as follows:

26.   The Law Offices of Douglas J. Campion, APC, and its predecessor, The Law Offices of Douglas J. Campion, has been confirmed as class counsel in many prior actions. My experience and 38 years in practice in California are sufficient to justify my appointment as Class Counsel.   To that end, I hereby submit for the Court's consideration my qualifications and a summary of my experience which justify that appointment.

27.   I am the only principal in my law firm. I was admitted to the State Bar of California in 1977 and have been a member in good standing since that time. Since my admission, I have been engaged in litigation and I have had extensive experience in business litigation prior to working in the class action field. I worked in San Jose, California with Anthony J. Trepel from approximately 1983 through 1988, and the firm's name was Trepel, Kahn & Campion, P.A. In 1989, I joined the San Diego office of a Philadelphia law firm, Barrack, Rodos & Bacine. Our office engaged in class and derivative litigation exclusively, primarily specializing in plaintiff's class action securities cases. I resigned from the firm in 1996. Barrack, Rodos & Bacine was often co-counsel with Milberg Weiss Bershad Hynes & Lerach in class and derivative actions and litigated the same types of cases. A few examples of the cases our firm litigated, separately or with co-counsel, and in which I actively participated, are as follows:

a. The Michael Milken – Drexel securities litigation, with a joint recovery for all plaintiffs of more than a billion dollars;

b. The savings and loan securities and derivative litigation of the early 1990's, in which I represented or litigated against California Federal Far West Financial, Financial Corporation of Santa Barbara, Imperial Savings, and others;

c. Defense contractor over-billing cases, including Lockheed, General Dynamics, and Rockwell International;

d. A number of health care provider cases including National Health Laboratories, National Medical Enterprises, ICN Pharmaceuticals, and Pfizer;

e. Cases against insurance companies including Blue Cross of California, and First Executive Life and its progeny; and

f. Many other class and derivative actions including L.A. Gear, Countrywide Trucking, and Glen Ivy timeshares, among others.

28.  I have also been lead or co-lead counsel in many other class actions or Business & Professions Code representative actions since I opened my own office in 2001. Most of those are consumer-related cases. These included my role as either lead or co-lead plaintiffs' counsel in the following class or 17200 representative actions, including Telephone Consumer Protection Act cases:

a. Gonzalez, et. al., v. Science Applications International Corporation, et. al.;

b. Warner, et al. v. Computer Education Institute, et al.,

c. Smith v. Microskills;

d. Russell, et al., v. DAT, Inc. dba Laptop Training Solutions;

e. Jared Smith vs. Independent Capital Management, Inc., et al.;

f. Opyrchal, et al., v. New York Life;

g. Bowersox v. Laboratory Corporation of America;

h. O'Neal v. NCO Financial Systems, Inc.;

i. Zamora v. Conseco, et. al.;

j. Kryptonite Locks Coordinated Litigation

k. Shaw v. Tenet Healthcare Corporation, et al.;

l. Rodriquez v. Yum Yum Donut Shops, Inc.;

m. Arnn, et al., v. West Coast Aquarium Industries, Inc.;

n. Grant v. American Agencies, Inc.;

o. Rogers v. Whitney Education Group;

p. Khosorabi v. North Shore Agency, Inc.;

q. Cook v. Collins, et al.,

r. Goins v. Checks Cashed for Less, Inc., et al;

s. Kight v. Eskanos & Adler, P.C.;

t. Gulzynski v. Fidelity Title;

u. Kight v. CashCall;

v. Grannan v. Direct Electronics, Inc.;

w. Charles Smith, et al., v. CRST Expedited;

x. American Apparel, Inc. Derivative Litigation;

y. Meeks v. CreditWest, et. al.;

z. Malta v. Wells Fargo;

aa. Burge v. Pinnacle Financial Group, Inc.;

bb. Bennett v. Discover Bank;

cc. Dominici v. Wells Fargo;

dd. Hurtado v. Progressive Financial Services;

ee. Galbraith v. Resurgent;

ff. Underwood v. San Diego Flight Training, Inc.;

gg. Sarabi v. Weltman, Weinberg & Reis Co., LLP.;

hh. Lo v. Oxnard European Motors, Inc.;

      ii. Allen v. Portfolio Recovery, Inc.

      jj. Maier v. J.C. Penney, Inc.

      kk. Sojka, et. al. v. Direct Buy, Inc.

      ll. Johnson v. Bennett Law

      mm. Hoffman v. Bank of America

      nn. Becerra v. National Recovery Solutions, LLC

      oo. Dailey v. John D. Bonewicz, PC

29. I have also had several state court appellate court opinions published in which our side prevailed and for which I was counsel of record and responsible for the appellate work. Those include *CashCall, Inc. v. Superior Court* ("*CashCall I*") (2008) 159 Cal. App. 4th 273; *Smith v. Microskills San Diego L.P.* (2007) 153 Cal. App. 4th 892; and *Kight v. CashCall* (2011) 200 Cal. App. 4th 1377 ("*CashCall II*"). The *CashCall I* case expanded the rights of putative class members to obtain pre-certification class member discovery to subsitute a new class represenative, even when the named plaintiffs had no standing to itially bring the action. In the *Microskills* case, the Court of Appeal limited the ability of the defendant vocational school, a third party to an arbitration agreement between the plaintiff student and the student loan lender, to compel a plaintiff to arbitrate their case against the school. The *CashCall II* case reversed summary adjudication and set forth new law in the field of privacy rights, including eavesdropping.

**EXPERIENCE RELEVANT TO THE TELEPHONE CONSUMER PROTECTION ACT**

30. I have filed and litigated many other class actions based on the Telephone Consumer Protection Act in the past seven years. I have been lead counsel, liaison counsel or class counsel in the TCPA cases obtaining the largest

monetary and non-monetary settlements to date. As detailed below, those include the *Rose v. Bank of America* case, settled in excess of $32,000,000; the *Wells Fargo* mortgage and auto loan robocalling case, settled in excess of $17,000,000; *Arthur v. Sallie Mae*, settled in excess of $24,000,000; *In Re Jiffy Lube*, settled for certificates/cash, with the certificates valued over $40,000,000 in value, with a reduced cash value if redeemed for cash; and the *AllianceOne* case, with a settlement of more than $9,000,000.

31.   The following is a partial list of the TCPA class actions which I am or have been personally involved in:

a. *In Re Jiffy Lube Int'l, Inc. Text Spam Litigation*, MDL Case No. 2261, Master Case No. 3:11-MD-02261 – JM- JMA (liaison counsel) (largest combined monetary and certificate for services case to date, approx. $45,000,000 value);

b. *Bellows v. NCO Financial Systems, Inc.*, 07-CV-01413 W(AJB) (S.D. Cal)(One of the first class action settlements under the TCPA in the nation; Hyde & Swigart served as co-lead counsel; final approval grated in 2009);

c. *Adams v. AllianceOne, Inc.*, 08-CV-0248 JAH (S.D. Cal) (Nationwide TCPA class settlement providing class relief of $40 per claiming class member resulting in over $2,500,000 paid to claiming class members; final approval granted in 2013);

d. *Lemieux v. Global Credit & Collection Corp.*, 08-CV-1012 IEG(POR) (S.D. Cal.)(Co-lead counsel on a national TCPA class settlement providing class recovery in the amount of $70 for each claiming class member; final approval granted in 2011);

e. *Malta, et al. v. Wells Fargo Home Mortgage, et al.*, 10-CV-1290 IEG(BLM)(Served as co-lead counsel for a settlement class of borrowers in connection with residential or automotive loans and violations of the

TCPA in attempts to collect on those accounts; obtained a common settlement fund in the amount of $17,100,000 which was the second largest TCPA settlement at the time, second only to the *Sallie Mae* settlement; final approval granted in 2013);

f. *Connor v. JPMorgan Chase Bank, et al.*, 10-CV-1284 DMS(BGS) (S.D. Cal.)(Served as co-lead counsel for the settlement class of borrowers in connection with residential loans and TCPA violations stemming from the collection of those accounts); settled for approximately $12,000,000);

g. *In Re: Portfolio Recovery Associates, LLC Telephone Consumer Protection Act Litigation*, 11-md-02295-JAH(BGS)(Counsel for a Plaintiff in the lead action, prior to the action being recategorized through the multi-district litigation process; still actively involved in the MDL litigation and settlement process);

h. *Arthur v. SLM Corporation*, 10-CV-00198 JLR (W.D. Wash.)(Nationwide settlement achieving the then-largest monetary settlement in the history of the TCPA: $24,115,000; final approval granted in 2012)

i. *Lo v. Oxnard European Motors, LLC, et al.*, 11-CV-1009-JLS-MDD (S.D. Cal.)(Achieving one of the highest class member payouts in a TCPA action of $1,331.25; final approval granted in 2012);

j. *Franklin v. Wells Fargo Bank, N.A.,* Case No. 14-cv-2349 MMA-BGS (S.D.Cal.); (Nationwide settlement of TCPA credit card collection violations, settlement of more than $13,800,000);

k. *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, 10-01777-AJB-NLS (S.D. Cal.)(Approved as co-lead counsel and worked to obtain a national TCPA class settlement where claiming class members each received payment in the amount of $70.00; final approval granted in 2013);

l. *Wilkins and Mills v. HSBC Bank Nevada, N.A.*, Case No. 14 C 190 (N.D.Ill.) (Co-counsel in a TCPA settlement of almost $40,000,000);

m. *Robbins, et al. v. Coca Cola Co.,* Case No. 13-cv-00132 – IEG –NLS (S.D. Cal.) (Decision often cited on pleading standards on motions to dismiss in TCPA actions);

32.  The cases listed above have resulted in the creation of combined common funds to class members in the tens of millions of dollars. I am proud of my record in the above cases that resulted in substantial settlements for consumers.

### SUITABILITY OF CLASS REPRESENTATIVES

33.  I am unaware of any legal differences in the status of Plaintiffs Robinson, Tovar, and Scardina as Class Members from the members of the Settlement Class, nor of any unique factual issues pertaining to such representative status which must be litigated. To my knowledge, Plaintiffs Robinson, Tovar, and Scardina have no conflict with the other Class Members.

34.  The claims of Plaintiffs Robinson, Tovar, and Scardina appear to be the same as the claims of the other class members, in the respective actions they brought, and their claims relate to the same issues of law and fact as the other class claims, respectively.

35.  Plaintiffs Robinson, Tovar, and Scardina understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel.

36. Plaintiffs Robinson, Tovar, and Scardina support the proposed Settlement. *See* the Declaration of Christopher Robinson, the Declaration of Eduardo Tovar, and the Declaration of Dave Scardina filed herewith in support of preliminary approval.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 6, 2015, pursuant to the laws of the United States.

/s/ *Douglas J. Campion*____
Douglas J. Campion

# EXHIBIT 1