Douglas J. Campion (SBN 75381)
THE LAW OFFICES OF DOUGLAS J. CAMPION, APC
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Email: doug@djcampion.com

James O. Latturner (IL Bar # 1588095)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603
Telephone: (312) 739-4200
Facsimile: (312) 419-0379
Email: info@edcombs.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | Case No. 11-md-2286-MMA (MDD)<br>Member cases: 10-cv-02261<br>10-cv-02600<br>10-cv-02368<br>10-cv-02370<br>**DECLARATION OF JAMES O. LATTURNER IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: December 8, 2015<br>Time: 2:00 p.m.<br>Courtroom: 3A<br>Judge Michael M. Anello |

I, James O. Latturner, declare:

1.  I am one of the attorneys for the Plaintiffs, Christopher Robinson ("Robinson"), Eduardo Tovar ("Tovar"), and Dave Scardinia ("Scardina"), in this action ("Midland MDL"). I submit this declaration in support of the Motion for Preliminary Approval of the Class Action Settlement. I am licensed to practice law in Illinois and am admitted to practice in a number of courts around the country including the United States Supreme Court. If called as a witness, I would competently testify to the matters herein from personal knowledge.

## CASE HISTORY

2.  On November 2, 2010, counsel for Plaintiff Robinson, including the Law Offices of Douglas J. Campion, filed an action in this Court against Defendants. On December 17, 2010, counsel for Plaintiff Eduardo Tovar, including liaison counsel, Law Offices of David Schafer, PLLC, filed an action against Defendants in this Court. Finally, on May 11 2011, counsel for Plaintiff Scardina, including my firm, Edelman, Combs, Latturner & Goodwin, filed an action against Defendants in the United States District Court for the Northern District of Illinois. The complaints in all three actions alleged that Defendants violated the TCPA by using an automatic telephone dialing system or an artificial or prerecorded voice to call cell phones without the prior express consent of the call recipients.

3.  On October 11, 2011, Plaintiffs' actions were transferred to this Court for coordinated or consolidated pretrial proceedings. (Dkt. No. 1.) On March 13, 2012, the Court appointed Interim Co-Lead Counsel and Liaison Counsel. (Dkt. No. 21.) On July 11, 2013, Plaintiffs filed a Consolidated Complaint (Dkt. No. 23) which Defendants answered on August 17, 2012. (Dkt. No. 27.) On December 3, 2012, Defendants filed a Motion to Stay on Primary Jurisdiction Grounds (Dkt. No. 40) which, after briefing and oral argument, the Court denied on January 7, 2013.

(Dkt. No. 45.) Subsequent to that ruling, the Parties began protracted settlement discussions with the assistance of mediator Judge Herbert B. Hoffman (Ret.) of Judicate West, as well as protracted discussions over many months without Judge Hoffman's assistance, resulting in a settlement, approximately thirty months later.

### DEFINITION OF THE SETTLEMENT CLASS

4. The Settlement Class consists of:

> All persons in the United States who were called on a cellular telephone by Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) in connection with the collection of an alleged debt using a dialer or by artificial or prerecorded voice message without prior express consent during the period from November 2, 2006 through August 31, 2014, inclusive.

Agreement, §2.10(a). Excluded from the Settlement Class are the Judges to whom this Litigation is assigned, any member of the Judges' staffs and immediate families, and any person who validly requests exclusion from the Class. Agreement, §2.10(b). There are approximately 41,435,915 persons in the Settlement Class.

### ADEQUACY OF SETTLEMENT

5. Under the Settlement, Defendants, Midland Funding, LLC, Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc., (collectively, "Defendants") shall pay up to approximately $20,485,348 in cash and credits. (The actual amount depends on the actual cost of notice and claims administration. The Administrator, KKC estimates the cost as being between $3,098,608 (based on a 1% claims rate) and $3,352,407 (based on a 5% claims rate). This amount will be distributed as follows: a $15 million Settlement Fund will be created, consisting of a $2 million Cash Component and a $13 million Credit Component, for Settlement Class Members who make a claim. The Cash Component of the Settlement Fund

will be distributed as follows:

- To compensate Settlement Class Members on a *pro rata* basis that either never had a collection account with Defendant, or if they did, they presently have a zero balance;
- To pay incentive awards to the Plaintiffs ($2,500 each for a total of $7,500);
- To pay taxes and tax-related expenses, and if necessary the fees and costs of a Special Master for any mediation services required in connection with the administration and implementation of the Settlement.

The Cash Component is less than the Credit Component because Defendants have represented that the number of persons entitled to receive a share of the Cash Component is approximately 10% of the total number of Class Members and that 90% of the Class Members are only entitled to a share of the Credit Component, *i.e.*, still have open accounts with Defendants. Any portion of the $2 million Cash Component of the Settlement Fund that remains after the deadline for checks to be cashed will be donated to one or more approved *cy pres* recipients. Agreement, §§ 5.02, 8.08, 11.04.

6. The $13 million Credit Component of the Settlement will be distributed to persons with outstanding balances on their present collection accounts with Defendants as a pro rata credit, reducing the amounts owed to Defendants on their accounts.

7. Separate and apart from the $15 million Settlement Fund, and subject to Court approval, Defendants agree to pay $2,400,000 for attorneys' fees and costs, Agreement, §§ 5.05, 6.01, and all costs and expenses associated with notice and claims administration, presently estimated to be between $3,085,348 and $3,339,147, based on estimated claims rates of 1% and 5%, respectively, plus

$13,26 for CompliancePoint's analysis. Those administration costs include the cost of direct-mail Postcard Notice to 6,156,500 persons, publication notice to the remaining 35,279,415 members of the Settlement Class, as well as the cost of claims administration. Agreement §§ 8.06-8.07. *See* Exhibit A attached hereto; KCC Estimate of Costs of Notice and Claims Administration; Declaration of Patrick Ivie of KCC in Support of Joint Motion for Preliminary Approval of Class Action and Certification of Settlement Class filed herewith.

8.  The Named Plaintiffs in this matter and their counsel believe that the claims asserted in this action have merit. However, they also recognize the burdens, uncertainty and risks inherent in continuing this litigation. These risks include uncertainties particular to class actions generally such as the risk of class certification being denied. These risks also include the uncertainties related to litigating potential defenses that Defendants might raise such as whether Settlement Class Members consented to receive robocalls or prerecorded or artificial voice messages on their cell phones. The expense and effort required to litigate such defenses would be substantial. Even if Plaintiffs had obtained a judgment against Defendants, subsequent appeals would have further delayed the ultimate resolution of the case, further indicating that a settlement is preferable to further continued, protracted, burdensome, and expensive litigation. Thus, the named Plaintiffs and their counsel have concluded that it is fair, desirable and beneficial to the Class that the action be fully and finally compromised, settled and dismissed with prejudice pursuant to the terms and conditions set forth in this Settlement Agreement. With the payment by Defendants of in excess of $20million, I believe the terms and conditions of this Settlement Agreement are fair, reasonable and adequate to the proposed class, and that it is in the best interests of the proposed class to settle the Action.

9.   Based upon my 52 years of experience in practicing law, and litigating class actions for approximately 46 years, it is my opinion that this settlement should be approved by the Court as fair and reasonable.

### NOTICE PROCESS

10.   To provide notice of the settlement to all Class Members, Defendants created a "Cell Phone Number List" consisting of approximately 41,435,915 cellular telephone numbers Defendants called during the Class Period. The Cell Phone Number List was extracted from a larger list of calls made to both cellular telephones and landline telephones during the class period. From the Cell Phone Number List, Defendants created a "Notice List" consisting of approximately 6,156,500 Settlement Class Members whom Defendants can actually identify by names and addresses from their records as having been called by Defendants. The Class Members on the Notice List will receive direct mail notice of the Settlement in the form of postcards. The remaining Class Members, who cannot be identified by name or address (approximately 35,279,415 persons) will receive publication notice pursuant to a Notice Plan prepared by the Administrator, KCC, consisting of press release and internet notice. *See* Settlement Agreement, Exhibit E. That Notice Plan is expected to reach 75.2% of the Class members, on average 1.8 times each. *Id*. at pp. 5-10.

11.   I understand from confirmatory discovery, including interrogatories, document requests and a Rule 30(b)(6) deposition, that to create the Notice List, Defendants reviewed their outbound dial lists to locate the calls made to cell phones during the Class Period, matched them to Defendants' accounts, and matched them to names and addresses for those accounts. Thus, the original call record data was analyzed and refined the data to create a database of individuals who Defendants can identify from their records as having been called and who otherwise meet the class definition.

12. Both the Cell Phone Number List and the Notice List were provided to KCC, who, pursuant to the Settlement Agreement, retained an independent information technology consultant, CompliancePoint, to confirm that essentially all the numbers on both lists were indeed cell phone numbers. They ran the lists and provided a report confirming that there were 41,892,483 numbers called, but of that number, 172,021 appeared not be be cell phone numbers, leaving approximately 41,720,462 cell phone numbers having been called. All the numbers called are on the Cell Phone Number List, which includes the approximately 6,156,500 numbers on the Notice List.

13. The methodology used to assemble both the Cell Phone Number List and the Notice List was confirmed in the confirmatory discovery performed pursuant to the settlement, specifically in a Rule 30(b)(6) deposition that Doug Campion took as well as sworn interrogatory responses and documents produced by Defendants. Plaintiffs' Interim Co-Lead Counsel are comfortable that the Cell Phone Number List and the Notice List are accurate based upon the representations of Defendants' counsel, the documents and confirmatory discovery responses provided by Defendants under penalty of perjury, the investigation by Interim Co-Lead Counsel, and the opinion of CompliancePoint.

14. Everyone in the Notice List will receive Direct Mail Notice in the form of a postcard summarizing the details of the Settlement, advising the Class Members how to file claims by, *inter alia*, using a Claim Identification number on the postcard to expedite the filing of claims, and providing a toll free telephone number and a Settlement Website address. *See* Agreement, §§ 8.03-8.04 and Ex. C. KCC will mail the direct mail notice to all Settlement Class Members on the Notice List. KCC shall also conduct reasonable searches and re-mail any returned class notices. Agreement §§ 2.07, 8.01.

Decl. of James O. Latturner in Support
of Preliminary Approval                - 7 of 12 -                11-MD-2286-MMA (MDD)

15. Everyone on the Cell Phone Number List will receive notice of the settlement pursuant to KCC's Notice Plan. Agreement, Exhibit E. That Notice Plan includes internet notice, a settlement website and publication in four consumer magazines over a ten week period. *Id.* at pp. 5-10. Those include Cosmopolitan, People, Reader's Digest and National Geographic. *Id.* at 7.

16. In addition, Class Counsel will issue a neutrally worded press release which will help facilitate notice among the class members and draw particular attention from various search engines driving traffic to the settlement website. Agreement § 9.05; Exhibit F.

17. We have prepared a longer, more detailed Notice in question and answer format to be posted on the Settlement Website. That Notice attempts to answer all the possible questions a Class Member might have about the Settlement. Agreement §9.04, Exhibit B. Furthermore, a Settlement Website will be established and maintained containing all the information about the Settlement. Agreement, § 9.06. The various forms of notice being provided pursuant to this settlement adequately inform the Class members about the settlement and their rights to opt out or object to the Settlement. I believe the proposed notice procedures comply with all constitutional and statutory notice requirements. The Parties' proposed Claims Administrator, KCC, will be responsible for implementing the various forms of notice. KCC specializes in providing administrative services in class action settlements and is experienced in doing so.

18. The Parties' proposed Claims Administrator, KCC, will be responsible for implementing the various forms of notice. KCC specializes in providing administrative services in class action settlements and is experienced in doing so. KCC estimates based upon their many years of experience that 75.2% of the Class Members will see the Notice on average 1.8 times each. Agreement, <u>Exhibit E, pp.</u>

5-6. <u>I believe the proposed notice procedures comply with all constitutional and statutory notice requirements.</u>

### CLAIMS PROCESS

19.   A Class Member may make a claim in the following ways:

    a.   Submit a claim by calling the toll-free number established for the administration of this settlement class;

    b.   Submit a claim online through the settlement website, which has been specifically designed for the administration of this settlement class; or

    c.   Mail in a completed claim form which can be downloaded from the settlement website.

Agreement § 10.02.

20.   Class counsel has specifically designed the claims process to be as straightforward as possible to maximize the amount of claims filed. For a person who receives direct mail postcard notice, he or she only needs to provide a name, a Claim Identification number from the postcard notice, and a current address. A person who receives publication notice submits a claim by providing the administrator with one or more cell phone numbers that the person believes Defendants called unlawfully. KCC then compares the cell phone number provided to the numbers on the Cell Phone Number List. If a cell phone number provided by the putative class member matches a cell phone number on the Cell Phone Number List, then the person is entitled to make a claim. Agreement § 10.03.

### CONFIRMATORY DISCOVERY

21.   We negotiated a confirmatory discovery process to confirm the accuracy of the numbers and data we were provided during mediation by

Defendants. Agreement, § 15.01. The purpose was to confirm the total number of Class Members and to confirm the efficacy of the process and methodology used to obtain that number. Confirmatory discovery consisted of: A representative of Defendants sat for a Rule 30(b)(6) deposition; Defendants provided sworn interrogatory responses; and Defendants provided documents in response to Plaintiffs' document requests. Defendants provided the Cell Phone Number List and the Notice List to KCC who retained an independent third information technology consultant, CompliancePoint, to review and analyze the Cell Phone Number List and Notice List and confirm that the numbers on the lists were cell phone numbers and the number of cell phones called were as represented by Defendants. I am also satisfied from the confirmatory discovery that the Cell Phone Number List reflects the number of persons in the Settlement Class.

### ATTORNEYS' FEES AND COSTS

22. Subject to Court approval, theAgreement provides that Defendants will pay attorneys' fees and litigation costs separate from the Cash and Credit Components in an negotiated amount of 2,400,000. Defendants will not oppose a request in that amount. Agreement, § 6.01.

### CLASS COUNSEL'S EXPERIENCE

23. The Law Offices of Douglas J. Campion, along with Edelman, Combs, Latturner & Goodwin, LLC, interim Co-Lead Counsel appointed previously by this Court (Doc. 21) seek to be confirmed as class counsel for all purposes of this action and for proceeding with the settlement.

24. My experience is sufficient to act as Class Counsel in this case and I have extensive experience in consumer class actions, including TCPA class actions. My qualifications and those of Edelman, Combs, Latturner & Goodwin, LLC are attached hereto as Exhibit 1 to this Declaration.

. I am currently working with my co-counsel, Law Offices of Douglas J. Campion, in a number of other class action cases. In my opinion, he is highly qualified to act as Class Counsel as he is highly experienced in TCPA class actions as well as other consumer litigation.

### SUITABILITY OF CLASS REPRESENTATIVES

25. I am unaware of any legal differences in the status of Plaintiffs Robinson, Tovar, and Scardina as Class Members from the members of the Settlement Class, nor of any unique factual issues pertaining to such representative status which must be litigated. To my knowledge, Plaintiffs Robinson, Tovar, and Scardina have no conflict with the other Class Members.

26. The claims of Plaintiffs Robinson, Tovar, and Scardina appear to be the same as the claims of the other class members, in the respective actions they brought, and their claims relate to the same issues of law and fact as the other class claims, respectively.

27. Plaintiffs Robinson, Tovar, and Scardina understand the obligations of serving as class representatives, have adequately represented the interests of the putative class, and have retained experienced counsel.

28. Plaintiffs Robinson, Tovar, and Scardina support the proposed Settlement. *See* the Declaration of Christopher Robinson, the Declaration of Eduardo Tovar, and the Declaration of Dave Scardina filed herewith in support of preliminary approval.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 5, 2015, pursuant to the laws of the United States.

1
2
   _____
3  James O. Latturner (IL Bar # 1588095)
   EDELMAN, COMBS, LATTURNER
4  & GOODWIN, LLC
   20 South Clark Street, Suite 1500
5  Chicago, IL 60603
   Telephone: (312) 739-4200
6  Facsimile: (312) 419-0379
   Email: info@edcombs.com
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28