UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

IN RE: MIDLAND CREDIT MANAGEMENT, INC. TELEPHONE CONSUMER PROTECTION ACT LITIGATION

Case No. 11-MD-2286 MMA (MDD)

**OBJECTION TO PROPOSED CLASS ACTION SETTLEMENT**

Class Member, Rhadiante Van de Voorde, hereby objects to the proposed class action settlement in the proceeding known as *Midland Credit Management, Inc. Telephone Consumer Protection Act Litigation*, Case No.: 11-MD-2286 MMA (MDD).

My name is Rhadiante Van de Voorde, 1200 Blue Ridge Drive, Boulder Creek, CA 95006, Telephone: 831-234-5496, e-mail: rhadiante@elementaldesign.com. Between November 2, 2006 and August 31, 2014, I received calls on my cellular telephone from one of the Defendants, in connection with an alleged debt using a dialer or by an artificial or prerecorded voice message without my prior express consent. Attached as Exhibit A is two post card notices informing me of my membership in the class. Therefore, I am a Class Member. Neither my attorney nor I intend to call any witnesses at the Final Approval Hearing. I have read the Class Notice and find the settlement unfair as follows:

**UNFAIR, UNREASONABLE, OR UNADEQUATE SETTLEMENT**

The Settlement is not fair, reasonable, or adequate. Fed. R. Civ. P. 23(e). Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (citation and quotation marks omitted). Where the settlement agreement is negotiated before formal class certification, as in this case, the Court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e). . . ." *Id*. (citation and quotation marks omitted). This Settlement is not fair

because (1) the Class is defined as an impermissible fail-safe class; (2) the Class is not ascertainable; and (3) the proposed relief violates Defendant's Consent Order with the Consumer Finance Protection Bureau (CFPB). The Settlement is not reasonable because the Release expands the scope of the claims at issue to include Class Member claims and defenses under the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. Finally, the Settlement is not adequate because it does not meet Defendant's requirements under its Consent Order with the CFPB, does not fairly compensate Class Members for an overbroad release of Claims. The Court should deny Final Approval because it runs contrary to two key factors identified by the Ninth Circuit. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (identifying factors that guide a district court's review of class settlement). Specifically, the amount offered in settlement is inadequate and the settlement terms are counter to the Consumer Finance Protection Bureau's (CFPB) Consent Order with Defendant.

The Parties are attempting to certify an impermissible fail-safe class. A fail-safe class is "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The law has long recognized the impropriety of so-called fail-safe class actions. The Sixth Circuit explained, "a class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (citing *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)). "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman*, 646 F.3d at 352). In this Case, the proposed class includes only those persons whom

Defendant called "without prior consent." A valid claim under the TCPA requires that a call recipient must not have provided prior consent. Thus, the proposed class consists solely of persons who can establish that Defendant is liable for a TCPA violation. Such a class fails to meet the predominance requirement of Rule 23(b)(3). *See Gene and Gene, LLC v. Biopay, LLC*, 541 F.3d 318, 327 (5th Cir. 2008); *see also Kennard v. Electronic Data Syst. Corp.*, No. 296-93-98, 1998 WL 34336245 (Tex. Dist. Ct. Oct. 23, 1998) (proposed TCPA class failed because it required the Court to determine whether a person gave prior express invitation or permission and/or whether each potential class member had an existing business relationship). The Court should deny Final Approval because the Class definition would require an individualized determination as to whether each Class Member provided prior consent, thus, Rule 23 precludes class certification.

Class membership is not ascertainable and the proposed relief violates the CFPB's Consent Order with Defendant. See CFPB, 2015-CFPB-0022, Doc. 1 (Consent Order Sept. 3, 2015). The Class is separated into two subgroups for purposes of distributing relief: individuals with an "open" account and individuals with a "closed" account. If a Class Member owes Defendants nothing on the collection account or no collection account exists, then that Class Member may be entitled to a one time pro rata share ("Individual Cash Settlement Amount") from the $2,000,000 Cash Component of the Settlement Fund after the incentive awards to be paid to Plaintiffs and any fees owed to any Special Master appointed by the Court are deducted. If there is an outstanding balance owed by the Class Member to Defendants on a collection account, then that Class Member may be entitled to a one-time forgiveness of the money owed to Defendants of the lesser of (1) a pro rata share of the $13,000,000 of debt forgiveness (which is calculated by dividing $13,000,000 by the number of valid Claim Forms received from Class

Members who have an outstanding balance on a collection account); or (2) the balance owed on the collection account. Through the proposed "open" account credit relief, Defendant is representing, either expressly or by implication, that a Class Member with an open account owes a debt to Defendant. Under the CFPB Consent Order, Defendant is permanently restrained and prohibited from making any representation that a consumer owes a debt to Defendant unless Defendant can substantiate the representation.

The Court cannot permit Defendant to apply credits to Class Member accounts because it violates Defendant's Consent Order with the CFPB. The CFPB investigated Defendant's debt-buying and its practices relating to consumer disputes and identified numerous violations of federal law. Defendant's "open" accounts contain Class Members with accounts that contain inaccurate or erroneous information, overstate interest, are not supported by account-level documentation, have been challenged by consumers without investigation, or are otherwise time-barred or unenforceable under state law. Class Members with "open" accounts have not been provided with any information substantiating Defendant's representation that all Class Members with "open" accounts owe defendant a valid and enforceable debt.

Class membership is not ascertainable for purposes of determining who is entitled to relief. Defendant had knowledge from debt sellers that many of the accounts it purchased contained approximate balances that did not reflect payments by the consumer or credits to the account. Defendant did not investigate or substantiate the amounts owed with account-level documentation. Defendant also had knowledge from debt sellers that many accounts it purchased had overstated interest amounts. Despite these facts, Defendant engaged in a pattern or practice of collecting debts without a reasonable basis. Significantly, Defendant only "closed" an account if a consumer provided proof that he or she did not owe the debt, even if Defendant knew the

information it possessed was inaccurate or unsupported, or if monthly statements showed a zero-balance or the debt was time-barred. Defendant cannot be permitted to apply "credits" to Class Member accounts because Defendant does not know with certainty that all "open" accounts are supported and enforceable. Likewise, Defendant's practices demonstrate that many "open" accounts should in fact be "closed." Nothing in the Settlement addresses how the Parties, the Administrator, or the Court will ascertain which Class Member accounts meet the requirements of Defendant's Consent Order. This Settlement permits Defendant to circumvent its Consent Order, apply credits to potentially uncollectible debts, and obtain a broad Release from a nationwide class for less than $2 million. The Court should deny Final Approval until Defendant can demonstrate each "open" account satisfies the CFPB Consent Order. The Court cannot turn a blind eye to Defendants practices, after all, they form the basis of this suit. *See e.g. Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432-33 (2013); see also *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Class certification is not proper. Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022 (internal quotations omitted). Rule 23(b)(3), calls for two separate inquiries: (1) do issues of fact or law common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Here, individual issues unique to individual Class Members predominate. Each Class Member's debt must be substantiated by Defendant. Such a result is not possible unless individual mini-trials are conducted by the Court. Because individual issues predominate, the proposed class action is not superior. See Newberg on Class Actions, § 3.3 at 164 (5th ed. 2012). Further, the CFPB

investigation demonstrates that Defendant does not possess account-level documentation for each Class Member, therefore, the Court does not have any means to identify putative class members, including the nature of their debt. Rule 23 "does not set forth a mere pleading standard." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (citations and internal questions omitted). The Parties have not demonstrated that Midland's records are accurate. The CFPB investigation suggests Defendant's records are anything but accurate. Plaintiffs bear the burden of establishing that Defendant's records are in fact useful for identification purposes, and that identification will be administratively feasible. Because Plaintiffs have not met that burden, the Court should deny Class Certification.

## **SETTLEMENT RELEASE IS NOT FAIR**

The Settlement Release is not fair. The Settlement release extends beyond the TCPA claims alleged in this case and—without notice to the Class—sweeps in claims and defenses under the Fair Debt Collection Practices Act and the Fair Credit Reporting Act. The proposed release provides:

> The Class…[releases] [Defendant] from any and all liabilities, claims, causes of action, damages, penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, suspected or unsuspected, which were asserted in the Action or are related to the claims asserted in the Action, any and all claims relating to the making, placing, dialing or initiating of calls using an automatic telephone dialing system or artificial or prerecorded voice, any and all claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations promulgated thereunder or related thereto, and any and all claims for violation of any laws of any state that regulate, govern, prohibit or restrict the making, placing, dialing or initiating of calls using an automatic telephone dialing system, an artificial or prerecorded voice, or any automated process or technology (hereafter, collectively, the "Released Claims").

During the Class Period, Defendant made excessive calls to Class Members and engaged in conduct to harass, oppress, or abuse Class Members in an attempt to collected alleged debts in violation of sections 806 and 806(5) of the FDCPA, 15 U.S.C. §§ 1692d, 1692d(5). Defendant

also made calls at inconvenient times to Class Members, which violated sections 805(a)(1) of the FDCPA, 15 U.S.C. §1692c(a)(1). Defendant also failed to adequately investigate challenges made by Class Members disputing the validity of debt purchased by Midland, which violated section 623(a)(8)(E) of the FCRA, 15 U.S.C. §§1681s-2(a)(8)(E) and (b). The Settlement does not adequately notify Class Members that the Release sweeps in claims that were never alleged by Plaintiffs. The Release also effectively precludes Class Members from asserting FDCPA and FCRA claims and defenses against Defendant in active lawsuits or through post-judgment relief. It is not sufficient to state that Class Members can opt-out; the CFPB's investigation indicates that Defendant does not have accurate personal information for many of the Class Members. As a result, many Class Members do not know their rights are before the Court and it is up to the Court to protect their interests.

## **INADEQUATE RELIEF**

The Relief is inadequate. The Settlement provides $13 million in "credits" to "open" accounts and $2 million in cash to "closed" accounts. The facts above demonstrate that the $13 million in credit relief is illusory and benefits Defendant alone. Ninety percent of the Class falls into the "open" category. Defendant has not substantiated the alleged debts and, even if the debts were supported and enforceable, many of the debts have interest rates that exceed state usury laws. The Second Circuit recently ruled that Defendant violated state usury laws by attempting to collect excessive interest rates. *Madden v. Midland Funding, LLC*, No. 14-2131-cv, 2015 WL 2435657, at *1, *8 (2d Cir. May 22, 2015). The Second Circuit's decision in *Madden* held that a nonbank entity taking assignment of debts originated by a national bank is not entitled to protection under the National Bank Act (NBA) from state law usury claims. *Madden v. Midland Funding, LLC*, 2015 WL 2435657, at *1, *8 (2d Cir. May 22, 2015). Further, $13 million in

credit relief is illusory because Defendant purchases charged-off debt for pennies on the dollar and the "credits" will be applied to interest first, which may be overstated or contrary to state usury law. The $13 million credit relief does not disgorge Defendant, it merely allows Defendant to credit itself. Here, 90% of the Class will receive no real benefits. In fact, 90% of the Class will be in a worse position now than they were before the Settlement. Not only will all claims related to the action, including FDCPA and FCRA claims, be barred against Defendant, many Class Members will still be liable for thousands of dollars in potentially unenforceable debt.

Much like the credit relief, the cash relief is inadequate as well. From 2009 to 2015 alone, Defendant's gross income was $384 million. The Class contains more than a million Class Members. The Sixth Circuit recently found a settlement involving Midland was unfair to Class Members because the cash relief of $17.38 was de minimis compared to the benefits obtained by the class representatives, who received thousands of dollars in benefits as a result of the Settlement. *See Vassalle v. Midland Funding LLC*, 708 F.3d 747 (6th Cir. 2013).

The Class is not adequately compensated given the broad release in this Settlement. Absent Class Members are giving up valuable litigation rights that are crucial to defend against the abuses prevalent in the debt buying industry. The CFPB investigation demonstrated that Defendant violated the FDCPA and FCRA when it engaged in robocalls to Class Members. As a consequence of giving up affirmative litigation rights, unnamed class members, unlike class representatives, will be prevented from obtaining the benefit of counsel to defend themselves in state courts against the fraudulent claims of Defendant. This Settlement blocks those Class Members from asserting claims and defenses in past, present, and future individual suits against Defendant. The Settlement also precludes Class Members from seeking greater relief on their own. State and federal law damages would likely provide greater relief that is being provided

through this Settlement. For example, the FDCPA provides damages for physical distress, emotional distress, lost wages, wage garnishment recovery, and statutory damages of up to $1,000. Similarly, the FCRA provides actual damages and statutory damages for willful violations and actual damages for negligent violations. The Court should deny Final Approval because the Class relies is inadequate.

## SETTLEMENT IS CONTRARY TO CHURCHILL FACTORS

The Settlement is contrary to two significant factors identified by the Ninth Circuit. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). First, the amount offered in settlement is inadequate and second, there is a strong presence of a governmental agency, which this settlement implicates. Here, the credits to "open" accounts is illusory and do not provide any real benefits to the Class. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (stating that "[t]he relief that this settlement provides to unnamed class members is illusory" and therefore finding the settlement unfair); *cf. Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012) (stating that dollar value of the cy pres fund should not be fictitious). The Settlement benefits Defendant by limiting its cash exposure to $2 million dollars in exchange for a full release of any and all claims and defenses by absent class members relating to any phone call made by Defendant to a class member. The amount offered in settlement is illusory and perfunctory at best. Second, this Settlement directly impacts the Consent Order between Defendant and the CFPB. The Settlement permits Defendant to take actions that are counter to the Consent Order and state law. "A [class action] settlement that authorizes the continuation of clearly illegal conduct cannot be approved." *Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977); *accord Isby v. Bayh*, 75 F.3d 1191, 1197 (7th Cir. 1996); *Grunin v. Int'l*

*House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The Court should deny final approval under the Ninth Circuit's Churchill factors.

### IF FINAL APPROVAL IS GRANTED, THE FEE AWARD SHOULD BE REDUCED TO A PERCENTAGE OF TOTAL CASH RELIEF

If the Court grants Final Approval, which it should not, the Court should reduce Class Counsel's fee award to a reasonable percentage of the total cash relief. This Settlement bears many hallmarks of an unfair settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 958 n.12, 960 (9th Cir. 2003). First, Class Counsel is requesting $2.4 million in cash when the Class is receiving only $2 million in cash benefits. Second, Class Counsel is receiving a disproportionate distribution of the settlement and 90% of Class Members will receive no monetary distribution whatsoever. Though absent Class Members are giving up valuable claims and defenses in exchange for little to no relief, Class Counsel is amply rewarded. Such a result is unfair to the Class. *See Hanlon*, 150 F.3d at 1021. The Court should reduce Class Counsel's fee award to a reasonable percentage of the total cash relief provided to the Class.

_____
Rhadiante Van de Voorde, Objector

Dated: April 18, 2016

/s/ Matthew Kurilich
Matthew Kurilich
California Bar Number 30172
17321 Irvine BLVD STE 115
Tustin CA 92780
Telephone: 714-248-6023
Facsimile: 714-734-3716
mattkurilich@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on April 18, 2016 and served by the same means on all counsel of record.

                                    */s/ Matthew Kurilich*
                                    Matthew Kurilich