Douglas J. Campion (SBN 75381)
THE LAW OFFICES OF DOUGLAS J. CAMPION, APC
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091
Email: doug@djcampion.com

James O. Latturner
EDELMAN COMBS LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone: (312) 739-4200
Email: info@edcombs.com

*Attorneys for Plaintiffs and the Settlement Class*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | Case No. 11-md-2286-MMA (MDD)<br>Member cases: 10-cv-02261<br>10-cv-02600<br>10-cv-02368<br>10-cv-02370<br>**CLASS ACTION**<br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: August 26, 2016<br>Time: 9:00 a.m.<br>Courtroom:3A<br>Judge Michael M. Anello |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1
II. PROCEDURAL BACKGROUND ....................................................................... 4
III. ACTIVITY IN CASE AFTER GRANT OF PRELIMINARY APPROVAL ........ 4
   A.   PRELIMINARY APPROVAL AND CONDITIONAL CERTIFICATION ............ 4
   B.   CLASS NOTICE DISSEMINATION ........................................................... 5
   C.   CLAIMS PROCESS ................................................................................ 6
   D.   RESPONSE TO CLASS MOTION .............................................................. 7
   E.   CAFA NOTICE ..................................................................................... 7
IV. LEGAL ARGUMENT ........................................................................................ 7
   A. CLASS ACTION SETTLEMENT APPROVAL PROCESS ................................ 8
   B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ..................... 8
      1. THE STRENGTH OF PLAINTIFFS' CASE AND THE RISKS, EXPENSES, COMPLEXITY AND LIKELY DURATION OF FURTHER LITIGATION ................. 9
         A. CHALLENGES TO THE CLAIMS ON THEIR MERITS ................ 10
         B. THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT TRIAL ........................................................................... 10
      2. THE AMOUNT OFFERED IN SETTLEMENT AND AMOUNT TO BE PAID OR CREDITED PER CLAIMANT ........................................................ 11
      3. THE EXTENT OF DISCOVERY COMPLETED ........................................... 13
      4. THE EXPERIENCE AND VIEWS OF COUNSEL ......................................... 13
      5. THE REACTION OF CLASS MEMBERS ................................................... 14
      6. THE PRESENCE OF GOOD FAITH, ABSENCE OF COLLUSION, AND THE APPROVAL OF A THIRD-PARTY MEDIATOR SUPPORT FINAL APPROVAL OF THE SETTLEMENT ........................................................................... 14
V. CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**CASES**

*Bert v. AK Steel Corp.*, 2008 WL 4693747 (S.D. Ohio Oct. 23, 2008) ............... 14

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ................................. 12

*Churchill Vill., LLC v. Gen. Elec. Co.*, 361 F.3d 566 (9th Cir. 2004) ................. 13

*Class Plaintiff v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ........................... 7

*Dennis v. Kellogg Co.*, 2010 WL 4285011 (S.D. Cal. Oct. 14, 2010) .................. 14

*Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. 2010) ......................................................................................................... 10

*Garner v. State Farm Mut. Ins.*, 2010 WL 1687832 (N.D. Cal. 2010) ................... 8

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ........................................................ 7

*Hanlon v Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................... 5, 7, 8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......................................................................................................... 13

*In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................................................................................................... 12

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .................................... 7

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009) ................... 8

*Larson v. Sprint Nextel Corp.*, 2010 WL 239934 (D.N.J. Jan. 15, 2010) ............ 14

*Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300 (N.D. Cal. 1997) ......................................................................................................... 12

*Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762 (D.N.J. Sept. 14, 2009) ......................................................................................................... 13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 13

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............ 8

*Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537 (W.D. Wash 2009) ......................... 9

*Rodriguez v. West Publ'g Corp.*, No. 05-3222, 2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) ................................................................................. 13

*Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010) .................................................................................... 13

*Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n,* 79 F.R.D. 571 (E.D. Pa. 1978) ................................................................................................ 13

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010) ......................................................................................................... 9

**STATUTES**

28 U.S.C. §1715(b)(1)-(8) ....................................................................................... 7

28 U.S.C. §1715(b) ................................................................................................. 7

**OTHER AUTHORITIES**

General Criteria for Settlement Approval (3d ed. 1992) ........................................................ 8

McLaughlin on Class Actions § 6:7 (8th ed) ............................................................ 14

*Newberg on Class Actions* § 11.41 (4th Ed. 2002) ...................................................... 7

**RULES**

Fed. R. Civ. P. 23 ........................................................................................................ 10

Fed. R. Civ. P. 23(e) ...................................................................................................... 7

Fed. R. Civ. P. 23(e)(1) ............................................................................................. 5, 8

## I. INTRODUCTION

Plaintiffs Christopher Robinson, ("Robinson"), Eduardo Tovar ("Tovar"), and Dave Scardina ("Scardina") (collectively "Plaintiffs"), submit this motion for final approval of a proposed settlement (the "Settlement") of this action (the "Litigation"), which is unopposed by defendants Midland Funding, LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM"), and Encore Capital Group, Inc. ("Encore") (collectively referred to as "Defendants").[1] As shown by the response of the Class members, this Settlement received an overwhelming response, with almost 330,000 claims being filed. Out of more than 6,000,000 postcard notices received by the Class members, and further notice to other Class members by publication and internet banner ads, only 446 persons excluded themselves from the settlement (including 11 untimely opt-outs) and only between 15 and 32 objected. These numbers confirm that the Settlement is fair and reasonable and should be given final approval.

The terms[2] of the Settlement are set forth in the Settlement Agreement and Release (hereinafter the "Agreement") attached as Exhibit A to the Declaration of Douglas J. Campion In Support of Preliminary Approval (ECF No. 281-2). As discussed in Plaintiffs' Motion for Preliminary Approval, the Parties' Settlement Agreement resolves all Telephone Consumer Protection Act ("TCPA") claims in this matter against Defendants arising from collection calls made between November 2, 2006 and August 31, 2014, inclusive. *See* Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; Setting Final Approval Hearing, ("Preliminary Approval Order"), ECF No. 291.

As set forth in the Preliminary Approval papers, the Settlement provides the following benefit to the Class to be paid by Defendants:

---

[1] Plaintiffs and Defendants are referred to collectively as "the Parties".
[2] Unless otherwise specified, defined terms used in this memorandum are intended to have the meaning ascribed to those terms in the Agreement.

Case No. 11MD02286 MMA MDD -1- PLAINTIFFS' PS & AS ISO FINAL APPROVAL

1. $13,000,000 Credit Component, with pro rata credits to be credited to the Approved Claimants' accounts held by Defendants.
2. $2,000,000 Cash Component, with pro rata cash payments to be paid to the Approved Claimants that do not have existing accounts with Defendants.
3. All costs of Notice and Claims Administration presently estimated to be between $3,098,608 and $3,352,407. (The actual amount incurred will be submitted to the Court in a declaration by KCC prior to the Final Approval hearing. )
4. Attorneys' fees and costs of litigation to be paid to Plaintiffs' counsel, subject to Court approval, in the amount of $2,400,000.

Thus, the Settlement has a value of at least $20,498,608.00.

The reaction of the Class and the result obtained establishes that this settlement clearly deserves final approval. Each approved Credit Group claimant will receive an approximate credit on their open collection accounts with Defendants in the amount of $58.84. Each approved Cash Group claimant will receive a cash payment in the approximate amount of $23.49. These amounts are based on the approved claims filed during the lengthy 90 day claims period, and after giving the proposed credit claimants the right to contest the characterization of their claim as a credit claim. *See* Declaration of Douglas J. Campion In Support of Final Approval ("Campion Decl.") ¶¶ 21-23. This is an excellent result for the Class.

Furthermore, several types of notice have been given to apprise the Class members of their rights to either submit a claim, exclude themselves or object to the settlement. These notices resulted in 328,749 timely claims being submitted (and 1,006 untimely claims). The 6,266,704 persons for whom Defendants had names and addresses were mailed a postcard with the class notice. Including notices that KCC re-sent after being returned by the Post Office, approximately 6,034,167 postcard notices were received by the Class members identified in Defendant's

records. The approximately 35,279,415 Class members, for whom Defendants did not have names or address, were provided notice through publication and internet banner advertising as set forth in the Court's Preliminary Approval Order. KCC estimates the notice reached approximately 75.3% of likely Class members, and average of 1.8 times each. See Declaration of Daniel Burke Re Implementation of Settlement Notice Plan ("Burke Decl.") ¶¶ 7-10, filed herewith. (Mr. Burke works for the claims administrator Kurtzman Carson Consultants ("KCC")); Declaration of Douglas J. Campion In Support of Final Approval ("Campion Decl.") ¶ 16.

The dates for filing claims, for opting out and for objecting passed several months ago. There have been only 446 requests for exclusion (including 11 untimely claims), a tiny percentage of even the group of persons receiving postcard notice. Campion Decl. ¶ 24. In addition, there have been only between 15 and 30 "objections" filed, with many not designated as "objections" but instead seem to be stating complaints not just about the settlement but about Defendants' collection practices. A hearing is scheduled for August 17, 2016 before the Special Master to decide the merits of those objections. *Id*. at ¶ 25. Counsel will advise the Court at the Final Approval hearing as to the Special Master's disposition of the objections. The number of objections is also miniscule relative to the number of persons in the Class. These factors also support final approval.

Plaintiffs brought this action on behalf of themselves and all others similarly situated that received one or more telephone calls on their cellular telephones that were placed by Defendants through the use of an automatic telephone dialing system ("ATDS") and/or prerecorded voice without the called party's consent. The settlement was followed by confirmatory discovery to confirm the processes used by Defendants in ascertaining the cell phone numbers called and the Class membership was adequate. Based on everything before the Court and all facts known to counsel, including the participation by the Class members, Plaintiffs believe that the settlement is fair, reasonable and adequate and should be approved.

## II. PROCEDURAL BACKGROUND

The history of the case is set forth in the Plaintiffs' Memorandum of Points and Authorities in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class ("Prelim. App."), ECF No. 281-1. In short, while engaged in litigation, the parties mediated a settlement over a several year period before the Hon. Herbert B. Hoffman, Ret.

## III. ACTIVITY IN THE CASE AFTER GRANT OF PRELIMINARY APPROVAL

### A. PRELIMINARY APPROVAL AND CONDITIONAL CERTIFICATION

On December 9, 2015, (ECF No. 291) this Court preliminarily determined that the settlement was fair, reasonable, and adequate. *Id*. at page 2.[3] This Court preliminarily approved the Parties' settlement agreement in which the following settlement class was provisionally certified:

> All persons in the United States who were called on a cellular telephone by Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) using a dialer or by prerecorded voice message without prior express consent during the period from November 2, 2006 through August 31, 2014, inclusive.
>
> Excluded from the Class are the Judges to whom the Action is assigned and any member of the Judges' staffs and immediate families, as well as all persons who validly request exclusion from the Settlement Class.

Preliminary Approval Order at 3.

Following Preliminary Approval, KCC, the claims administrator, has administered the settlement in accordance with the Court's Preliminary Approval Order and the Settlement Agreement. Burke Decl. ¶¶ 6-19.

---

[3] In compliance with this Court's Preliminary Approval Order, Plaintiffs filed their Motion for Attorneys' Fees and Approval of Costs, and for Incentive Payments (ECF No. 318) on March 23, 2016. That motion is to be heard at the same time as the present motion.

**B. CLASS NOTICE DISSEMINATION**

"Adequate notice is critical to court approval of a class [action] settlement." *Hanlon v Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(1). KCC administered the notice process following the Preliminary Approval Order. Preliminary Approval Order, pp. 3-5. Burke Decl. ¶ 6. In accordance with the Settlement Agreement and the Preliminary Approval Order, KCC provided direct mail notice, publication notice, a settlement website, Internet banner advertisements, and publication of Web Notice. *Id.* at ¶¶ 7-15. The postcard notices were mailed out originally to 6,266,704 Class members for whom Defendants had names and addresses. *Id.* at ¶ 10. After returns and remails, there were 6,034,167 persons who received the notice postcards (*Id.*), or about 96% of the Class members whose names and addresses are contained in Defendants' records. The remaining Class members (approximately 35,169,211) for whom Defendants did not have names and addresses received notice as directed in the Preliminary Approval Order, by publication, internet banner ads and the notice posted on the settlement website, allowing anyone searching for the settlement on the internet to easily find the settlement website and notice. *Id.* at ¶¶ 12-14.

The various forms of Class Notice provided detailed information regarding (a) class members' rights, including the manner in which objections and exclusions could be lodged; (b) the case's nature, history and progress; (c) the proposed settlement and reason for the settlement; (d) the settlement's benefits; (e) Class Counsel's requested fees and costs; (f) the Fairness Hearing's date, time and location; and, (g) Class Counsel's contact information. Campion Decl., ¶ 17.

The preliminary estimate of the cost of notice and claims administration as provided at Preliminary Approval was between $3,098,608 and $3,352,407, depending on the claims rate. However, that cost, regardless of amount, will be paid by Defendants directly to KCC separate from the Settlement Fund. Settlement Agreement, Sections 8.06-8.07. The revised and updated estimate of the cost of

notice and claims administration will be provided at the time of the Final Approval Hearing by KCC.

### C. CLAIMS PROCESS

The Class members were given 90 days to submit claims to the Claims Administrator. Submitting a claim was simple – a claimant could submit them online, by calling a toll-free 800 number or by downloading a claim form and mailing it in. If the person received a postcard, each postcard had a claim identification number, expediting the submission. If the person did not have a postcard, they could submit any cellphone number on which they believed they may have been called, and if that number matched any cellphone number on the Class List of numbers called, they could submit a claim. As a result of this simple claims procedure, a substantial number of claims – 329,755 – were submitted, including 1,006 late claims. Burke Decl., ¶ 20.

### D. RESPONSE TO CLASS NOTICE

Class members contacted KCC and Class Counsel to discuss the Class Notice, their options and the case status. Out of all the class members that received notice, only between 15 and 32 persons objected to or complained about the settlement and 446 requested exclusion, including 11 late opt-outs. Burke Decl. ¶ 21. As of the date of this filing, the claims administrator is still waiting to see if additional claims will be filed in response to KCC's deficiency letters, letters asking claimants who submitted claims with missing information to correct their claims. Once that process is completed prior to the Final Approval hearing, Plaintiffs will have a more exact number of approved claimants in both groups to provide the Court, as well as a more exact dollar amount of credits and cash payments to be provided to claimants in each group.

### E. CAFA NOTICE

Pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("CAFA Notice"), notice of the Settlement was sent by Defendants to the Attorney General

of the United States and to the requisite state Attorneys General by sending them the documents specified by 28 U.S.C. §1715(b)(1)-(8). See ECF No.306.

## IV. LEGAL ARGUMENT

"In evaluating a class action settlement under Rule 23(e), the district court determines whether the settlement is fundamentally fair, reasonable, and adequate." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e). The purpose of this Rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Id*. In evaluating a class action settlement, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Hanlon*, 150 F.3d at 1025 (9th Cir. 1998) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Nevertheless, the District Court does not have the "ability to delete, modify, or substitute certain provisions." *Id*. at 1026. "The settlement must stand or fall in its entirety." *Id*.

### A. THE CLASS ACTION SETTLEMENT APPROVAL PROCESS

Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.41 (4th Ed. 2002) (gathering cases). The traditional means for handling claims like those at issue here – individual litigation – would require a massive expenditure of public and private resources and, given the relatively small value of each putative class member's claim, would be impractical. Thus, the proposed Settlement is the best vehicle for Class members to receive the relief to which they are entitled in a prompt and efficient manner.

### B. THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Before granting final approval of a class action settlement, a reviewing court must first find the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1). In evaluating whether a class settlement is "fair, adequate and reasonable," courts generally refer to eight criteria, with differing degrees of emphasis: (1) the likelihood of success by Plaintiffs; (2) the amount of discovery or evidence; (3) the settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendation of neutral parties, if any; (7) number of objectors and nature of objections; and, (8) the presence of good faith and the absence of collusion. *See* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*") § 11.43 "General Criteria for Settlement Approval" (3d ed. 1992). *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. 2009); *Garner v. State Farm Mut. Ins.*, 2010 WL 1687832, at *13 (N.D. Cal. 2010) ("Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable."). This is because "[t]he extent of the discovery conducted to date and the stage of the litigation are both indicators of counsel's familiarity with the case and of Plaintiff having enough information to make informed decisions." *Knight*, 2009 WL 248367, at *4.

In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Pelletz v. Weyerhaeuser Co.*, 255 F.R.D. 537, 544 (W.D. Wash 2009) (same). Here, the record before the Court demonstrates that the settlement agreement satisfies the Ninth Circuit's standard and that final

approval is warranted. Thus, the Parties request this Court grant final approval of the settlement.

### 1. <u>The Strength of Plaintiffs' Case and the Risks, Expenses, Complexity and Likely Duration of Further Litigation</u>

Plaintiffs' claims against Defendants have merit and would make a compelling case if Plaintiffs' claims were tried. If Plaintiffs were to prevail, Defendants could face substantial statutory penalties. Nevertheless, Plaintiffs and the Class would face a number of challenges if the litigation were to continue, justifying this compromise settlement.

#### a. *Challenges to the claims on their merits*

In Plaintiffs' Preliminary Approval Motion, there were a number of potential issues outlined if the case proceeded on the merits. Memo. of Points & Authorities for Prelim. App., ECF No. 281-1, pp. 15-17. Those include various individual issues relating to prior express consent, the possibility of appeals, whether a telephone call was placed to a cellular telephone or landline. *Id*. Of course, Defendants deny any and all liability related to Plaintiffs' Complaint. While Plaintiffs believe that they could have overcome each of these issues, the risk to the class was substantial. Thus, Plaintiffs believe it is in the best interest of the Class to accept this substantial monetary benefit and seek final approval of this settlement.

#### b. *The risk of maintaining class action status throughout trial*

The benefits of settlement and a plaintiff's chances of success are typically evaluated together. *See, e.g. Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) ("An important consideration in judging the reasonableness of a settlement is the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement."). Through discovery and confirmatory discovery, Plaintiffs believe that they obtained sufficient information to establish that this Class satisfies the requirements of Fed. R. Civ. P. 23; however, Defendants have focused on the issues addressed above to argue that Plaintiffs and the Class

members face numerous risks in moving forward and that class treatment of this matter is inappropriate.

In addition, there is a substantial risk of losing inherent in any jury trial. Even if Plaintiffs prevailed at trial, Defendants would almost certainly appeal, threatening a reversal of any favorable outcome. *See Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D. Cal. 2010) ("[L]iability and damages issues – and the outcome of any appeals that would likely follow if the Class were successful at trial – present substantial risks and delays for Class Member recovery.").

Under the Settlement Agreement, the Class Members may avoid each of the described risks and receive substantial cash benefits. "[T]his settlement...guarantees a recovery that is not only substantial, but also certain and immediate, eliminating the risk that class members would be left without any recovery...at all." *Fulford*, 2010 U.S. Dist. LEXIS 29042, at *8. Thus, Plaintiffs contend that the substantial risk weighs in favor of granting final approval of this matter.

### 2. The Amount Offered in Settlement and Amount to Be Paid or Credited Per Claimant

The agreed-upon settlement was reached after extensive negotiation through literally years of mediation with Hon. Herbert B. Hoffman (Ret.). It reflected a compromise amount that experienced Class Counsel and their clients believed reflected a fair result in light of the burden, risk, and expense both sides faced through continued litigation in light of similar TCPA class action settlements that had received final court approval, which are discussed in more detail below.

The Settlement requires Defendants to establish two settlement funds, a $13,000,000 fund to provide credits to claimants having open accounts with Defendants, and a $2,000,000 fund to provide cash payments to those persons that have no open Midland accounts.[4] From those two funds, the claimants will receive

---

[4] As explained in the motion for Preliminary Approval, p.6, the Cash Component is less than the Credit Component because the group to be covered by the Cash

either their pro rata share of the credits based on the number of credit claimants, or a pro rata share of the cash compensation. In addition, this is a non-reversionary fund meaning no amount of this fund will revert back to Defendants. Given the potential issues described above, this settlement represents an outstanding result for Class Members, particularly because the damages are purely statutory in that Class Members have not suffered any out-of-pocket losses or other economic harm.

This case has a much better claims rate than what is anticipated in these TCPA or other consumer cases. Based on the 6,034,167 postcard notices delivered (those Class members receiving actual direct notice), and based on 329,755 claims to date, that results in over a 5.4 % claims rate. Of course, based on the entire Class of over 41,000,000 persons, the percentage is much smaller. Campion Decl. ¶ 21.

Recognizing that the final numbers of approved claims are not presently known at the time of filing this brief due to the pending deficiency claims, and late − filed claims for which Plaintiffs will seek permission to include in the payment of claims, Class Counsel estimate that each Class Member will receive a pro rata credit in the approximate amount of $58.00, and the cash component group members will receive an approximate amount of $23.00.[5] *Id*. Those numbers should not vary significantly, regardless of the changes in the number of approved claims or deductions from the Cash Component

### 3. The Extent of Discovery Completed

The Settlement was reached only after Class Counsel's thorough investigation and analysis of the factual and legal issues involved. Class Counsel spent significant time thoroughly investigating the factual and legal claims involved in this Action, prior to filing this Action. Campion Decl. ¶ 9.. In addition, throughout the three years of mediation, Defendants also provided Plaintiffs with informal

---

Component was estimated in mediation by Defendants to be approximately 10% of the persons on the Notice List.
[5] The $7,500 requested for incentive payments ($2,500 each) will be paid from the Cash Component, as will any fees incurred for the services of the Special Master. Thus, the exact dollar amount paid to that group will not be known until all such fees are known and deducted. Campion Decl. ¶ 21.

discovery relating to the proposed Class and the number of calls made. Once the settlement was reached, Defendants responded to formal confirmatory discovery about the number of class members, including interrogatories, documents requests and the deposition of Defendants' Person Most Knowledgeable about the class membership and its determination, all to confirm that the settlement was fair, reasonable and adequate. *Id*.at ¶ 11.

### 4. The Experience and Views of Counsel

Class Counsel are particularly experienced in litigating TCPA claims and have a keen understanding of the legal and factual issues involved in this case. Campion Decl., ¶ 2, 27; Declaration of James O. Latturner ("Latturner Decl.") ¶¶ 2, 10. Based upon this experience, Class Counsel fully endorse this settlement as fair, adequate and reasonable which weighs heavily in favor of the Court approving the settlement. Campion Decl., ¶ 7; Latturner Decl. ¶¶ 5, 9. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of Plaintiff's counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

### 5. The Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (3 objections out of 75,630 notices); *Churchill Vill., LLC v. Gen. Elec. Co.,* 361 F.3d 566, 577 (9th Cir. 2004) (approving the district court's finding

discovery relating to the proposed Class and the number of calls made. Once the settlement was reached, Defendants responded to formal confirmatory discovery about the number of class members, including interrogatories, documents requests and the deposition of Defendants' Person Most Knowledgeable about the class membership and its determination, all to confirm that the settlement was fair, reasonable and adequate. *Id*.at ¶ 11.

### 4. The Experience and Views of Counsel

Class Counsel are particularly experienced in litigating TCPA claims and have a keen understanding of the legal and factual issues involved in this case. Campion Decl., ¶ 2, 27; Declaration of James O. Latturner ("Latturner Decl.") ¶¶ 2, 10. Based upon this experience, Class Counsel fully endorse this settlement as fair, adequate and reasonable which weighs heavily in favor of the Court approving the settlement. Campion Decl., ¶ 7; Latturner Decl. ¶¶ 5, 9. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of Plaintiff's counsel should be given a presumption of reasonableness."); *Linney v. Cellular Alaska P'ship*, 1997 U.S. Dist. LEXIS 24300, at *16 (N.D. Cal. 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair.").

### 5. The Reaction of Class Members

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class action settlement are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (3 objections out of 75,630 notices); *Churchill Vill., LLC v. Gen. Elec. Co.,* 361 F.3d 566, 577 (9th Cir. 2004) (approving the district court's finding

that this fairness factor weighed in favor of settlement when "only 45 of approximately 90,000 notified class members objected to the settlement"); *Rodriguez v. West Publ'g Corp.,* No. 05-3222, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (54 objections out of 376,000 class members); *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n,* 79 F.R.D. 571 (E.D. Pa. 1978) (approving settlement where there were 8,000 opt outs out of 188,000).

The response by class members demonstrates widespread approval of the settlement. Out of 6,034,167 Class members who received postcard notices, and out of 35,279,415 who were provided notice by publication, internet banner notice and the settlement website, there have been only 446 opt-outs (including 11 late opt-outs) and only between 15 and 32 objectors. Campion Decl. ¶¶ 24-25. A total of 329,755 class members submitted claims, including 1,006 late claims. *Id.* at ¶ 21. The small number of opt-outs and the very few objectors show that class members viewed the settlement as fair, reasonable, and adequate.

### 6. The Presence of Good Faith, Absence of Collusion, and the Approval of a Third-Party Mediator Support Final Approval of the Settlement.

In addition to considering the above factors, the Ninth Circuit has indicated that the Court should carefully review the settlement for any signs of collusion or conflicts of interest. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *5 (D.N.J. Sept. 14, 2009) (approving a settlement after a one-day mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiation virtually insures that the negotiations were conducted at arm's length and without collusion between the parties (emphasis added)"); *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346, at *6 (C.D. Cal. June 15, 2010) (approving settlement after a one-day mediation and noting that "the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive (emphasis added)"; *Larson v. Sprint Nextel Corp.*, 2010

WL 239934, at *11 (D.N.J. Jan. 15, 2010) (same); *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008); 2 McLaughlin on Class Actions § 6:7 (8th ed) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion (emphasis added)."); and, *Dennis v. Kellogg Co.*, 2010 WL 4285011, at *4 (S.D. Cal. Oct. 14, 2010) (the parties engaged in a "full-day mediation session," thus establishing that the proposed settlement was noncollusive (emphasis added).").

As detailed above, the Settlement is the result of adversarial arm's-length negotiations between attorneys experienced in the litigation, certification, trial and settlement of nationwide class action cases. In addition, the Hon. Herbert B. Hoffman, Ret., facilitated the final settlement of this action with a lengthy almost three-year mediation. Campion Decl. ¶ 10. Accordingly, no signs of collusion or conflicts of interest are present here.

## V. CONCLUSION

This case resulted in a settlement of over $20,000,000 in value, including $13,000,000 in credits to Class Members accounts and $2,000,000 in cash payments. It has the deterrent effect of preventing such conduct in the future. The relatively few requests for exclusion and objections confirm the adequacy of the settlement. Furthermore, the attorneys' fees and costs, including costs of notice and claims administration, will be paid separate from the settlement fund, creating

additional value for the Class. For all of the foregoing reasons, Plaintiffs respectfully request this Court enter an Order granting final approval of the Settlement.

Respectfully submitted,

LAW OFFICES OF DOUGLAS J. CAMPION, APC

Dated: July 22, 2016

*/s/ Douglas J. Campion*
Douglas J. Campion
17150 Via Del Campo, Suite 100
San Diego, CA 92127
Telephone: (619) 299-2091


EDELMAN COMBS LATTURNER & GOODWIN, LLC

Dated: July 22, 2016

*/s/James O. Latturner*
James O. Latturner
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
Telephone: (312) 739-4200

Attorneys for Plaintiffs and the Settlement Class