UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION

Case No. 11-md-2286-MMA (MDD)

Member Cases: 10-cv-02221
10-cv-02600
10-cv-02368
10-cv-02370

REPORT AND RECOMMENDATION OF SPECIAL MASTER RE: FINAL APPROVAL FOR CLASS ACTION SETTLEMENT

I

INTRODUCTION AND CLAIMS ADMINISTRATION PROCESS

On July 22, 2016, Plaintiffs Robinson, Tover and Scardina submitted their motion for final approval of a proposed settlement of this Multi-District Litigation ("MDL") which is unopposed by Defendants Midland Funding LLC ("Midland Funding"), Midland Credit Management, Inc. ("MCM") and Encore Capital Group, Inc. ("Encore") (collectively referred to as "Defendants" or "Midland").

On December 9, 2015, this Court entered "Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement." The Order, inter alia, (1) preliminarily certified (for settlement purposes only) the Settlement class;

(2) preliminarily approved the Settlement Agreement; (3) appointed Plaintiffs Robinson, Tover and Scardina as Class Representatives; (4) and appointed Douglas J. Campion, Esq. and James O. Latturner, Esq. as Class Counsel, and David Schafer, Esq. as Liaison Counsel. This Court preliminarily scheduled the date and time of the Final Approval Hearing for August 26, 2016, which has been continued for good cause to September 30, 2016.

The terms of the Settlement are set forth in the Settlement Agreement and Release previously filed with this Court. The Settlement Agreement resolves all Telephone Consumer Protection Act (TCPA) claims in this matter against Defendants arising from collection calls made between November 2, 2006 and August 31, 2014, inclusive.

As set forth in the Preliminary Approval Motion, the Settlement provides the following benefit to the Class to be paid by Defendants:

1. $13,000,000 Credit Component with pro rata credits to approved Class Member's accounts held by Defendants;

2. $2,000,000 Cash Component with pro rata cash payments to be paid to approved Class Members who do not have existing accounts with Defendants;

3. All costs of Notice and Claims Administration presently estimated to be between $3,098,608 and $3,352,407. (Final amount to be submitted in a declaration by Class Administrator prior to Final Approval Hearing.)

4. Attorney fees and costs of litigation to be paid to Plaintiffs' counsel, subject to Court approval in the amount of $2,400,000.

Class Counsel state that the Settlement has a value to Class Members of at least $20,498,608.00.

Following Preliminary Approval, the Class Administrator, Kurtzman Carson Consultants (KCC), has administered the Settlement in accordance with this Court's Preliminary Approval Order and the Settlement Agreement. (See Burke Decl., §§ 6-19.) Several types of notice have been given to apprise the Class Members of their rights to either submit a claim, exclude themselves, or object to the Settlement. These notices resulted in 326,749 timely claims having been submitted (and 1,006 untimely claims). The 6,266,704 persons for whom Defendants had names and addresses were mailed a postcard with Class notice.

Including notices that KCC re-sent after being returned by the Post Office, approximately 6,034,167 postcard notices were received by Class Members identified in Defendants' records. The approximately 35 million Class Members for whom the Defendants did not have names or addresses, were provided notice through publication and internet banner advertising. KCC has estimated the notice reached approximately 75.3-percent of the likely Class Members, an average of 1.8 times each. (See Declaration of Daniel Burke Re: Implementation of Settlement Notice Plan, §§ 7-10.)

The dates for filing claims, for opting out and for objecting has concluded months ago. There have been only 446 requests for exclusion (including 11 untimely claims). In addition, there have been only between 15 and 32 "objections" filed with many not designated as "objections" but instead seem to be stating complaints about Defendants'

collection practices. (See Special Master's Report and Recommendation Re: Objection to Settlement filed on August 23, 2016.)

Based upon the claims submitted, the Claims Administrator and Class Counsel represent that each approved Credit Group claimant will receive an approximate credit on their open collection accounts with Defendants in the amount of $56.84. Each approved Cash Group claimant will receive a cash payment in the approximate amount of $23.49. (See Declaration of Douglas Campion, Esq. in Support of Final Approval, §§ 21-23.)

II

FINAL APPROVAL HEARING

In accordance with the appointment of the Special Master, a report and recommendation was to be prepared concerning Class Counsel's Motion for Final Approval.

The Special Master has received and reviewed the following pleadings submitted in support of Final Approval.

1. Plaintiff's Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and Certification of Settlement Class with supporting Declarations filed on July 22, 2016'

2. Declaration of Eric Robin Re: Notice Procedures, filed August 12, 2016;

3. Declaration of Daniel Burke Re: Implementation of Settlement Notice Plan filed July 22, 2016;

4. Declaration of Daniel Rosenthal Re: Settlement Notice Plan and Notice Documents, filed November 6, 2015.

On August 23, 2016, the Special Master conducted a hearing on Final Approval at the Offices of Judicate West, 402 West Broadway, Suite 2400, San Diego, California. Appearing at the hearing on behalf of Plaintiffs and Class Counsel were Douglas J. Campion, Esq., with Francis Greene, Esq. appearing telephonically. The Defendants were represented by Edward Totino, Esq. No other persons or their representatives appeared in person or called into the hearing on the designated call-in number. The August 23, 2016 hearing also included a hearing on Class Counsel's Separate Motion for Attorney Fees and Costs and Incentive Payments previously filed with this Court on March 23, 2016. The Special Master requested additional briefing concerning the Motion for Attorney Fees and Costs. A further Report and Recommendation on Class Counsel's Motion for Attorney Fees will be submitted to this Court prior to the Final Approval and Certification hearing scheduled for September 30, 2016.

III

DISCUSSION OF ISSUES FOR FINAL APPROVAL
AND CERTIFICATION OF SETTLEMENT CLASS

"In evaluating a class action settlement under Rule 23(e), the District Court determines whether the settlement is fundamentally fair, reasonable, and adequate." (*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008), citing Fed.R.Civ.P. 23(e).) The purpose of this Rule "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." (*Id.*) In the often cited case of *Hanlon v.*

*Chrysler Corp.* 150 F.3d 1101, 1025 (9th Cir. 1998), the Court stated that in evaluating a class action settlement, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." (See also, *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

During this Report and Recommendation, the Special Master will outline and discuss the relevant factors to assist this Court in determining whether this class action settlement is fair, adequate and reasonable to obtain final approval and class certification by this Court.

A.  Claims Process and Responses to Class Notice

The Class Members were given 90 days to submit claims to the Claims Administrator. The Special Master believes that the claims process was straight forward and claims could be submitted online, by calling a toll-free 800 number, or by downloading a claim form and mailing it in. If the person received a postcard, each postcard had a claim identification number, expediting the submission. If the person did not receive a postcard, that person could submit their cell phone number and if that number matched any cell phone numbers called, the person could submit a claim. As a result of this simple claims procedure, a substantial number of claims (329,755) were submitted, including 1,006 late claims. (See Burke Decl., § 20.)

The Special Master is informed that Class Members contacted KCC and Class Counsel to discuss the Class Notice, their options, and case status. As noted previously, only between 15 and 32 persons objected or complained about the Settlement and 446

requested exclusions, including 11 late opt-outs. (Burke Declaration, § 21.) It is possible that additional claims might be submitted in response to KCC's deficiency letters prior to the Final Approval hearing. However, the Special Master does not believe the final exact number of approved claims will be significantly altered. The Special Master recommends that this Court find that the notice requirements set forth in the Class Action Fairness Act and other applicable law have been satisfied. The claims process previously approved by this Court has been followed and was the best practical procedure under the circumstances of this case given the millions of potential Class Members (with limited identifiable information).

B.  CAFA Notice

Pursuant to the Class Action Fairness Act, 28 U.S.C., section 1715(b) ("CAFA Notice"), notice of the Settlement was set by Defendants to the Attorney General of the United States and to requisite State Attorneys General by sending them the documents specified by 28 U.S.C., section 1715(b), subdivisions (1)–(8). There has been no objection or response to the notice provided.

C.  Evaluation of Criteria for Final Approval

In evaluating whether a class settlement is "fair, adequate and reasonable," courts generally refer to eight (8) criteria, with differing degrees of emphasis: (1) the likelihood of success by Plaintiff; (2) the amount of discovery or evidence; (3) the settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendations of neutral parties, if any; (7) number of

objectors and nature of objections; and (8) the presence of good faith and absence of collusion. (See *Officers for Justice v. Civil Service Commission etal.*, 688 F.2d 615, 625 (9th Cir. 1982); 2 *Herbert B. Newberg & Alba Conte, Newberg on Class Actions* ("*Newberg*") § 11.43; *General Criteria for Settlement Approval* (3d. ed. 1992).)

    1.    <u>Strength of Plaintiff's Case and Likelihood of Success In Litigation</u>

Plaintiffs' claims against the Defendants have merit and if Plaintiffs were to prevail the Defendants could face substantial statutory penalties. However, as outlined in Plaintiffs' Preliminary Approval Motion, there were a number of potential issues outlined if the case proceeded on the merits. (Memorandum of Points & Authorities for Prelim App. At pp. 15-17.) Defendants deny any and all liability and would raise issues relating to prior express consent for calls; whether a telephone call was placed to a cellular telephone or landline; and the possibility of a denial of class certification and appeals.

While Plaintiffs believe they could overcome each of these issues, the risk to the Class Members would be substantial. Class Counsel believe it is in the best interest of the Class to accept this substantial monetary benefit and seek final approval of this Settlement (after completion of the claims administration process).

Through discovery and confirmatory discovery, Plaintiffs believe that they obtained sufficient information to establish that this Class satisfies the requirements of Federal Rules of Civil Procedure, rule 23. Defendants have focused on the issues addressed above to argue that Class Members face numerous litigation risks and that Class treatment of these claims is inappropriate, including the risk of losing inherent in

any jury trial. (See *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042 at *8 (N.D. Cal. 2010).) It is Class Counsel's contention that the Class should avoid each of the described risks and receive the Settlement benefits. Class Counsel contend that the substantial risks weigh in favor of seeking final approval by this Court. The Special Master, being fully advised of the significant litigation risks, is in agreement that seeking final approval would be in the best interests of the Class Members.

2.  The Extent of Discovery Completed

The Settlement of the MDL litigation was reached only after Class Counsel's thorough investigation of the factual and legal issues involved, both prior to filing this action and during almost three years of mediation. Defendants also provided Plaintiffs with informal discovery relating to size of the proposed class, class period, and number of calls made to active accounts.

The Special Master is advised that once Settlement terms had been finally reached, Defendants responded to formal confirmatory discovery about the number of Class Members, including interrogatories, document requests and the deposition of Defendants person most knowledgeable about class membership and its determination, all to confirm that the Settlement was fair, reasonable and adequate. (See Campion Decl., §§ 9, 11.) The Special Master, having been involved in the mediation process, can confirm that this discovery was completed as described by Class Counsel.

3. Settlement Terms and Conditions

The Settlement terms are set forth in the Agreement, attached as Exhibit A to the Declaration of Douglas J. Campion in Support of Preliminary Approval and have been outlined previously in this Report and Recommendation. During the Claims Administration process, with the exception of "objections," there have been no significant issues raised by Class Members as it relates to terms of the Settlement. As noted above, CAFA notice has been completed without any response or objection. Accordingly, the Special Master believes that no issues relating to the Settlement terms would preclude this Court from granting Final Approval to the Settlement and Class Certification.

4. Recommendations and Experience of Class Counsel

The Special Master has received and reviewed the declarations submitted by Class Counsel, which outline their prior experience in litigating TCPA claims and the particular issues which arise in TCPA class actions. (See Declarations of Campion, §§ 2, 7, 27; Latturner, §§ 2, 5, 9, 10.) The Special Master is also aware of Class Counsel's experience in TCPA cases from other litigated class actions cases.

Based upon this experience, Class Counsel fully endorse this Settlement as fair, adequate and reasonable, which weighs heavily in favor of the Court approving the Settlement. (See, *In Re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008); *Linney v. Cellular Alaska P'slip*, 1997 U.S. Dist. LEXIS 24300 at *16 (N.D. Cal. 1997). The Special Master notes that there have been no objections raised by Class Members concerning the experience of Class Counsel and any communications during

the Claims Administration period. Accordingly, no reasons exist for this Court not to accept the recommendations of Class Counsel for final approval of the Settlement and Class Certification.

5. <u>Further Expense and Likely Duration of Litigation</u>

All the parties to this litigation recognized that if a Settlement were not achieved, this litigation would have been ongoing for several years, incurring significant litigation costs and expense. As this Court is well aware, class action MDL litigation is time-consuming, complex and sometimes difficult to supervise and coordinate. This substantial time and litigation expense weigh in favor of granting Final Approval for the Settlement and Claims Certification.

6. <u>Reaction of Class Members and Objections to Settlement</u>

On August 23, 2016, the Special Master submitted a Report and Recommendation of Special Master Re: Objection to the Settlement, which recommends that this Court deny them in their entirety. However, the absence of a large number of objections to a proposed class action settlement causes a strong presumption that the terms of the proposed class action settlement are favorable to the Class Members. (See, *Churchill Village, LIC v. Gen. Elec. Co.*, 361 F.3d 566, 577 (9th Cir. 2004) [approving the district court's finding that this fairness factor weighed in favor of settlement when "only 45 of approximately 90,000 notified class members objected to the settlement."]; *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) [54 objections out of 376,000 class members].)

Judging the response to the Settlement by Class Members clearly demonstrates wide-spread approval of the Settlement. The Claims Administrator has reported a positive response to the over 6 million Class Members who received the court-ordered class notice. Only 14 Class Members submitted timely written objections. There were 446 Class Members who opted out of the Settlement (including 11 late opt-outs). The objections and opt-outs represent a very small percentage (less than a tenth of one percent) of the almost 329,755 claims. This response demonstrates broad class-wide support for the Settlement. (See Declaration of Eric Robin, Class Administrator Project Manager, dated August 12, 2016.) The small number of opt-outs and the meritless objections show that Class Members viewed the Settlement as fair, reasonable and adequate.

7. The Presence of Good Faith and Absence of Collusion

In addition to considering the above factors, the Ninth Circuit Court has suggested that the Court should carefully review the Settlement for any signs of collusion or conflict of interest. (See, *In Re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 246 (9th Cir. 2011); *Millison v. T.Mobile USA, Inc.*, 2009 WSL 3345762 at *5 (D.N.J. Sept. 14, 2009 [approving a settlement after mediation before a retired federal judge and noting that "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties"].) Other federal cases have recognized the value of the mediation process with an experienced mediator to confirm that the settlement is non-collusive. (See also,

*Sandoval v. Tharaldson Emp. Mgmt.*, 2010 WL 2486346 at *6 (C.D. Cal. June 15, 2010; *Dennis v. Kellogg Co.*, 2010 WL 4285011 at *4 (S.D. Cal. October 14, 2010.)

In this litigation, the Settlement was the result of adversarial arms-length negotiations between attorneys experienced in class action litigation, certification, trial and settlement of nationwide class action cases. The Special Master, who facilitated the Settlement over a lengthy almost three-year mediation period, can represent that there were no signs of collusion or conflicts of interest. Many of the critical settlement terms, in addition to financial class benefits were the subject of extensive negotiations which were, at times, the result of overcoming an impasse between the parties. The Special Master finds that this criteria to final approval has been satisfied.

IV

CONCLUSION

Federal Courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays and risks of continued litigation might counteract any potential benefit the class could hope to obtain. (See *Class Plaintiff v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Newberg on Class Action* § 11.41 (4th Ed. 2002). Clearly, individual litigation would be impractical given the relatively small value of each punitive class member's claim. The proposed Settlement is the best vehicle for Class Members to receive the relief entitled in a prompt and efficient manner.

The Special Master submits to this Court that the above analysis of the Class Settlement criteria clearly supports Final Approval of this Settlement and Class Certification. The record before the Court after the Claims Administration process demonstrates that the Settlement Agreement satisfies the Ninth Circuit Court's standard and that Final Approval is warranted. The parties' Motion for Final Approval of the Settlement and Class Certification should be granted.

The Special Master will be providing this Court with a proposed Order Granting Final Approval of Class Action Settlement and Judgment prior to the final approval hearing date on September 30, 2016, for the Court's consideration.

SO RECOMMENDED.

Dated: 9/2/16

_____
HERBERT B. HOFFMAN
Judge of the California Superior Court (Ret.)
Special Master