UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: MIDLAND CREDIT MANAGEMENT, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION | Case No. 11-md-2286-MMA (MDD)<br><br>Member Cases: 10-cv-02221<br>10-cv-02600<br>10-cv-02368<br>10-cv-02370<br><br>REPORT AND RECOMMENDATION OF SPECIAL MASTER RE: MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE PAYMENTS |

## TABLE OF CONTENTS

|  |  |  | PAGE |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | HEARING ON MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE PAYMENTS | | 3 |
| III. | DISCUSSION | | 4 |
| | A. | Primary Methods of Determining Reasonable Attorney Fees in Class Action Litigation | 4 |
| | B. | Lodestar-Multiplier Versus Percentage of Recovery | 5 |
| | C. | Percentage of Common Fund Analysis | 6 |
| | D. | Lodestar-Multiplier Cross-Check Analysis | 11 |
| | E. | Payment of Litigation Costs is Fair and Reasonable | 15 |
| | F. | The Approval of $2500.00 Incentive Awards | 16 |
| IV. | CONCLUSION | | 16 |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: MIDLAND CREDIT
MANAGEMENT, INC.,
TELEPHONE CONSUMER
PROTECTION ACT LITIGATION

Case No. 11-md-2286-MMA (MDD)

Member Cases:  10-cv-02221
               10-cv-02600
               10-cv-02368
               10-cv-02370

REPORT AND RECOMMENDATION
OF SPECIAL MASTER RE: MOTION
FOR ATTORNEY FEES, COSTS
AND INCENTIVE PAYMENTS

I

INTRODUCTION

On March 23, 2016, co-lead Class Counsel Douglas J. Campion, Esq. and James O. Latturner, Esq. submitted their "Unopposed Motion for Attorneys' Fees and Approval of Costs and for Incentive Payments." This motion was filed subsequent to this Court's December 9, 2016 "Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement." As set forth in the Preliminary Approval Motion, the Settlement provides for attorney fees and costs of litigation to be paid to Plaintiffs' counsel, subject to Court approval in the amount of $2,400,000. The attorney fees and costs are to be paid by Defendants separate from and in addition to the Settlement Fund. The parties

negotiated and agreed upon attorney fees and costs only after reaching an agreement on the other Settlement terms.

The law firms submitting working hours and costs with this motion are only those listed as counsel in the three cases of co-lead and liaison counsel. Co-lead counsel Douglas J. Campion, Esq. is co-counsel with "Hyde & Swigart" and the "Kazerouni Law Group" in the *Robinson* case (10-cv-2261); co-lead counsel "Edelman, Combs, Latturner & Goodwin" is co-counsel with the "Warner Law Firm" on the *Scardina* case (11-cv-3149) and liaison counsel David Schafer, Esq. is counsel in the *Tovar* case (10-cv-2600).

Pursuant to the Settlement Agreement, Plaintiffs' counsel have moved for approval of incentive payments of $2,500 each to the three Class Representatives, Robinson, Tovar, and Scardina for these services to the Settlement Class to be paid from the Cost Component of the Settlement Fund. As discussed below, Class Counsel seek reimbursement of costs incurred in bringing this case to resolution which were $37,760.30 at the time of the Motion filed on March 23, 2016.

Class Counsel is also seeking this Court's approval requiring the payment of approximately $3.1-$3.3 million charged by the Claims Administrator, Kurtzman Carson Consultants (KCC), for its notice and claims administration services. Class Counsel has represented that KCC will submit a final invoice prior to the Final Approval hearing scheduled for September 30, 2016. The Settlement Agreement provides that the Defendants have agreed to pay KCC's total fees and costs incurred separate from any other amounts being paid to the Settlement Class Members or to Class Counsel.

# II

## HEARING ON MOTION FOR ATTORNEY FEES, COSTS AND INCENTIVE PAYMENTS

In accordance with the appointment of the Special Master, a report and recommendation was to be prepared concerning Class Counsel's Motion for Attorneys' Fees, Costs and Incentive Payments. The Special Master has received and reviewed the following pleadings and documents submitted concerning the Motion, as follows:

1. Plaintiffs' Unopposed Motion for Attorneys' Fees and Approval of Costs, and for Incentive Payments filed by this Court on March 23, 2016, together with Supporting Memorandum of Points and Authorities and Declarations of Counsel, Class Representatives, and Certificate of Service;

2. Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and Certification of Settlement Class with supporting Declarations filed on July 22, 2016;

3. Declaration of Eric Robin Re: Notice Procedures, filed August 12, 2016;

4. Declaration of Daniel Burke Re: Implementation of Settlement Notice Plan, filed July 22, 2016;

5. Declaration of Daniel Rosenthal Re: Settlement Notice Plan and Notice Documents, filed November 6, 2015.

6. Supplemental Declarations of Douglas J. Campion, Esq. in Support of Motion for Attorneys' Fees, Costs and for Incentive Payments, filed August 22, 2016.

On August 23, 2016, the Special Master conducted a hearing on Final Approval and Motion for Attorneys' Fees and Costs at the offices of Judicate West, 402 West Broadway, Suite 2400, San Diego, California. Appearing at the hearing on behalf of Plaintiffs and Class Counsel were Douglas J. Campion, Esq., with Francis Greene, Esq. appearing telephonically. The Defendants were represented by Edward Totino, Esq. No other persons or their representatives appeared in person or called into the hearing on the designated call-in number. After a discussion of the attorneys' fees sought, which had been previously raised by objectors to the Settlement, the Special Master requested additional briefing concerning the Motion for Attorneys' Fees and Costs. "Plaintiffs' Supplemental Memorandum of Points and Authorities in Support of Unopposed Motion for Attorneys' Fees and Costs . . ." was submitted to the Special Master on September 2, 2016.

III

DISCUSSION

A.  Primary Methods of Determining Reasonable Attorney Fees in Class Action Litigation

On August 11, 2016, the California Supreme Court in *Lafitte v. Robert Half International, Inc.* (2014) 231 Cal.App.4th 860 (*Lafitte*) in a wage and hour class action, clarified its earlier case of *Serrano v. Priest* (1977) 20 Cal.3d 25, that a court could calculate an attorneys' fees award by fixing the award as a percentage of the settlement's common fund. The Supreme Court, in its opinion, provided an excellent discussion regarding the history of attorney fees awards in class actions under both California and

4

Federal cases. The Special Master highly commends all interested parties to review this important decision.

B.  Lodestar-Multiplier Versus Percentage of the Recovery

The two recognized methods of awarding attorney fees in class action cases has been (1) percentage of recovery, and (2) Lodestar-Multiplier approaches. The percentage of the recovery method calculates the fee as a percentage share of a recovered common fund or the monetary value of the plaintiffs' recovery. Fee awards often reflect what the Court believed was a "reasonable percentage" of the amount recovered, with the percentages varying from case to case. Some courts have employed a benchmark percentage, with upward or downward adjustments justified by a multifactor analysis. The Ninth Circuit Court has approved a 25-percent benchmark. (See *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047 [approving 28-percent fee as justified by a benchmark of 25-percent adjusted to case circumstances]; Accord, *In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 942.)

Many courts have favored "the percentage recovery method" in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes them for failure. The recognized advantages include relative ease of calculation, alignment of incentives between counsel and the class, and encouraging counsel to seek an early settlement and avoid prolonging the litigation.

In the lodestar-multiplier method in common fund class actions, the Court decides the amount of attorney fees on the basis of an hourly rate(s) of compensation applied to

5

the hours worked.  A multiplier to the lodestar figure is used to award attorneys for risk, difficulty and other factors to increase the total attorney fees awarded.  There is no fixed method for determining the amount of the multiplier and they may vary significantly.  Critics of the lodestar method point to difficulty in applying the method and an undesirable financial incentive to extend the litigation so that attorneys can accrue additional hours and additional fees.

In *Lafitte* the California Supreme Court recognized that courts have wide discretion in their equitable powers to use either method in the calculation of the fee award. (*Lafitte, supra*, 231 Cal.App.4th 860.)  However, the modern view being recommended by the Special Master is to (1) use the "percentage method" for its primary calculation of the fee award; (2) to double check the reasonableness of the percentage fee through a lodestar calculation; (3) if a comparison between the percentage and lodestar calculations produces an imputed multiplier far outside the normal range, the trial court will have reason to re-examine its choice of a percentage.  A lodestar cross-check is a quantitative method for bringing a measure of the time spent by counsel into the trial court's reasonableness determination. (See 5 Newberg on Class Actions (5th ed. 2015 § 15.88, pp. 343-344.)

C.  Percentage of Common Fund Analysis

Class counsel is requesting that this Court approve the agreed upon attorney fees of $2,400,000 and costs based upon a Common Fund Settlement that has $20,498,608 in value obtained for the Class.  The common fund consists of the $2,000,000 cash

component, the $13,000,000 credit component, $3,098,608 for notice and claims administration, and the $2,400,000 for attorney fees and litigation costs. Class counsel argues that if the attorney fees are included in the common fund, they would represent 11.7-percent of the fund and, if not included in the common fund, the fund would be reduced to $18,098,608 and the attorney fees would then constitute 13.2-percent of the fund. These two percentages of the common fund would be significantly below the 9th Circuit Court's benchmark of 25-percent and warrant approval.

During the August 23, 2016 attorney fees hearing, the Special Master questioned Class Counsel on their views concerning the treatment of the debt reduction or credit component of the fund in computing attorney fees on a common fund basis. The Special Master understands that the Ninth Circuit Court has recognized a common fund which consists of relief beyond strictly cash where the parties have agreed on the value being provided. (See *Wing v. Asarco, Inc.*, 114 F.3d 986, 990 (9th Cir. 1997); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

The Special Master is familiar with several class settlements involving debt collection companies (like these Defendants) where class settlements include credits in the form of debt forgiveness which have received final approval. In Plaintiffs' Preliminary Approval Brief at page 18-19, Class Counsel has provided the Court with several cases both within this District and outside that included a debt forgiveness component:

> "Debt forgiveness provides real value to the Class Members. The courts often approve class action settlements that employ debt forgiveness "and other

7

non-cash benefits as all or part of the settlement consideration." *In re Lloyd's Am. Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, 45 (S.D.N.Y. Nov. 26, 2002) (citing *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 143 (E.D. Pa. 2000) (approving settlement providing cash, forgiveness of indebtedness of class members to defendants and other non-monetary relief); *Follansbee v. Discover Fin. Serv., Ltd.*, No. 99 C 3827, 2000 WL 804690, at *5 (N.D. Ill. June 21, 2000) approving settlement providing cash and credits usable by some class members to pay down debt to defendant); *Pigford v. Glickman*, 185 F.R.D. 82, 109 (D. D.C. 1999) (approving settlement providing cash and forgiveness of debt owned by some class members), *aff'd*, 340 U.S. App. D.C. 420, 206 F.3d 1212 (D.C. Cir. 2000).

This settlement is similar to other class action settlements providing credits that have been given final approval. See *Couser v. Apria Healthcare, Inc.*, 13-cv-00035-JVS-RNB, Dkt. No. 45, p. 9 (C.D. Cal. Oct. 27, 2015) (preliminary approving TCPA settlement providing for, depending on the circumstances, "a cash payment, forgiveness of debt owed to Apria, and/or a voucher for future account balanced with Apria, given final approval on March 9, 2015; *Gutierrez v. Barclays Group*, 3:10-cv-01012-DMS-BGS (S.D. Cal. March 12, 2012) (TCPA class action where class members were given an estimated $100 credit on their credit card balance with Barclays as part of the settlement); *Pepper v. Midland Credit Management, Inc.*, 37-2011-00088752-CU-BT-CTL (Cal. Superior Ct., San Diego, Sept. 9, 2013) (final approval of call recording settlement (Cal. Pen. Code § 632) where each class member was to be given up to $1,000 in debt relief); *Ybarrondo v. NCO Financial Systems, Inc.* 05-cv-0205-L-JMA (S.D. Cal. Oct. 8, 2009) (final approval of FDCPA class settlement that provided for, in part, a waiver of consumer debt with a face value of $5.8 million); *Fox v. Asset Acceptance, LLC*, 14-cv-734-GW (FFMx) (C.D.Cal. Aug. 17, 2015) ECF 69 (preliminarily approving settlement of $800,000 in credits to Defendant's account holders, out of a $1,000,000 settlement, with a $200,000 cash component, final approval hearing to be held in Feb. 2016)."

The Special Master agrees that this Court should consider the debt reduction or credit component as part of the common fund analysis for the award of reasonable attorney fees. The important question to be considered and answered is how, or at what value, should the debt reduction credits be treated in determining the benefit or value of the common fund to the class.

8

Class Counsel points out in its Supplemental Brief filed on September 2, 2016 (p. 8) that "there is very little case authority on whether credits should be treated at full value for determining the size of a common fund." Further, Class Counsel contend that what little authority exists indicates that courts have not reduced the common fund's value because of a credit component when used to compute attorney fees. These recent class settlements include *Couser v. Apria Healthcare, Inc.*, (C.D. Cal. Oct. 27, 2015; *Gutierrez v. Barclays Group, supra,* (S.D. Cal. March 12, 2012); and *Fox v. Asset Acceptance, LLC, supra,* (C.D. Cal. Aug. 17, 2015).

The Special Master recognizes that trying to determine the actual value of the debit reduction credit would require significantly more information from the Defendants, including the following: (1) When was the debt acquired and how much was paid to acquire the debt? (2) What is the age of the debt, collectability issues or statute of limitations defenses to collection? (3) Would the defendants have negotiated a reduction with the debtor (Class Member) in any event? The answers to these questions would be difficult to ascertain since most debt was acquired by the Defendants "in bulk" and individual accounts would be extremely difficult to analyze concerning their actual value. For example, a reduction of $50 on a debt of $100 is clearly more valuable than if the debt were $500. Further, the Defendants would certainly argue that the credits are being applied to reduce the balance on open accounts for which debtors owe the entire balance regardless of the consideration paid to acquire the underlying debt by the Defendants.

Accordingly, there is no legitimate reason to discount the $13,000,000 credits because the class will have their collective debts reduced by that amount.

The Special Master disagrees with Class Counsel that the $13,000,000 credit reduction should receive full value in determining the size of the common fund. Logically, the factors that would justify a reduction clearly outweigh those which oppose any reduction. The Special Master suggests that the Court not get into a debate of the actual reduction in value and, instead, focus on how a reduction would impact the percentage of attorney fees. For example, even if the debt forgiveness was reduced to $6,500,000 (or by 50-percent), the total common fund, including attorney fees, would be approximately $14,000,000 (rather than $20,498,608) and the attorney fees percentage would be just over 17-percent of the common fund. As argued by Class Counsel, the common fund would have to be reduced to under $9,600,000 to render the percentage of attorney fees above the 9th Circuit Court's benchmark of 25-percent. To achieve that result, there would have to be reduction of 83-percent of value of the Credit Component from $13,000,000 to approximately 2,100,000.

The Special Master has concluded and recommends to this Court that when considering the difficulty in fixing the value of the reduction in credits (described above) and that the reduction of the debt reduction or Credit Component would have to exceed 80-percent, arguments supporting such a large reduction simply do not exist in this case. The percentage of a common fund analysis is also reasonable under the factors outlined in *Vizcaino v. Microsoft Corp., supra*, 290 F.3d 1043-1050 (9th Cir. 2002), including

(1) the excellent results for the Class; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and financial burden; and (5) awards made in similar cases. (See Discussion of these factors at pp. 7-13 in Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Attorneys' Fees filed March 23, 2016.)

D.     <u>Lodestar-Multiplier Cross-Check Analysis</u>

The Special Master has recommended that this Court perform a separate Lodestar-Multiplier analysis to double check the reasonableness of the fee percentage sought by Class Counsel from the Common Fund.

In Plaintiffs' Motion for Attorneys' Fees and Approval of Costs and for Incentive Payments filed five months prior to the Final Approval hearing (March 23, 2016), it was represented that Plaintiffs had incurred $1,322,760 in attorney time based upon regular hourly rates. At that time, Plaintiffs' counsel each submitted declarations supporting: (1) their experience; (2) Lodestar hours and billing rates; and (3) overview of work performed in this litigation. The Special Master has carefully reviewed the declarations of Douglas J. Campion, Esq., James O. Latturner, Esq., David P. Schafer, Esq., Joshua B. Swigart, Esq. and Abbas Kazerouni, Esq., and is satisfied that their lodestar hours and hourly rates are reasonable and consistent with market rates in TCPA cases. Trial courts conducting lodestar cross-checks generally are not required to closely scrutinize each claimed attorney-hour, but instead, use information on attorney time spent to "focus on the general question of whether the fee award appropriately reflects the degree of time

and effort expended by the attorneys." (See, e.g., *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2nd Cir. 2000); *In re Prudential Ins. Co. v. America Sales Practice Litigation Asset Actions*, 148 F.3d 263, 342 (3rd Cir. 1998).)

Based upon Plaintiffs' original lodestar figure as of March 23, 2016 of $1,322,760 to support an attorney fees award of $2,400,000, Plaintiffs' Class Counsel sought the application of 1.81 multiplier under the relevant factors for multipliers set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), cert. denied sub nom (*Kerr*); *Perkins v. Screen Extras Guild, Inc.*, 425 U.S. 951 (1976).

In the March 23, 2016, original Motion for Attorneys' Fees it was anticipated that additional hours and attorney time would be incurred up to the Final Approval hearing and beyond until the conclusion of this case. In a Supplemental Declaration filed by Co-Class Counsel Douglas J. Campion, Esq. on August 22, 2016, the lodestar figure was increased by an additional $212,075 attorney time over the last five (5) months as follows:

1. Law Offices of Douglas J. Campion, Esq: 110.25 hours at $750 per hour = 82,692.50.
2. Edelman, Combs, Latturner & Goodwin, LLC: 198.1 hours at Various rates = $107,300.
3. Hyde & Swigart: 1.7 hours at various rates = $1,022.50.
4. Law Offices of David Schafer: 47.3 hours at various rates = $21,060.

Based upon this additional attorney time incurred in implementing the settlement, working on class notice and claims procedure and overseeing the claims process, the lodestar figure has increased to $1,534,835, and a resulting reduction of the multiplier to

1.5636 to achieve the $2,400.000 in attorney fees agreed upon by the parties in settlement.

During the August 23, 2016 hearing on Plaintiffs' attorney fees motion, the Special Master asked Class Counsel to provide documentation of multipliers awarded by courts in other TCPA claims settlements. On September 2, 2016 in a Supplemental Memorandum of Points and Authorities in Support of Unopposed Motion for Attorneys' Fees, Class Counsel provided a chart of forty-five (45) TCPA cases from many districts, including the Southern District of California, with the lodestar-multiplier approved by the courts. The lowest multiplier that appeared on this chart was 1.5 with the highest being 5.16. In addition, the vast majority of the lodestar-multipliers approved in this sampling were over 2.0 (30 cases).

The Special Master recognizes that the Lodestar-Multiplier approved by other courts in TCPA cases is not binding on this Court, thus a brief discussion of the multiplier factors needs to be considered.

The *Kerr* decision identified twelve (12) factors for the Court to consider in determining if the multiplier sought is justified. (*Kerr, supra*, 526 F.2d at p. 70.) The Special Master is convinced that several of the factors have been clearly satisfied and the Court need not review each factor. Counsel's skill, experience and reputation are well known in the San Diego community. Their hourly rates are within the range of rates charged for the same services. (See Declaration of Frank Johnson in Support of Motion for Attorneys' Fees and Costs.) The number of hours expended are reasonable as

demonstrated in the attorney declarations which summarized the individual firm's work. The Special Master had the opportunity to observe Class Counsel's representation during the almost three years of ongoing negotiations with competent counsel (and law firm) representing the Defendants. A discussion of the lengthy docket report prior to and after the MDL consolidation and transfer are set forth at page 18 of Plaintiffs' Motion for Attorneys' Fees and Costs, filed March 23, 2016.

The Special Master agrees with Plaintiffs' Class Counsel's contention that an excellent result was obtained for the benefit of the Class. The most recent declaration from the Class Administrator estimates that Credit Component for each Class Member with an open account will be approximately $60.00 and the Cash Component for Class Members will be approximately $25.45. (See Supplemental Declaration of Douglas J. Campion, Esq. in Support of Plaintiffs' Motion for Final Approval filed on August 22, 2016.)

In addition, this Settlement is deserving of a multiplier as an enhancement to the lodestar due to the complexity and novelty of the issues presented, the risk of delay or non-payment. (See Manual for Complex Litigation 4th (MCL), § 14.122 at p. 261.) The *Kerr* factors dictate that this Court should grant a multiplier to the lodestar amount ($1,534,835); the only remaining question being the reasonableness of the 1.56 multiplier to support the $2,400,000 unopposed attorney fees award.

Plaintiffs' counsel has provided the Special Master with a sampling of 45 class action cases where the lodestar multiplier was well in excess of the requested multiplier

of 1.56 (as discussed previously). The Special Master can find no reason why this MDL case would not justify the requested multiplier when faced with the sampling documentation which was submitted. Since the lodestar multiplier approach is being used as a cross-check analysis for the fee percentage being sought, the reported multiplier is certainly not outside the normal range.

Finally, the Special Master would submit to this Court that in reviewing the award of $2,400,000 for attorney fees and costs, the Special Master relied upon the Ninth Circuit Court's 25-percent benchmark. However, percentage awards higher than 25-percent have been regularly approved by District Courts in similarly complex litigation. (See, e.g., *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378-379 (9th Cir. 1995) [affirming 33-1/3 percent fee]; *Morris v. Lifescan, Inc.*, 54 Fed. Appx. 663, 664 (9th Cir. 2003) [affirming 33-percent fee]; *In re Pub. Serv. Co. of New Mexico*, No. 91-0536M, 1992, WL 278452 *7 (S.D. Cal. July 18, 1992) [awarding 33-percent and finding awards "traditionally ranged between 30-percent and 40-percent of total recovery"].)

E.  Payment of Litigation Costs is Fair and Reasonable

Plaintiffs seek this Court's approval of their reimbursement of the costs they incurred during the litigation, from the $2,400,000 fees and costs award (not from the Settlement Common Fund). As of their March 23, 2016 Motion, Plaintiffs have incurred $37,760.30 in costs as of that date. The Special Master would anticipate that the total costs will have increased in the last several months, but not significantly. The Special Master would find that these costs were reasonably incurred in this litigation and are

15

recoverable. (See, *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166, 1177-1178 (S.D. Cal. 2007). Plaintiffs' Class Counsel have agreed how these costs will be allocated (if awarded) to each law firm and will provide detailed summaries of the costs incurred to this Court if requested.

F.  <u>The Approval of $2500.00 Incentive Awards</u>

Class Representative Robinson, Tovar and Scardina request an incentive award of $2,500 each, to be paid from the $2 million Cash Component of the Settlement, for their services to the Settlement Class. (Agreement, §§ 5.05, 6.01.)

Courts have discretion to approve incentive payments to Class Representatives for their role in bringing the class action and assisting its successful resolution. (See, *Pelletz v. Weyerhaeuser*, 592 F.Supp.2d 1322, 1329 (W.D. Wash. 2009); *Van Vranken v. Atlantic Richfield*, 901 F.Supp. 294 (N.D. Cal. 1995).) Here, the parties agreed upon the payment of a $2,500 incentive award to each Class Representative, subject to Court approval. The Special Master can find no reason to not approve what is a modest incentive award.

IV

CONCLUSION

For all the reasons set forth in this Report and Recommendation, the Special Master recommends that this Court, in its Final Approval order:

1.  Approve the unopposed award of $2.4 Million in attorney fees and costs.

2. Order the payment of Claims Administrator costs for notice and Claims Administrator by the Defendants.

3. Award each of the three Class Representative Plaintiffs a $2,500.00 incentive award to be paid from the Cash Component of the Settlement Fund.

DATED:
9/20/12

_____
HERBERT B. HOFFMAN
Judge of the California Superior Court (Ret.)
Special Master Appointed by this Court