1
2
3
4
5
6
7           **UNITED STATES DISTRICT COURT**
8           **SOUTHERN DISTRICT OF CALIFORNIA**
9

| | |
|---|---|
| IN RE: MIDLAND CREDIT MANAGEMENT, INC. TELEPHONE CONSUMER PROTECTION ACT LITIGATION | MDL No. 2286-MMA (MDD) |
| | **ORDER ADOPTING REPORTS AND RECOMMENDATIONS;** |
| | [Doc. Nos. 389, 394, 401] |
| | **GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT;** |
| | [Doc. No. 365] |
| | **GRANTING MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS** |
| | [Doc. No. 318] |

Plaintiffs Christopher Robinson, Eduardo Tovar, and Dave Scardina, on behalf of themselves and all others similarly situated, move for final approval of a proposed class action settlement in this multi-district litigation, and move for attorneys' fees, costs, and

incentive awards.  Doc. Nos. 318, 365.  Plaintiffs have entered into the settlement agreement ("Settlement Agreement") with Defendants Midland Funding, LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively, "Defendants").  Before the Court are also several objections to Plaintiffs' pending motions.  These matters were referred to Judge Herbert Hoffman (Ret.) who, in his capacity as a special master, prepared three Reports and Recommendations—one regarding the motion for final approval, another regarding the motion for fees, costs, and incentive awards, and lastly, a report regarding the objections.  Doc. Nos. 389, 394, 401.  Subsequently, the Court held a final approval hearing on these matters pursuant to Federal Rule of Civil procedure 23(e)(2).  *See* Doc. Nos. 406, 410.  For the reasons set forth below, the Court **ADOPTS** in full the Special Master's Reports and Recommendations, **GRANTS** Plaintiffs' motion for final approval of the settlement, **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and incentive awards, and **OVERRULES** the pending objections to Plaintiffs' motions.

## **BACKGROUND**

The individual plaintiffs in this action generally allege that Defendants violated the rights of plaintiffs and other unnamed class members by illegally making debt collection calls to them, through use of an automatic dialer or pre-recorded voice, on their cellular telephones without first obtaining their prior express consent in violation of the Telephone Consumer Protection Act, 27 U.S.C. § 447, *et seq.* (hereinafter, "TCPA").  All plaintiffs within the MDL allege violations of the TCPA by Defendants in substantially the same manner.

On March 13, 2012, the Court granted a joint motion filed by Plaintiffs appointing Co-Lead Interim Class Counsel and Liaison Counsel.  A consolidated complaint was filed on July 11, 2012.  The consolidated complaint alleges that Defendants violated the TCPA by using a predictive dialer to call the plaintiffs on their cell phones regarding

debts.

Over a period of approximately thirty months, the parties engaged in 11 mediation sessions with Judge Herbert Hoffman (Ret.), as well as participated in additional settlement negotiations between the parties, informal discovery and formal confirmatory discovery, including interrogatories, document requests and a Rule 30(b)(6) deposition. The parties reached a settlement of the action and Plaintiffs filed an unopposed motion for preliminary approval of the Settlement on November 6, 2016.  *See* Doc. No. 281.  On December 8, 2015, the Court heard oral argument on the motion.  On December 9, 2015, the Court granted Plaintiffs' motion for preliminary approval.  Doc. No. 291.  The Court's Order preliminarily certified the Class for settlement purposes only, preliminarily approved the Settlement Agreement, appointed Plaintiffs Robinson, Tovar, and Scardina as Class Representatives, and approved Douglas J. Campion and James O. Latturner as Class Counsel and David Schafer as Liason Counsel.

Over the next few months, Plaintiffs' filed an unopposed motion for attorneys' fees, costs, and incentive awards and an unopposed motion for final approval of the Settlement Agreement.  Doc. Nos. 318, 365.  Further, during this period, class members were allowed to file objections to the Settlement Agreement.  Several class members filed objections.  Also, on June 7, 2016, the Court granted the parties' joint motion for appointment of Judge Herbert Hoffman (Ret.) as a special master (hereinafter "the Special Master" or "Judge Hoffman").  On August 17, 2016, the Special Master held a hearing regarding the objections, and on August 23, 2016, he held a second hearing regarding Plaintiffs' pending motion for final approval and motion for fees, costs, and incentive awards.  Judge Hoffman then prepared and submitted to the Court three Reports and Recommendations on the pending matters.  On September 30, 2016, the Court held a final approval hearing regarding the pending matters.  *See* Doc. Nos. 406, 410.

//

2286-MMA (MDD)

**D**ISCUSSION

**I.      Motion for Final Approval of Class Settlement**

        **A.      Overview of the Settlement**

        The Settlement Agreement would resolve all TCPA claims brought by Class Members against Defendants for calls made during the Class Period of November 2, 2006 to August 31, 2014.  The Plaintiffs define the Settlement Class as:

> [A]ll persons in the United States who were called on a cellular telephone by Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) in connection with the collection of an alleged debt using a dialer or by artificial or prerecorded voice message without prior express consent during the period from November 2, 2006 through August 31, 2014, inclusive.

*See* Settlement Agreement, § 2.10 (a).[1]  There are approximately 41 million persons in the Settlement Class.  The Settlement Class consists of two categories of persons: (1) Persons who were called by Defendants and can be identified from Defendants' records ("the Direct Mail Notice Group"); and (2) persons who were called by Defendants who cannot be identified from Defendants' records ("the Publication Notice Group").

        Rule 23(c)(2)(B) requires the court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  This does not require actual notice and notice by mail is sufficient to satisfy due process if it is reasonably calculated to apprise the interested parties of the pendency of the action and affords them an opportunity to

---

[1] Excluded from the Settlement Class are the judges to whom this litigation is assigned, any member of the judges' staffs and immediate families, and any person who validly requests exclusion from the Class. Agreement §2.10 (b).

4

object.  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The Class Administrator (or "Claims Administrator"), Kurtzman Carson Consultants ("KCC"), administered the Notice Plan, which included direct mail notice, publication of the notice in national consumer publications, internet banner ads strategically placed to maximize the dissemination of the Notice, a dedicated Settlement Website, a long form notice substantially in the form of Exhibit B to the Agreement, which, *inter alia*, was posted on the Settlement Website, a press release, and a toll-free number to call to obtain more information about the Settlement.  *See* Agreement, §§ 9.03-9.07 and Exhibits B, D-F to the Agreement and KCC's Declaration of Daniel Rosenthal Re Settlement Notice Plan and Notice Documents, ¶¶ 6-11.  The Class Administrator reported that it had the names and addresses of 6,266,704 class members, who were mailed notices.  The Class Administrator re-sent notices that were returned. Approximately 6,034,167 notices were received.  To notify the remaining 35 million class members, the Class Administrator used publication by notice as described above. The Class Administrator estimates that around 73% of the class members received notice.

Class Members had 90 days from the beginning of the notice period to submit claims.  Settlement Class Members had the right to opt out of the Settlement Class or to object to the terms of the Settlement.  *See* Agreement §§ 12.01, 12.02.  A total of approximately 329,755 claims were submitted, although approximately 1,006 of those claims were untimely.  If more than 7,500 persons opted-out of the Settlement Class, then Defendants had the sole discretion to terminate the Settlement.  *Id*. §17.02.  However, only approximately 446 Class Members opted out by the deadline.

//

//

//

5

Defendant established a Settlement Fund of approximately $21.5 million, to be allocated as follows:

- **Net Settlement Amount**: $15,000,000.00
- **Attorneys' Fees and Costs**: $2,400,000.00
- **Cost of Notice and Claims Administration**: $4,003,975.17[1]
- **Incentive Awards**: $2,500.00 per representative
- **Special Master Fees**: $31,905.00[2]
- **Total**: $21,403,975.17

The Net Settlement Amount is comprised of a $2,000,000.00 Cash Component and a $13,000,000.00 Credit Component.  The Cash Component of the Settlement Fund is chiefly for those Settlement Class Members who do not owe, or who dispute that they owe, Defendants any money.  *See* Agreement, §§ 5.02, 11.03.  Each Settlement Class Member eligible to receive a share of the Cash Component of the Settlement Fund will receive a pro rata share.  Any checks distributed from the Cash Component of the Settlement Fund which remain uncashed 180 days after they are issued shall be distributed to one or more cy pres recipients chosen by Settlement Class Counsel, agreed to by Defendants, and approved by the Court.  *Id*. §§ 8.08, 11.04.

The fees for the Special Master's services, as well as the incentive award payments, will be deducted from the Cash Component before the pro rata distribution. Taking those payments into account, and based on the number of claims submitted to the Class Administrator, each approved Cash Group member will receive approximately $22.04.[3]  *See* Doc. No. 410 at 9:24–10:9.  The Credit Component of the Settlement Fund is reserved for those Settlement Class Members who Defendants believe have existing

---

[1] Defendants agree to pay the claims administration fees separately and in addition to the Settlement Fund.
[2] *See* Transcript of Final Approval Hearing, Doc. No. 410 at 9:20–22.
[3] This figure represents the estimated Cash Group payouts including late-filed claims, which, as discussed below, the Court allows.

2286-MMA (MDD)

balances on one or more accounts for which Defendants are attempting to collect. *See* Agreement, § 5.01. Each Settlement Class Member eligible to receive a share of the Credit Component of the Settlement Fund will receive a pro rata share of the Credit Component. Based on the number of claims submitted, each approved Credit Group member will receive approximately $60.74 in debt reduction.

### B.     Legal Standard

Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

Where a court has temporarily certified the class and found the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified and a final "fairness" hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e)(2). *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012); Fed. R. Civ. P. 23(e)(2).

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

Courts consider several factors in determining whether a proposed settlement is

2286-MMA (MDD)

"fair, reasonable, and adequate" under Rule 23(e).  Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity, and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).  The Court need only consider some of these factors—namely, those designed to protect absentees.  *See Molski v. Gleich*, 318 F.3d 937, 954 (9th Cir. 2003) (overruled in part on other grounds).

### C.   The Special Master's Report and Recommendation

The Special Master's Report and Recommendation recommends the Court finally approve the Settlement.  *See* Doc. No. 394.  The Court agrees with Judge Hoffman's recommendation and reasoning.  Judge Hoffman concluded that the Settlement Agreement is fair, reasonable, and adequate for several reasons.  First, the claims process was straightforward, and the notice process satisfied the Class Action Fairness Act requirements.

The Report and Recommendation also addressed several criteria that courts typically analyze in determining the fairness of a class action settlement: (1) the likelihood of the plaintiff's success on the merits; (2) the amount of discovery or evidence; (3) the settlement terms and conditions; (4) recommendation and experience of counsel; (5) future expense and likely duration of litigation; (6) recommendations of neutral parties, if any; (7) number of objectors and nature of objections; and (8) the presence of good faith and absence of collusion.  The Court discusses and adopts the Report's findings regarding the fairness factors, as discussed below.

First, the Report states Plaintiffs' claims are meritorious, but notes that if the case were to be litigated on the merits, there would be complicated issues regarding whether

2286-MMA (MDD)

any plaintiffs consented to any calls, whether a call was placed to a cell phone or landline, whether class certification would be proper, and whether any appeals would be filed.  Because of these risks, the Special Master concludes—and the Court agrees—that it is in the best interests of the Class Members to settle.

Second, Judge Hoffman concludes that the parties conducted adequate informal discovery during the lengthy mediation process with him, which allowed counsel to form an educated assessment of the class claims, the validity of Defendants' defenses, and the value of the case.  "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).  In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir.1982)).  The Court agrees with the Special Master's conclusion that the Settlement Agreement resulted from the parties' arms-length negotiations and not collusion, particularly in light of Judge Hoffman's close familiarity with the extent of the parties' informal discovery and their negotiations generally.

Third, as Judge Hoffman concludes, the terms of the Settlement Agreement are fair.  "In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (internal citation and alteration omitted).  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Officers for Justice*, 688 F.2d at 628).  The Settlement Agreement establishes a large fund of approximately $21.5 million, and allows for two funds in order to accommodate Class

9

1    Members in different positions.  As the Plaintiffs explained in their motion for

2    preliminary approval and their pending motion for final approval, the Cash Component

3    fund is smaller than the Credit Component fund because during mediation, the parties

4    predicted that the group recovering cash would only be 10% of those on the notice list.

5    The claimants are to receive pro rata shares of cash or credits based on the number of

6    claimants.  Additionally, the fund is non-reversionary, meaning the entire fund will

7    benefit the Class Members—none of the money will revert back to Defendants.  Also, the

8    Class Members have not raised significant concerns relating to the terms of the

9    Settlement Agreement.

10          Fourth, regarding the recommendation and experience of counsel, Class Counsel

11   believe the Settlement is fair, adequate, and reasonable.  Further, Judge Hoffman reports

12   that he reviewed declarations submitted by Class Counsel and has personal knowledge of

13   Class Counsel's experience in TCPA class actions.  Also, no class members object

14   regarding Class Counsel's experience.  For those reasons, and after thorough review of

15   Class Counsel's declarations describing their extensive experience litigating class

16   actions—and in particular, TCPA actions—the Court concludes the fourth fairness factor

17   weighs in favor of approving the Settlement.

18          Fifth, if the Settlement Agreement is not approved, the ensuing litigation would be

19   costly and lengthy for the reasons stated above, such as the costs of litigating issues

20   regarding consent to calls, whether calls were placed to cell phones or landlines, whether

21   class certification is proper, and any potential appeals.  Accordingly, the Court concludes,

22   as the Special Master recommends, that the fifth fairness factor weighs in favor of

23   approving the Settlement.

24          The sixth factor also weighs in favor of approving the Settlement, as Judge

25   Hoffman, a neutral party, recommends approval.

26          Regarding the seventh factor, Judge Hoffman notes that the reaction of Class

27

28                                                          2286-MMA (MDD)

Members to the Settlement has been positive on the whole.  He notes that "less than one tenth of one percent" of the approximately 300,000 claimants either objected to the Settlement or opted out of the Class.  Doc. No. 394.  Correctly, Judge Hoffman notes that an absence of many objections creates "a strong presumption that the terms of the proposed class action settlement are favorable to the Class Members."  Doc. No. 394, p. 11; *see In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the class had not filed oppositions); *see also Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).  Also, as discussed more fully below, Judge Hoffman finds all of the objections to the Settlement Agreement to be meritless.

Regarding the eighth and final factor, the Special Master, based on his extensive experience with the parties during the negotiation of this Settlement Agreement, believes the parties entered into the Agreement in good faith, and reports no signs of collusion.

For the foregoing reasons, the Court **ADOPTS IN FULL** the Special Master's Report and Recommendation, Doc. No. 394, and **GRANTS** Plaintiffs' unopposed motion for final approval of the Settlement, Doc. No. 365.

## II.    Motion for Fees, Costs, and Incentive Awards

Plaintiffs request $2,400,000.00 in fees and litigation expenses, to be paid by Defendants "separate from and in addition to the Settlement Fund."  Doc. No. 318.  Plaintiffs argue the fee request is reasonable under both the percentage-of-the-fund and lodestar methods of calculating fee awards.

### A.    Legal Standard

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys fees and nontaxable costs that are

11

authorized by law or by the parties' agreement."  There are two methods for calculating a reasonable fee award: the lodestar method and the percentage-of-the-common-fund method (also known as the percentage-of-recovery method).  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

The lodestar method "is appropriate in class actions brought under fee-shifting statutes (such as federal civil rights, securities, antitrust, copyright, and patent acts), where the relief sought—and obtained—is often primarily injunctive in nature and thus not easily monetized, but where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation."  *In re Bluetooth*, 654 F.3d at 941.  To determine whether a fee award calculated pursuant to the lodestar method is reasonable, courts look at 12 factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent;[1] (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and the ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Bluetooth*, 654 F.3d at 942 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

Where a settlement results in a common fund, a court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund

---

[1] Courts no longer consider whether the fee is fixed or contingent.  *In re Bluetooth*, 654 F.3d at 942 n.7.

2286-MMA (MDD)

method.  *In re Bluetooth*, 654 F.3d at 942.  "A common fund is created when the settlement sets aside a specified amount of money to be paid by the defendant for the benefit of the entire class 'in exchange for a release of liability.'"  *Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2014 WL 588035, at *9 (N.D. Cal. Feb. 14, 2014) (quoting *State of Fla. v. Dunne*, 915 F.2d 542, 544–45 (9th Cir. 1990)).  Even where there is no "common fund," courts may use the percentage-of-the-fund method by ascertaining the *value* of the settlement to the class if the value can be easily calculated. *See Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *10 (S.D. Cal. Nov. 5, 2012); *Moore*, 2014 WL 588035, at *9; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

In situations where a settlement agreement sets out an amount for the benefit of the class and an independent award for attorneys' fees, costs, and/or incentive awards, courts should combine the funds to calculate the gross settlement amount, or the "constructive common fund," and calculate the fees as a percentage of the entire fund.  *Moore*, 2014 WL 588035, at *9; *Glasser v. Volkswagen of Am.*, *Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011).  After all, a defendant is "interested only in disposing of the total claim asserted against it," meaning there is always "the possibility of a tradeoff between merits relief and attorney's fees."  *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003); *Evans v. Jeff D.*, 475 U.S. 717, 732 (1986).  Thus, by combining the funds, courts "safeguard against 'private agreements to structure artificially separate fee and settlement arrangements' that attempt to do an end run around the twenty-five percent benchmark requirement in 'what is in economic reality a common fund situation.'"  *Moore,* 2014 WL 588035, at *9; *see also Vizcaino*, 290 F.3d at 1047 (holding that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage method).

While 25% is the benchmark for reasonable fee awards in common fund cases,

case law surveys suggest that 50% is the upper limit, with 30–50% commonly being awarded in cases in which the common fund is relatively small.  *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 14:6; *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).  "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Regardless of whether a court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable.  *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 963 (stating, for the protection of the class, "a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement").  The Ninth Circuit has identified a number of factors that may be relevant to determining whether an award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048–50. Further, the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." *In re Bluetooth*, 654 F.3d at 944.  The lodestar method can be used to cross-check the reasonableness of a fee award calculated pursuant to the percentage-of-recovery method and vice versa.  *Id.* at 945.

14

**B.    The Special Master's Report and Recommendation**

   *i.    Attorneys' Fees and Costs*

The Special Master recommends the Court approve Plaintiffs' unopposed request for fees and costs.  The Court agrees with the Special Master's conclusion that Plaintiffs' request for fees and costs is reasonable and appropriate for the following reasons.

The results of applying the percentage-of-the-fund method indicate that the requested fee award is presumptively reasonable.  The Court can estimate the value of the Settlement to the class.  *See Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997) (stating that where a benefit to the class consists of "a complicated formula from which valuable considerations of several kinds are provided," a court "must estimate the total value of the settlement").  Netting the Cash and Credit Components at $15 million, and taking into account the costs of notice and claims administration, the Special Master fees, and the requested attorneys' fee award, as required under Ninth Circuit law, the Court can estimate the value of the Settlement at $21,403,975.17.  The attorneys' fee award of $2.4 million represents approximately 11% of the total Settlement value, which is well below the presumptively reasonable benchmark percentage of 25%.

However, while the Court should factor in the Credit Component in valuing the Settlement,[4] it may not be entirely accurate to value the Credit Component at its full value.  Plaintiffs are candid in reporting that the case law regarding how to value credits in determining the value of a common fund is sparse.  Accordingly, as the Special Master recommends, the Court "focus[es] on how a reduction [of the credit component] would impact the percentage of attorney fees."  *See* Doc. No. 401.  For example, even were the Court to discount the Credit Component by 50%, or $6,500,000, a $2.4 million fee award

---

[4] *See Wing*, 114 F.3d at 990 (approving a fee award where the parties agreed to include potential insurance recoveries with the amount of cash payments in the valuation of the settlement).

2286-MMA (MDD)

only amounts to approximately 16% of the total value of the Settlement.  Even were the Court to discount the Credit Component by 75%, the fee award would constitute approximately 20% of the value of the Settlement—well within the benchmark in this circuit.  In sum, applying the percentage method indicates that the fee request is reasonable.

However, the Ninth Circuit has admonished courts to fully explain how they determine whether a fee award is reasonable.  *See In re Bluetooth*, 654 F.3d at 944-45.  It is not sufficient to apply the benchmark percentage to common funds and end the inquiry. *Id.*  A court abuses its discretion "when it uses a mechanical or formulaic approach that results in an unreasonable reward."  *Id.* (internal quotations omitted).  Accordingly, the Court analyzes the six reasonableness factors noted above, and cross-checks the award by comparing the lodestar.

For the following reasons, analyzing the reasonableness factors with regard to the instant case supports a determination that Plaintiffs' fee request is reasonable.  First, the Court looks at the results achieved for the class.  There was a relatively high degree of uncertainty as to whether Plaintiffs would be able to both certify a class and prevail on the merits.  Accordingly, Plaintiffs' counsel obtained a favorable result by successfully settling the case and obtaining around $21 million to benefit the Class Members.  Further, very few Class Members either objected to the Settlement Agreement or opted out of the Class, indicating that the Class Members found the result favorable.  Plaintiffs' counsel represent that in their experience, the rate of class members submitting claims is exceptionally high as well.

Second, the Court looks at the risks of the litigation.  Again, Plaintiffs faced an uncertain outcome regarding class certification and on the merits.  Further, the TCPA does not have a fee-shifting provision, so it was risky for Plaintiffs' counsel to take this case on a contingency basis.  Individually, the cases are negative value suits that

16

attorneys are reluctant to or unable to take because the TCPA only allows for damages between $500 and $1,500.  Thus, Plaintiffs' counsel provided Class Members across the nation with legal representation to seek redress for their grievances, which were otherwise unlikely to be redressed—all while facing the risk of going unpaid.  Counsel litigated this case for four to six years.

Third, the Court looks to the skill required and the quality of work.  Plaintiffs' attorneys have exhibited high caliber work.  They have kept the Court apprised of various issues, have provided the Court with thorough and well-written briefing, including supplemental briefing on several occasions.  Also considering the skill required to litigate and negotiate a settlement in a large MDL case, the Court concludes Plaintiffs' counsel exhibited exceptional skill and hard work.

Fourth, the Ninth Circuit has stated that the contingent nature of work weighs in favor of finding a fee award reasonable.  *See Vizcaino*, 290 F.3d at 1050.  As mentioned, Plaintiffs' counsel took the case on a contingency basis.

Fifth, as discussed above, class counsel shouldered many burdens, including participating in 11 mediation sessions.  They litigated the case for at least four years, with some attorneys litigating the cases for nearly six years, and in the past three years, counsel participated in 11 mediation sessions with Judge Hoffman, as well as participated in additional settlement negotiations between the parties, informal discovery and formal confirmatory discovery, including interrogatories, document requests and a Rule 30(b)(6) deposition.

Sixth, the Court may compare awards made in similar cases.  Here, Ninth Circuit case law indicates that the award Plaintiffs seek is reasonable, as discussed above regarding the percentage-of-the-fund method, and more fully below with regard to the Court's calculations using the lodestar method.

Lastly, calculating the lodestar also supports a finding that Plaintiffs' fee request is

17

reasonable. *Vizcaino*, 290 F.3d at 1050 ("[T]he lodestar may provide a useful perspective on the reasonableness of a given percentage award."). Plaintiffs' counsel submitted declarations detailing their experience, hours, billing rates, and work performed in this case. Judge Hoffman reports that he carefully reviewed the declarations of the Plaintiffs' attorneys and is satisfied that their hours are reasonable and their hourly rates comport with market rates for TCPA cases. The Court has also reviewed counsel's declarations, and agrees. Plaintiffs provide billing rates ranging from $325 to $750, varying by attorney and by the year during which work was completed. In *Shames v. Hertz Corp.*, this Court found an average rate of $439.87 to be a reasonable rate in 2012. *Shames v. Hertz Corp.*, No. 07CV2174-MMA(WMC), 2012 WL 5392159 at *17 (S.D. Cal. Nov. 5, 2012). Further, in *Gallucci v. Boiron, Inc.*, this Court specifically found rates ranging between $300 and $650 reasonable for various attorneys and rates between $195 and $215 reasonable for paralegals and law clerks. *Gallucci v. Boiron, Inc.*, No. 11CV2039-JAH(NLS), 2012 WL 5359485, at *7, 9-10 (S.D. Cal. Oct. 31, 2012).

Based on the attorneys' declarations, for the work completed in 2012 in this case, the attorneys' rates were within acceptable ranges, aside from Mr. Latturner's.[5] Mr. Latturner states that his rate is $750, but does not indicate when, if ever, it was lower. Doc. No. 318-3, ¶ 14. While Mr. Latturner's rate is high, it is not far outside the rates acceptable over the past five to six years. Also, Mr. Latturner has significant experience with class actions and has been working at his firm since 1995, and has been an attorney since 1962. His experience justifies a rate on the higher end of the spectrum. Moreover, Plaintiffs submit the declaration of Frank J. Johnson, a local attorney who states he is familiar with the local rates for similar litigation, and states that Mr. Campion's billing

---

[5] Mr. Campion's rate was within the above-mentioned acceptable range in 2012, and increased to $700 in June 2013, and to $750 in December 2014. Doc. No. 318-2, ¶ 15.

rate of $750 is "very reasonable" and in fact lower than some attorneys' rates with less experience.  Doc. No. 318-11, ¶ 3.  Mr. Johnson states that he has been litigating class actions since 1989 and has been designated as lead or co-lead counsel on multiple occasions.  He states his current billing rate is $825.  Mr. Johnson's declaration supports a finding that both Mr. Campion's and Mr. Latturner's rates are reasonable considering their experience.  Accordingly, all of the attorneys' rates appear reasonable considering market rates during the time periods during which services were rendered.

Plaintiffs' counsel's hours appear reasonable as well.  Over the past five or six years, counsel and their staff have expended 2,597.43 hours on this case, which is quite low compared with other class actions.  *See Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172-73 (C.D. Cal. Sept. 14, 2010) (approving 8,771 hours as reasonable over a 4-year period, averaging approximately 2,192 hours per year); *Aarons v. BMW of North America, LLC*, 2014 WL 4090564 (C.D. Cal. Apr. 29, 2014) (approving as reasonable 4,673 hours over 2.5 years, averaging nearly 1,900 hours per year).  For example, this Court has deemed reasonable 14,506 hours over five years, an approximate average of 2,900 hours per year, albeit in an admittedly more complicated and tedious case.  *Shames*, 2012 WL 5392159 at *19.

Next, the Court must determine the propriety of a lodestar multiplier.  As of August 22, 2016, Plaintiffs' counsel report that they have incurred a total of $1,534,835 in fees, representing a lodestar of 1.5636 when compared with the total $2.4 million fee request.[1]  Doc. No. 387.  At the August 23, 2016 hearing, the Special Master asked Plaintiffs' attorneys to provide supplemental briefing regarding multipliers approved by

---

[1] This is the most recent lodestar estimate that Plaintiffs have provided the Court.  In Plaintiffs' motion for fees, Plaintiffs' estimated lodestar was lower and thus the multiplier requested was higher—at 1.81. *See* Doc. No. 318.

2286-MMA (MDD)

courts in other TCPA class action settlements.  On September 2, 2016 Plaintiffs' counsel provided a chart listing 45 TCPA cases and the multipliers that the courts approved in those cases.  The range was 1.5 to 5.16.  Further, in 30 out of the 45 cases, the courts had approved multipliers exceeding 2.0.  Thus, a 1.56 multiplier is modest.  *See also Couser v. Comenity Bank*, 125 F.Supp.3d 1034, 1049 (S.D. Cal. 2015) (finding a 2.80 multiplier reasonable in a TCPA case).

Further, in applying the twelve factors relevant to the reasonableness of a lodestar multiplier, a 1.56 multiplier is appropriate here.  *See Kerr*, 526 F.2d at 70.  The Court has already discussed the following factors above, and for the foregoing reasons, they support a 1.56 multiplier: the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the experience, reputation, and the ability of the attorneys, the amount involved and the results obtained, the undesirability of the case, and awards in similar cases.  Even without considering the rest of the *Kerr* factors, the weight of the above factors adequately supports the application of the modest 1.56 multiplier requested here, and the few remaining factors do not undermine the application of a multiplier.[6]

All in all, the fee request is reasonable based the circumstances of this case.  The percentage is well below the 25% benchmark, and also appears reasonable when cross-checked with a lodestar calculation.

Regarding costs, Class Counsel also seek reimbursement of $37,760 in costs, to be paid from the requested $2.4 million award.[7]  Federal Rule of Civil Procedure 23(h)

---

[6] For example, it is unclear whether the attorneys were precluded from taking other cases due to their work in this case, and it does not appear that the clients or circumstances imposed any time limitations on counsel, but that is not to detract from those factors that weigh in favor of the relatively small multiplier.

[7] Plaintiffs have not updated this request since the time of their filing of their motion for fees, costs, and incentive awards.

20

provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  Here, the parties have agreed upon these costs, and they appear reasonable.  Plaintiffs report that much of the costs were incurred in mediating the case with Judge Hoffman.  The other expenses include travel expenses to attend the mediations, filing fees, deposition costs, research fees, copying, postage, courier fees, and IT consultant fees.  Because the Court finds the $2.4 million award reasonable, and the costs will be paid out of that award, the Court finds the award of costs appropriate.

### ii.   *Incentive Awards*

The Settlement Agreement contemplates incentive awards in the amount of $2,500 to be paid to each of the three Class Representatives—amounting to $7,500.  The incentive awards are to be paid out of the Cash Component of the Settlement Fund.  *See* Settlement Agreement, Doc. No. 281-3, § 5.06.  The Settlement Agreement states that the incentive awards are meant to compensate the Class Representatives "for the time and effort they have personally invested in this Action."  *See* Settlement Agreement, Doc. No. 281-3, § 6.02.  The Special Master recommends approving the award, and the Court agrees that the awards are appropriate.

Incentive awards are common and within the discretion of the court.  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  "Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class."  *Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 854 (N.D. Cal. 2010) (citing *Staton*, 327 F.3d at 977).  Courts should ensure that an incentive award is not based on fraud or collusion.  *Id.*; *see also Franklin v. Wells Fargo Bank, N.A.*, No. 14CV2349-MMA (BGS), 2016 WL 402249, at *7 (S.D. Cal. Jan. 29, 2016).  Courts consider the following factors in determining whether to grant a request for an incentive award:

1) the risk to the class representative in commencing suit, both

21

2286-MMA (MDD)

1
2
3
4
5

> financial and otherwise; 2) the notoriety and personal
> difficulties encountered by the class representative; 3) the
> amount of time and effort spent by the class representative; 4)
> the duration of the litigation and; 5) the personal benefit (or
> lack thereof) enjoyed by the class representative as a result of
> the litigation.

6   *Van Vranken*, 901 F. Supp. at 299.

7            According to Plaintiffs' counsel, the class representatives, Robinson, Tovar, and

8   Scardina, "came forward to serve as the proposed Class Representatives, kept abreast of

9   the litigation, and approved the proposed settlement terms after reviewing them and

10  consulting with Class Counsel." Doc. No. 318-1, p. 24–25.  Further, the named Plaintiffs

11  have submitted declarations in support of their request.  Robinson reports that he

12  provided information to counsel regarding calls and credit cards, and supplied

13  documents. Doc. No. 318-8.  Plaintiff Robinson recalls meeting with attorneys regarding

14  the motion to stay and the motion to consolidate cases into the MDL.  Further, Robinson

15  states he kept abreast of the mediation sessions, and discussed the proposed settlement

16  with attorneys as well.  Plaintiff Scardina reports that he consulted with attorneys

17  regarding the filing of his complaint, as well as responded to several discovery requests.

18  Doc. No. 318-9.  Plaintiff Tovar states that he was involved in the preparation of the

19  complaint filed on his behalf, looked for documents responsive to discovery requests, and

20  helped counsel with responses drafted on his behalf.  Doc. No. 318-10.  None of the class

21  representatives were deposed, but they state that they were willing to be.

22           Reviewing the case law, awards of $2,500 are generally reasonable, absent

23  indications of collusion.  *See e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, No. 10-CV-2471-

24  WQH BGS, 2014 WL 888665, at *8 (S.D. Cal. Mar. 5, 2014) ("The Court finds that the

25  $5,000 incentive award is within the acceptable range of approval, and does not appear to

26  be the result of collusion."); *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist.

27
28

22

LEXIS 114597, at *18 (N.D. Cal. Aug. 8, 2012) ("In [the Northern] District [of California], a $5,000 incentive award is presumptively reasonable."); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (approving payments of $7,500); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 855 (N.D. Cal. 2010) (awarding $5,000 incentive payment); *Shames*, 2012 WL 5392159, at *22 ("The Court finds the arguably nominal $2,000 incentive award for five years of service is well within the acceptable range of approval.").

However, the Ninth Circuit has warned against awarding incentive fees that are too "disproportionate to the class's recovery" or conditional incentive awards. *See Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163–66 (9th Cir. 2013). Here, the awards are modest and were not conditioned upon the representatives' support of the Settlement, but the incentive awards were made part of the Settlement. This gives rise to a risk that the class representatives supported the Settlement because of the prospect of receiving the incentive awards. *See Radcliffe*, 715 F.3d at 1166; *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015). However, for the reasons discussed thoroughly above, the Settlement appears fair, reasonable, and adequate, and the lack of objections and opt-out requests by class members is particularly relevant to that finding. Further, the Settlement Agreement was not final when the class representatives signed it. The Settlement Agreement still needed to be approved by the Court. Importantly, there is no indication that the request arises out of collusion or fraud, and the Special Master, who was heavily involved in the settlement of the case, reports no evidence of collusion or fraud. Considering the class representatives' work, and that the awards do not appear to have been a product of collusion, the Court finds the incentive awards are reasonable.

For the above reasons, the Court **ADOPTS IN FULL** the Special Master's Report and Recommendation, Doc. No. 401, and **GRANTS** Plaintiffs' unopposed motion for fees, costs, and incentive awards, Doc. No. 318.

2286-MMA (MDD)

**III.    Objections to the Settlement**

Judge Hoffman reviewed the objections to the Settlement Agreement and concluded that all objections should be overruled.  At the time of Judge Hoffman's Report and Recommendation, three of the objections had been withdrawn.  Since then, counsel for objector Steven Helfand also withdrew his objection.  *See* Doc. Nos. 326, 395.  Also, the Special Master found that of the 32 objections submitted, 15 of the objections were not true objections to the Settlement Agreement.  The Court agrees with the Special Master that those objections should be overruled as non-objections.  *See* Doc. No. 389, pp. 3–5.

Regarding the remaining objections, the Court agrees with the Special Master's recommendation that they be overruled.  Many objections were based on misunderstandings regarding the Agreement and are therefore meritless.  *See* Doc. No. 389, p. 5-6.  The rest of the objections warrant further discussion, but are likewise meritless.  First, objectors argue that the settlement release is too broad, but the Agreement only releases claims relating to calls made during the Class Period, and does not release claims pursuant to the Fair Debt Collection Practices Act or the Fair Credit Reporting Act or other laws regulating debt collection.  Accordingly, its scope is not unduly broad.  Second, objectors argue that the Settlement Agreement violates the Consumer Financial Protection Bureau Consent Order, which prohibited some of Defendants' practices.  The objectors claim that Defendants cannot substantiate claims that certain Class Members owe them money, so Defendants cannot apply credits to their accounts because they do not know whether the accounts are enforceable.  However, Class Members were notified that they were allowed to contest the Defendants' claim that they owed debts.  If a Class Member disputed the debt, they were automatically transferred to the Cash Component group.  Accordingly, the Settlement does not violate the Consent Order.

Third, objectors argue the debt reduction credits are illusory for Class Members whose debts are barred by the statute of limitations.  However, this is untrue because the Consent Order does not prohibit Defendants from attempting to collect debts by means other than lawsuits.

Fourth, the Cash Component is not too little in relation to the scope of the release.  The case law the objectors cited in support is irrelevant.  Again, as discussed above, the Settlement Agreement appears fair, reasonable, and adequate.

Fifth, objectors argue that the attorneys' fee award should be reduced to a reasonable percentage of the total cash relief.  However, as discussed above, the fee award is reasonable under Ninth Circuit precedent.  It would be inaccurate to treat the Credit Component as worthless to Class Members.

Sixth, objectors complain that class notice was deficient because it did not allow a Class Member without an open account to determine how much they would receive in cash, so they could not decide whether to opt out or file a claim.  However, Class Members are to receive payments on a pro rata basis, meaning it would be impossible to inform them of how much they would receive prior to the close of the period in which to file claims.  Also, the objectors argue notice was deficient because the administrator did not send postcard notice to Class Members that Defendants may have called, but who did not have past or present collection accounts or owe money to Defendants.  However, the Claims Administrator published the notice in national consumer publications, placed internet banner ads strategically to maximize the dissemination of the Notice, created a dedicated Settlement Website, a long form notice substantially in the form of Exhibit B to the Agreement, which was posted on the Settlement Website, issued a press release, and provided a toll-free number to call to obtain more information about the Settlement.  *See* Agreement, §§ 9.03-9.07 and Exhibits B, D–F to the Agreement and KCC's Declaration of Daniel Rosenthal Re Settlement Notice Plan and Notice Documents, ¶¶ 6–11.

2286-MMA (MDD)

Lastly, the objectors object that the class definition is "fail-safe," meaning the class is defined such that membership in the class depends on whether a person can succeed on the merits of his or her claim.  The objectors argue that the class members could avoid the effects of res judicata if they do not succeed on the merits of their claims.  However, Defendants have agreed to a fail-safe class definition for the purposes of settlement, so the argument is unpersuasive.

For the foregoing reasons, the Court **ADOPTS IN FULL** the Special Master's Report and Recommendation, Doc. No. 389, **OVERRULES** all objections to the Settlement.

## IV.    Untimely Claims and Requests to Opt-Out

At the final approval hearing on September 30, 2016, Plaintiffs' counsel represented that there were a number of untimely claims requests, and defense counsel represented that there were 57 untimely exclusion requests, *i.e.*, requests to opt-out of the Settlement.  The Court agreed that the untimely claims requests should be honored, whereas the late exclusion requests should not.  *See* Doc. No. 410 at 9:5–13, 21:16–22:16.  Accordingly, the Court **ORDERS** that the Claims Administrator honor claims that were postmarked or received by the Claims Administrator on or before **<u>September 30, 2016</u>**, and decline all untimely requests to opt-out of the Settlement.

//
//
//
//
//
//
//
//

26

2286-MMA (MDD)

## V.     Multi-District Litigation Member Cases Resolved by Class Settlement

According to Plaintiffs' counsel's report, of the hundreds of member cases that make up this multi-district litigation, only the following eight cases are resolved entirely by this Class Action Settlement:

- *Gagnon v. Midland*, 14-cv-2469-MMA-MDD
- *Gawel v. Midland,* 14-cv-1484-MMA-MDD
- *Gonzalez v. Midland*, 14-cv-2410-MMA-MDD
- *Gonzalez v. Midland*, 15-cv-0415-MMA-MDD
- *Robinson v. Midland*, 10-cv-2261-MMA-MDD
- *Scardina v. Midland*, 11-cv-2370-MMA-MDD
- *Soto v. Midland*, 14-cv-1849-MMA-MDD
- *Tovar v. Midland*, 10-cv-2600-MMA-MDD

*See* Doc. No. 419, Exhibit 1.  Of the remaining cases, 235 will not be affected by the Settlement because the plaintiffs either opted out of the Settlement Class or their claims are based on calls occurring outside of the Class Period.  *See* Doc. No. 419, Exhibit 2. Further, 41 cases may be partially affected by the Settlement.  *See* Doc. No. 419, Exhibit 3.

### FINAL ORDER AND JUDGMENT

BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

I.     The Agreement and all definitions set forth therein are hereby incorporated with and made part of this Final Order Approving Class Action Settlement and Judgment ("Final Order and Judgment").

II.     JURISDICTION:  The Court has jurisdiction over the subject matter of the Lawsuit and over all settling Parties thereto including, without limitation, the Class Members.

III.     CLASS MEMBERS:  Pursuant to Fed. R. Civ. P. 23(b)(3), the Lawsuit is hereby finally certified, for settlement purposes only, as a class action on behalf of the

27

following Class Members:

> All persons in the United States who were called on a cellular
> telephone by Defendants or their subsidiaries, affiliates or
> related companies (other than calls made by Asset Acceptance
> LLC, Atlantic Credit & Finance, Inc. or Propel Financial
> Services) in connection with the collection of an alleged debt
> using a dialer or by artificial or prerecorded voice message
> without prior express consent during the period from November
> 2, 2006 through August 31, 2014, inclusive.
> Excluded from the Class are the Judges to whom the Action is
> assigned and any member of the Judges' staffs and immediate
> families, as well as all persons who validly request exclusion
> from the Settlement Class.

IV.  <u>APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL</u>:

Pursuant to Fed. R. Civ. P. 23, Plaintiffs are the Class Representatives and Douglas J. Campion of The Law Offices of Douglas J. Campion, APC and James O. Latturner of Edelman, Combs, Latturner & Goodwin, LLC are certified as Class Counsel.  David P. Schafer of the Law Offices of David P. Schafer PLLC is confirmed to continue his role as liaison counsel.

V.  <u>NOTICE AND CLAIMS PROCESS</u>:  Pursuant to the Court's Preliminary Approval Order, the Claims Administrator, KCC, has complied with the approved notice process as confirmed in its declaration filed with the Court.  The Court finds that the form and method for notifying the settlement Class Members of the Settlement and its terms and conditions was in conformity with this Court's Preliminary Approval Order, provided a means of notice reasonably calculated to apprise the Class Members of the pendency of the action and the proposed settlement, and thereby satisfied the requirements of Fed. R. Civ. P. 23(c)(2) and due process, and constituted the best notice practicable under the circumstances, and due and sufficient notice to all Class Members entitled thereto.  Specifically,

28

individual notice was provided to those potential Class Members who are current or former account holders of Defendants who are identified in Defendants' records as having received a call on a cellular telephone number from Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) in connection with the collection of an alleged debt using a dialer or by artificial or prerecorded voice message during the period from November 2, 2006 through August 31, 2014, inclusive; and all other persons were notified by publication and/or online by the Notice Plan proposed by the Parties and approved by the Court at Preliminary Approval which included insertion of a half-page Summary Notice in Cosmopolitan (April 2016 edition on-sale March 8, 2016), National Geographic (March 2016 edition on-sale February 23, 2016) and People (February 22, 2016 edition on-sale February 5, 2016) magazines, insertion of a full-page Summary Notice in Reader's Digest (April 2016 edition on-sale March 15, 2016), and 110,830,295 unique internet banner impressions targeted to adult cell phone owners delivered from January 13, 2016 through March 23, 2016, and a dedicated settlement website. The Court finds that the notice process was designed to advise the settlement Class Members of their rights. The Court finds that the notice requirements set forth in the Class Action Fairness Act and any other applicable law have been satisfied. Further, the Court finds that Settlement Fund is approved, and the claim process set forth in the Agreement was followed and that the process was the best practicable procedure under the circumstances.

VI.   <u>FINAL CLASS CERTIFICATION</u>:  The Court finds that the Lawsuit satisfies the applicable prerequisites for class action treatment under Fed. R. Civ. P. 23, for settlement purposes, namely:

      1)   The Settlement Class members are so numerous that joinder of all of

29

them in the Lawsuit would be impracticable;

2)    There are questions of law and fact common to the Settlement Class Members, which predominate over any individual questions;

3)    The claims of Plaintiffs are typical of the claims of the Settlement Class members;

4)    Plaintiffs and Class Counsel have fairly and adequately represented and protected the interests of all the Settlement Class members; and

5)    Class treatment of these claims will be efficient and manageable thereby achieving an appreciable measure of judicial economy, and a class action is superior to other available methods for a fair and efficient adjudication of this controversy.

VII. The Court finds that the Settlement of the Lawsuit, on the terms and conditions set forth in the Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interests of the settlement Class Members, especially in light of the benefits to the settlement Class Members, the strength of Plaintiffs' case, the complexity, expense and probable duration of further litigation, the risk and delay inherent in possible appeals, and the risk of collecting any judgment obtained on behalf of the class.

VIII. <u>SETTLEMENT TERMS</u>:  The Agreement, which has been filed with the Court and shall be deemed incorporated herein, and the proposed Settlement, are finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended by any order issued by this Court, and the Parties are ordered to comply with its terms.  All claimants that are in the group receiving credits to their existing accounts with Defendant shall be credited in an amount on a pro rata basis from the $13,000,000.00 credit fund.  That amount is represented to be approximately $60.74 but could be modified by not more than three or four

30

cents due to the evaluation of late claims and/or corrections made to deficient claims. All claimants in the Cash Component group shall be paid in an amount on a pro rata basis from the $2,000,000.00 cash fund, after deduction of the $7,500.00 in incentive payments and Special Master Fees of $31,905.00 are deducted. That pro rata amount is represented to be approximately $22.04, but could also vary by three or four cents due to the evaluation of late claims and/or corrections made to deficient claims. Those amounts are approved as fair and reasonable. The Claims Administrator shall conduct all administration of the Settlement Fund. The Claims Administrator shall prepare and issue all disbursements of the Individual Cash Settlement Amounts from the Settlement Fund to Approved Claimants entitled to such benefits within the time period specified in the Agreement. Defendants shall prepare and issue all of the Individual Debt Forgiveness Settlement Amounts from the Settlement Fund to Approved Claimants entitled to such benefits within the time period specified in the Agreement. Defendants shall provide verification of all such credits to the accounts and the Claims Administrator shall confirm the credits were properly made to the accounts by conducting a random sample, in the manner specified in the Settlement Agreement.

IX. <u>ATTORNEYS' FEES</u>: The Court finds that Class Counsel are qualified to represent the Settlement Class. The Court hereby grants Class Counsel's request for an award of attorney's fees and litigation costs in the total amount of $2,400,000.00. The Court finds that the amount of this award is fair and reasonable in light of the efforts expended by Class Counsel in prosecuting this Action and the results obtained. The attorney's fees and litigation costs are to be paid by Defendants within the time period set forth in the Agreement separate and apart from the Settlement Fund.

X. <u>INCENTIVE PAYMENTS</u>: The Court finds that it is appropriate for the Class

31

Representatives, Christopher Robinson, Eduardo Tovar, and Dave Scardina, each to be paid a one-time payment of $2,500.00 from the Cash Component of the Settlement Fund, as an incentive payment for instituting, prosecuting and bearing the risk of this litigation.  Aside from any claims they are paid for or credits provided them as a result of claims they made as members of the Class, this incentive payment shall be the only consideration paid to the Class Representatives.

XI.  <u>COSTS OF NOTICE AND CLAIMS ADMINISTRATION</u>: As required by the Settlement Agreement, Defendant shall pay to the Claims Administrator all reasonable costs and fees it charges for the cost of claims administration and notice, including the tasks set forth in § 8.01 of the Settlement Agreement, as well as paying for the analyst used to examine the lists of phone numbers in confirmatory discovery, all to be paid separate and apart from the amounts paid for the Settlement Fund.

XII.  <u>EXCLUSIONS AND OBJECTIONS</u>:  This Final Order and Judgment applies to all claims or causes of action settled under the terms of the Settlement Agreement, and shall be fully binding with respect to all Class Members who did not properly request exclusion.  A total of 446 timely and 57 late exclusion requests were received.  Those persons requesting exclusion are identified on Exhibit A to this Order.  The Court hereby excludes these persons from the Class and Settlement.

XIII. Class Members were given an opportunity to object to the settlement.  After consideration of each of the objections, the Court hereby overrules such objections.

XIV. This Order is binding on all Class Members, except those individuals named on Exhibit A, who validly and timely excluded themselves from the Class.

XV.  <u>RELEASE OF CLAIMS AND DISMISSAL OF LAWSUIT</u>: The Class Representatives, Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a

32

2286-MMA (MDD)

class, or in any other capacity, any of the Released Claims against any of the Released Parties, as set forth in the Agreement.  Pursuant to the Release contained in the Agreement, the Released Claims are compromised, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.  The Released Claims include, without limitation, any and all liabilities, claims, causes of action, damages, penalties, costs, attorneys' fees, losses, or demands, whether known or unknown, existing or potential, suspected or unsuspected, which were asserted in the Action or are related to the claims asserted in the Action, any and all claims relating to the making, placing, dialing or initiating of calls using an automatic telephone dialing system or artificial or prerecorded voice, any and all claims for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 and the regulations promulgated thereunder or related thereto, and any and all claims for violation of any laws of any state that regulate, govern, prohibit or restrict the making, placing, dialing or initiating of calls using an automatic telephone dialing system, an artificial or prerecorded voice, or any automated process or technology (hereafter, collectively, the "Released Claims").  Excluded from the Released Parties are Atlantic Credit & Finance, Inc. and Propel Financial Services. Excluded from the Released Claims are any claims arising from telephone calls made by Asset Acceptance LLC itself, or by Astra Business Services, Inc. or Radius Solutions, Inc., on behalf of Asset Acceptance LLC.  Also excluded from the Released Claims are any claims based on telephone calls made before November 2, 2006 or after August 31, 2014.

XVI. This document shall constitute a judgment for purposes of Rule 58 of the Federal Rules of Civil Procedure. Final Judgment in this action is hereby entered. The claims in this action, including all claims asserted herein, are hereby dismissed with prejudice in all respects, except for purposes of overseeing the litigation of

2286-MMA (MDD)

1    the Multidistrict Litigation portion of the case, including discovery.

2   XVII.  This Order is not, and shall not be construed as, an admission by Defendants of

3        any liability or wrongdoing in this or in any other proceeding.

4   XVIII. Without affecting the finality of this Final Judgment and Order of Dismissal

5        with Prejudice, the Court hereby retains continuing and exclusive jurisdiction

6        over the Parties and all matters relating to the Action and/or Agreement,

7        including the administration, interpretation, construction, effectuation,

8        enforcement, and consummation of the settlement and this order and judgment.

10        Lastly, the Clerk of Court is instructed to enter judgment dismissing with prejudice

11   the following cases, as well as to close the following actions:

- *Gagnon v. Midland*, 14-cv-2469-MMA-MDD
- *Gawel v. Midland,* 14-cv-1484-MMA-MDD
- *Gonzalez v. Midland*, 14-cv-2410-MMA-MDD
- *Gonzalez v. Midland*, 15-cv-0415-MMA-MDD
- *Robinson v. Midland*, 10-cv-2261-MMA-MDD
- *Scardina v. Midland*, 11-cv-2370-MMA-MDD
- *Soto v. Midland*, 14-cv-1849-MMA-MDD
- *Tovar v. Midland*, 10-cv-2600-MMA-MDD

**IT IS SO ORDERED**.

DATE: November 30, 2016

HON. MICHAEL M. ANELLO
United States District Judge

34

2286-MMA (MDD)