# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: MIDLAND CREDIT MANAGEMENT INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | MDL No. 2286<br>Member Cases: 10cv2261-MMA (MDD)<br>10cv2600-MMA (MDD)<br>11cv2368-MMA (MDD)<br>11cv2370-MMA (MDD)<br><br>**ORDER GRANTING JOINT MOTION FOR APPROVAL OF CY PRES BENEFICIARIES OF RESIDUAL SETTLEMENT FUNDS**<br><br>[Doc. No. 610] |

Plaintiffs Christopher Robinson, Eduardo Tovar, and Dave Scardina, on behalf of themselves and the Settlement Class as defined in the Amended Order Adopting Reports and Recommendations (Doc. No. 434) ("Plaintiffs"), and Defendants Midland Funding LLC, Midland Credit Management Inc., and Encore Capital Group ("Defendants"), jointly move the Court for approval of *cy pres* distribution of remaining settlement funds to certain beneficiaries. Doc. No. 610. For the reasons set forth below, the Court **GRANTS** the joint motion.

//

//

## BACKGROUND

The individual plaintiffs in this action generally allege that Defendants violated the rights of plaintiffs and other unnamed class members by illegally making debt collection calls to them, through use of an automatic dialer or pre-recorded voice, on their cellular telephones without first obtaining their prior express consent in violation of the Telephone Consumer Protection Act, 27 U.S.C. § 447, *et seq.* ("TCPA"). All plaintiffs within this Multi-District Litigation ("MDL") allege violations of the TCPA by Defendants in substantially the same manner.

A consolidated complaint was filed on July 11, 2012. The consolidated complaint alleges that Defendants violated the TCPA by using a predictive dialer to call the plaintiffs on their cell phones regarding debts. The parties ultimately entered into a settlement agreement and on November 30, 2016, the Court granted final approval of the class action settlement, as amended ("the Settlement").[1] *See* Doc. Nos. 432, 434. For purposes of settlement, the Court certified the following Settlement Class:

> [A]ll persons in the United States who were called on a cellular telephone by Defendants or their subsidiaries, affiliates or related companies (other than calls made by Asset Acceptance LLC, Atlantic Credit & Finance, Inc. or Propel Financial Services) in connection with the collection of an alleged debt using a dialer or by artificial or prerecorded voice message without prior express consent during the period from November 2, 2006 through August 31, 2014, inclusive.

Doc. No. 434 at 4.[2]

Further, as part of the Settlement, Defendants established a Settlement Fund of approximately $21.5 million, to be allocated as follows: (1) Net Settlement Amount - $15,000,000.00; (2) Attorneys' Fees and Costs - $2,400,000.00; (3) Cost of Notice and

---

[1] The Court amended the paragraph XII of the Final Order and Judgment to conform to Subsection IV of the Court's memorandum order. Doc. No. 434. The Court also made certain non-substantive formatting changes. *Id.*

[2] Excluded from the Settlement Class are the judges to whom this litigation is assigned, any member of the judges' staffs and immediate families, and any person who validly requests exclusion from the Class Agreement § 2.10(b).

Claims Administration - $4,003,975.17;[3] (4) Incentive Awards - $2,500.00 per representative; and (5) Special Master Fees - $31,905.00.[4] The Net Settlement Amount was comprised of a $2,000,000.00 Cash Component and a $13,000,000.00 Credit Component. The Cash Component of the Settlement Fund was chiefly for those Settlement Class Members who did not owe, or who disputed that they owed, Defendants any money. Doc. No. 434 at 6. Each Settlement Class Member eligible to receive a share of the Cash Component of the Settlement Fund was to receive a pro rata share. Pursuant to the Settlement, any checks distributed from the Cash Component of the Settlement Fund which remained uncashed 180 days after they were issued would be distributed to one or more *cy pres* recipients, to be agreed upon by the parties, and upon Court approval. *Id.*

Now, Plaintiffs and Defendants jointly move for Court approval of *cy pres* distribution of the remaining balance of the Settlement Fund, which amounts to approximately $284,719.98. Doc. No. 610 at 2. Specifically, the parties request that the balance be divided equally and distributed to: (1) the University of Santa Clara Law School's Privacy Law Certificate and High Tech Law Institute; and (2) Jump$tart Coalition for Personal Financial Literacy. *Id.*

## LEGAL STANDARD

"[T]he '*cy pres*' doctrine allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). "[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus to the interests of the class members," meaning that the distribution "'must account for the nature of the

---

[3] Defendants agreed to pay the claims administration fees separately and in addition to the Settlement Fund.
[4] *See* Transcript of Final Approval Hearing, Doc. No. 410 at 9:20-22.

plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" *Id.* (quoting *Nachshin*, 663 F.3d at 1036); *see also Six (6) Mexican Workers v. Arizn Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990) (setting aside district court's *cy pres* application where distribution to the chosen recipient organization would have "benefit[ed] a group far too remote from the plaintiff class").

## DISCUSSION

Here, "[t]he purpose of the TCPA is to 'protect the privacy interests of residential telephone subscribers by placing restrictions of unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Aboudi v. T-Mobile USA, Inc.*, No. 12CV2169 BTM (NLS), 2015 WL 4923602, at *5 (S.D. Cal. Aug. 18, 2015) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)). In enacting the TCPA, Congress sought to protect people from unsolicited, automated phone calls because they cause a nuisance and constitute invasions of privacy. *See Satterfield*, 569 F.3d at 954; *Cabiness v. Educ. Fin. Sols., LLC*, No. 16-CV-01109-JST, 2016 WL 5791411, at *6 (N.D. Cal. Sept. 1, 2016).

Keeping in mind the foregoing, the Court discusses each of the proffered *cy pres* beneficiaries and their nexus to class interests and TCPA claims in turn below.

### A. *The University of Santa Clara Law School's Privacy Law Certificate and High Tech Law Institute*

The Privacy Law Certificate program ("PLC") at Santa Clara University School of Law ("SCU") is a program committed to teaching lawyers how to protect and enforce privacy laws. *See* Doc. No. 610-3 ("Goldman Decl."). The High Tech Law Institute ("HTLI") of SCU works closely with the PLC. *Id.* at ¶ 9. HTLI is SCU's "umbrella administrator of all its high tech initiatives," including the High Tech Law Journal, which regularly publishes papers on privacy matters and sponsors symposia on privacy matters. *Id.* Additionally, HTLI includes the Privacy Law Students Organization, which provides mentoring and events directed to privacy law students. *Id. Cy pres* funds, if approved,

"would be used to advance the privacy interests of residential and cellular telephone subscribers, all consistent with the purpose of the [TCPA], and to promote and preserve the privacy rights of American consumers and residents, among others." Doc. No. 610 at 7. The funds would indirectly benefit class members by training privacy lawyers employed in the private and public sectors, thereby adding to the expertise in this field. *Id.* Specifically, "[t]he money would be used to support faculty, staff and students to research and publish scholarly, practitioner-oriented, and consumer-oriented publications that will improve the public's understanding of their privacy rights, and to create a new privacy-focused journal to expand the discourse about privacy issues." *Id.* The money "would also support privacy topic events to help educate practitioners and the public about privacy issues." *Id.*

Based on PLC's and HTLI's previous and current commitment to the issues of consumer privacy rights, distribution to SCU's PLC and HTLI would "'account for the nature of [P]laintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" *See Lane*, 696 F.3d at 819 (quoting *Nachshin*, 663 F.3d at 1036); *see also Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939, 946 n.7 (N.D. Cal. 2013) (approving *cy pres* distribution to HTLI of SCU). Further, despite that the PLC program and HTLI are located at SCU, which is in Silicon Valley, they both clearly have nationwide impact. *Cf. Nachshin*, 663 F.3d at 1040 (disapproving of *cy pres* distribution in part because the settlement class was nationwide yet "two-thirds of the donations [would] be made to local charities in Los Angeles"). Accordingly, distribution to SCU's PLC and HTLI is appropriate.

### B. *Jump$tart Coalition for Personal Financial Literacy*

Jump$tart Coalition for Personal Financial Literacy ("Jump$tart") is a non-profit organization that "operates an online clearinghouse of financial education resources," which is "free to both users and resource providers." Doc. No. 610 at 8. According to Laura Levine, the President and Chief Executive Officer of Jump$tart, Jump$tart "is the publisher of the National Standards K-12 Personal Finance Education, made available to

all educators at no cost to them. The national standards have been the basis for many state standards adopted by states with financial education requirements. Much of the financial education curricula used today are aligned to these standards. The standards are organized into six sections that address: Saving and Spending; Credit and Debt; Employment and Income; Investing; Risk Management; and Financial Decision-Making." Doc. No. 610-2 ("Levine Decl."), at ¶ 5. Specifically, the standard on credit and debt addresses "consumer credit laws, including rights and responsibilities and debt collection practices." *Id.* Jump$tart also has a collaborative teacher training program and hosts a National Educator Conference, which brings teachers from across the country together to learn from experts, try new resources, and network with educators and the financial literacy community. *Id.* at ¶ 7. If approved, *cy pres* funds would be used to "further its efforts to educate and improve financial literacy of American youth, including on the topic of credit and debt, which will benefit settlement Class Members by reducing future debt collection calls." Doc. No. 610 at 8 (internal citation omitted).

Distribution to Jump$tart bears a sufficiently "substantial nexus to the interests of the class members," particularly based on Jump$tart's focus on issues related to the TCPA, such as personal financial literacy regarding credit and debt. *See Lane*, 696 F.3d at 821. Accordingly, Jump$tart is sufficiently "tethered to the nature of the lawsuit and the interests of the silent class members," such as their interest in consumer education and financial literacy. *See Nachsin*, 663 F.3d at 1039; *see also Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 U.S. Dist. LEXIS 40282, at *13 (N.D. Cal. Mar. 11, 2018); *Blandina v. Midland Funding, LLC*, No. 13-1179, 2016 U.S. Dist. LEXIS 71477, at *31 (E.D. Pa. June 1, 2016) (approving *cy pres* distribution to Jump$tart). Further, Jump$tart's work benefits consumers nationwide. Thus, the Court approves distribution of *cy pres* funds to Jump$tart.

//
//
//

## CONCLUSION

In sum, the Court **GRANTS** the parties' joint motion for approval of *cy pres* distribution as set forth above, and further **ORDERS** that:

1. University of Santa Clara Law School's Privacy Law Certificate and High Tech Law Institute, and Jump$tart Coalition for Personal Financial Literacy are designated the *cy pres* beneficiaries of the remaining balance of the Cash Component of the Settlement Fund and must share equally in the *cy pres* award; and

2. Kurtzman Carson Consultants, LLC, the claims administrator, must promptly distribute the *cy pres* award to University of Santa Clara Law School's Privacy Law Certificate and High Tech Law Institute, and Jump$tart Coalition for Personal Financial Literacy in equal amounts.

**IT IS SO ORDERED**.

Dated: October 10, 2018

Hon. Michael M. Anello
United States District Judge