1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Alexander H. Burke, Esq. (*pro hac vice*)
Burke Law Office, LLC
909 Davis Street, Suite 500
Evanston, IL 60201
Tel: 312-729-5288
aburke@burkelawllc.com

*Counsel for Plaintiff Nicholas Martin*
*(Member Case No. 3:11-cv-02368-MMA-MDD)*

Mark L. Heaney
HEANEY LAW FIRM, LLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
Telephone: (952) 933-9655
mark@heaneylaw.com

*Counsel for Plaintiff Jeremy R. Johnson*
*(Member Case No. 3:15-cv-02477-MMA-MDD)*

[additional counsel below]

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: MIDLAND CREDIT MANAGEMENT INC. TELEPHONE CONSUMER PROTECTION ACT LITIGATION** | Case No.:  11-MD-2286 MMA (MDD)<br><br>Judge Anello<br><br>Magistrate Judge Dembin<br><br>**OBJECTIONS TO MAGISTRATE JUDGE'S ORDER (DOC. 812) ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE** |

1    On March 7, 2016, Alfred Collins, Jr. filed a wrongful termination action against

2  his former employers, the defendants in this case. *Collins v. Encore Capital Group, Inc.*,

3  No. 37-2016-7600-CU-WT-CTL (San Diego Cnty., Cal.). Collins alleges that Midland

4  fired him for speaking out internally against Midland's ***intentionally illegal*** use of

5  autodialers, in order to gain millions of dollars.

6    Even more shocking are Collins's allegations that Midland's top brass "cover[ed]

7  up" their intentional conduct in order to avoid liability in a TCPA "class action lawsuit,"

8  which must mean this MDL proceeding. Specifically, Collins alleged:

9

10    [I]n response to a civil class action lawsuit Encore was defending at this time
    for violation of the TCPA, company executives implemented a scheme to

11    give the appearance that Encore did not know what it was doing, but in
    reality the company was intentionally covering up the fact that it was

12    intentionally violating the TCPA and proactively dialing cell phones without
    consumer consent, as required by the TCPA.

13

14    Company executives made this decision because they knew that the
    penalties for breaking the law would be far less than income ENCORE

15    would be able to generate by violating consumers' rights. At this moment,
    Plaintiff had confirmation that certain senior ENCORE employees knew

16    what they were doing was wrong and they were willing to proactively break
    the law.

17

18

19  *Collins* Compl., Exhibit A at ¶ 28 (paragraph break and emphasis supplied). Member

20  case *Martin v. Midland Funding, LLC*, No. 3:11-cv-2368-MMA-MDD (S.D. Cal.), was

21  brought as a class action in May 2011, and overlapped with the lead case, *Scardina v.*

22  *Midland*, which settled on a class basis.

23    In other words, Collins alleges that Midland executives concocted a scheme in

24  connection with Nicholas Martin's case, in order to cover up prior intentional TCPA

25  violations, and pave the way for future violations to be made with impunity.

26    Collins also alleges that he brought these allegations concerning past intentional

27  TCPA violations to Midland's chairman of the board of directors and head of the audit

28  committee through an email, after which Midland allegedly "conducted an intimidation

1  campaign to scare people into not talking" about Midland's past intentional TCPA

2  violations. *Collins* Compl., Exhibit A at ¶ 57.

3      If the *Collins* allegations that Midland knowingly and intentionally violated the

4  TCPA are true, this would represent relevant and discoverable information – *direct*

5  *evidence* – on the issue of willful or knowing violations of the TCPA, supporting the

6  basis for treble damages under 47 U.S.C. § 227(b)(3). *See Krakauer v. Dish Network*,

7  LLC, 925 F.3d 643, 662 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019) (affirming

8  treble damages for willful and knowing TCPA violations).

9      Neither Plaintiffs Martin nor Johnson knew anything about *Collins*, its allegations

10 or the existence of TCPA-related audits at Midland until December 6, 2019, when so-

11 called Lead Plaintiff filed a joint motion seeking Collins' deposition. Dkt. 715.

12     Pursuant to Judge Dembin's order prohibiting any discovery without leave of

13 court, Martin and Johnson met and conferred with Midland and filed a joint motion for

14 leave to issue specific discovery requests, Dkt. 773, which the Court granted. Dkt. 776.

15 Those discovery requests included three requests for production ("RFP") that arose from

16 *Collins*: requests 14, 18 and 19:

17
18     RFP 14: Produce all documents concerning any audit, investigation or other
       type of inquiry into TCPA compliance and/or consent to make calls using a
19     dialer.

20     RFP 18: Produce all documents concerning any whistleblower (or as
       Midland put it, "disgruntled employee") such as Alfred Collins, that relates
21     in any way to your dialers or consent practices, without regard to time.
22     Include emails, text messages, letters and memoranda.

23
       RFP 19: Produce all audits, investigations and other documents that concern
24     use of your dialers or the TCPA, without regard to time, including
       investigations and witness statements concerning the Collins matter.
25

26 Midland refused to produce any discovery responsive to these requests, and in his order

27 of August 7, 2020, Magistrate Judge Dembin declined to compel them. Dkt. 812.

28 Plaintiffs thus respectfully object, and ask that this Court compel Midland to respond.

1    I.    **<u>BACKGROUND</u>**

2    　　This MDL arises from multiple lawsuits against Defendants Encore Capital Group,

3    Inc. and its subsidiaries Midland Credit Management, Inc. and Midland Funding, LLC

4    (together, "Midland"), alleging violations of the Telephone Consumer Protection Act's

5    ("TCPA") prohibition against "mak[ing] any call (other than a call made for emergency

6    purposes or made with the prior express consent of the called party) using any

7    automatic telephone dialing system or an artificial or prerecorded voice ... to any

8    telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(

9    A)( iii). Upon motion by Defendants, on October 11, 2011, the JPML entered its Transfer

10   Order, granting Defendants' motions for transfer and consolidation under 28 U.S.C. §

11   1407 "for coordinated or consolidated pretrial proceedings." *In re Midland TCPA Litig.*,

12   818 F. Supp. 2d 1377, 1378 (U.S. JPML 2011)( Dkt. 1).

13   　　On December 2, 2016, the Court approved a Class Action Settlement as to claims

14   applicable to this MDL. Dkt. 434. At the time, about 235 member cases in the MDL were

15   not affected by the settlement because the plaintiffs either opted out or alleged TCPA

16   claims based on calls that occurred after the Settlement Class Period. Dkt. 443 at 1.

17   　　On June 22, 2018, Midland joined with certain member case plaintiffs in

18   submitting a status report and proposed discovery plan in which each remaining plaintiff

19   would respond to a "Questionnaire" of discovery, after which Defendants agreed to

20   produce plaintiff-specific discovery that would include "account notes, consent evidence,

21   and a record of calls made to that plaintiff[,]" as well as certain generally-applicable

22   TCPA discovery. Dkt. 596 at 2-3. This was followed by a formal motion, submitted

23   without any coordination with the undersigned Plaintiffs' counsel, which set forth in

24   greater detail the terms of the Plaintiff Questionnaire and Defendants' subsequent

25   production. Dkt. 603 at 5. On September 5, 2018, the Court granted that motion,

26   including its requirement that Midland produce to each responding plaintiff certain

27   plaintiff-specific information and information relating to Defendants' dialing technology

28   and processes. Dkt. 608 at 4-6. Importantly, the Court's order did **<u>not</u>** indicate that this

1   was to be "it" for discovery; rather, it specified that "nothing herein shall prevent the

2   Parties from conducting additional discovery … at such time as the Court allows." Dkt.

3   608 p. 6.

4         On March 24, 2020, undersigned Plaintiffs and Midland submitted a Joint Motion

5   to Permit Discovery, which set forth a series of additional discovery requests to Midland

6   pertaining to those member cases in which the plaintiff alleges having received the calls

7   before September 1, 2014—i.e., who opted out of the earlier class settlement. Dkt. 529 at

8   2; Dkt. 773. The Court granted that motion on April 27, 2020. Dkt. 776. Midland

9   furnished to Plaintiffs' counsel Defendants' Objections and Responses to MDL

10   Discovery Requests on June 10, 2020, which included providing ***zero*** materials

11   responsive to RFP 14, 18, and 19, *supra*. Dkt. 802-3.

12         The parties filed a Joint Motion for Determination of Discovery Dispute as to these

13   and other requests on July 15, 2020, which Magistrate Judge Dembin denied as to RFP

14   14, 18, and 19 on August 7, 2020. Dkt. 812. Plaintiffs respectfully object to the

15   Magistrate Judge's order, and request that the Court compel Midland to produce the

16   requested materials, as further detailed herein.

17   **II.   LEGAL STANDARD**

18         This action was previously referred to the Magistrate Judge pursuant to 28 U.S.C.

19   § 636(b)(1)(A), which permits a magistrate judge to decide certain non-dispositive

20   matters. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Under Rule 72(a), a party may

21   object to a non-dispositive pretrial order of a magistrate judge within fourteen days after

22   service of the order. FED. R. CIV. P. 72(a). For non-dispositive orders, including those

23   pertaining to discovery matters, a timely objection triggers the district judge to "consider

24   timely objections and modify or set aside any part of the order that is clearly erroneous or

25   is contrary to law." *Id.*; *see also Mavrix Photographs, LLC v. Livejournal, Inc.,* 873 F.3d

26   1045, 1051 (9th Cir. 2017) (addressing objections to pre-trial discovery orders under Rule

27   72(a)). The "clearly erroneous" prong "applies to factual findings and discretionary

28   decisions made in connection with non-dispositive pretrial discovery matters." *F.D.I.C. v.*

1  *Fid. & Deposit Co. of Maryland,* 196 F.R.D. 375, 378 (S.D. Cal. 2000) (citation omitted).

2  The "contrary to law" prong "permits independent review of purely legal determinations

3  by the magistrate judge." *Id.*

4      "A finding is `clearly erroneous' when although there is evidence to support it, the

5  reviewing court on the entire evidence is left with the definite and firm conviction that a

6  mistake has been committed." *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395

7  (1948); *Mathews v. Chevron Corp.,* 362 F.3d 1172, 1180 (9th Cir. 2004). In comparison,

8  a magistrate judge's order is contrary to law if the judge applies an incorrect legal

9  standard or fails to consider an element of the applicable standard. *See Hunt v. Nat'*

10  *Broad. Co.,* 872 F.2d 289, 292 (9th Cir. 1989) (noting that such failures constitute abuse

11  of discretion).

12      The district court must "make a de novo determination of those portion of the

13  report to which objection is made," and "may accept, reject, or modify, in whole or in

14  part, the findings or recommendations made by the magistrate judge." 28 U.S.C. §

15  636(b)(1); *see also United States v. Raddatz,* 447 U.S. 667, 673-76 (1980); *United States*

16  *v. Remsing,* 874 F.2d 614, 617 (9th Cir. 1989)*; see also United States v. Reyna-*

17  *Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003) ("[T]he district judge must review the

18  magistrate judge's findings and recommendations de novo *if objection is made,* but not

19  otherwise."). A "district court has discretion, but is not required, to consider evidence

20  presented for the first time in a party's objection to a magistrate judge's

21  recommendation." *United States v. Howell,* 231 F.3d 615, 621 (9th Cir. 2000).

22  **III.    THE MAGISTRATE JUDGE'S ORDER WAS INCORRECT.**

23      Judge Dembin denied Plaintiffs' motion to compel RFP 14, 18, and 19, on the

24  grounds that (1) the chronological timeframe is too broad, and (2) that Plaintiffs should

25  have asked for them as part of the questionnaire process—notwithstanding the Court's

26  statement in the questionnaire order indicating that further discovery would occur, and

27  his express grant of the parties' joint motion to serve these requests on Midland. Dkt. 812

28  at 11-13; *see* Dkt. 608 p. 6 & Dkt. 776. Plaintiffs respectfully object to these rulings

1    pursuant to Fed.R.Civ.P. 72(a).

2    **A. These requests are not impermissibly broad.**

3    The Magistrate Judge's order denying Plaintiffs' motion to compel these three

4    requests found fault in the requests' use of the word "all" and, as to RFP 18 and 19, the

5    phrase "without regard to time." Plaintiffs acknowledge that the chronological scope of

6    RFP 18 and 19 is broad, but contend that they are appropriately such.

7    In explaining its ruling of inappropriate broadness, the order suggests that perhaps

8    a more appropriate request might have been to ask for compliance investigations or audits

9    concerning "calls made prior to September 1, 2014." However, there are dozens of cases

10   in this MDL, all of which are to benefit from this common discovery. Many of the subject

11   cases – including cases that opted out of the *Scardina* class case – received calls after

12   September 2014. On July 8, 2020, Midland produced a list of pending cases with calls

13   prior to September 1, 2014, at Dkt. 798-1, attached hereto as Exhibit B, which adds an

14   asterisk showing the seventeen out of fifty-six cases, for which there are calls both before

15   and after September 1, 2014. Moreover, the Court was incorrect about the temporal scope

16   of RFP 14, which did precisely what the Court suggested it should, and covered calls

17   between "October 12, 2007, to September 30, 2014." Dkt. 769-1 at 2.

18   Perhaps this call chronology is why Midland *did not even argue* chronological

19   scope in the Joint Motion for this request. The Magistrate Judge developed this

20   reasoning, *sua sponte*, without argument from the parties. While certainly a judge is

21   permitted to decide issues for unbriefed reasons, doing so raises a probability that such a

22   decision will be clearly in error, as here.

23   In sum, contrary to the reasoning and holding in Dkt. 812, the chronological scope

24   of these requests jibes with the live claims at issue. The ruling is therefore clearly in

25   error, should be reversed and the materials should be compelled.

26   **B. Plaintiffs did not know about *Collins* when the questionnaire was drafted.**

27   Judge Dembin also refused to compel a response to these requests, finding that

28   each of them should have been made either as part of the questionnaire process, or as part

1  of the questionnaire dispute resolution process laid out in Dkt. 702. Again, this reasoning

2  came without substantial argument from Midland: Midland did not raise this point in its

3  objections, did not argue it during meet and confer discussions, did not raise it in its

4  Memorandum of Points and Authorities, Dkt. 802-1, and did not raise it in connection

5  with any of these particular requests in the joint submission. Dkt. 802. Midland did

6  mention this principle in passing in its "Background" section of the Joint Motion, Dkt.

7  802 at 4, but it did not argue that these requests should have been part of the

8  questionnaire process, or that failure to include these requests in the questionnaire was

9  fatal to their issuance.

10        Most importantly, however, the undersigned did not know about the *Collins*

11  allegations until December 2019, well after the questionnaire development process in

12  summer 2018. Burke Decl. ¶ 2.

13        And while it is true that the dispute resolution process the Court relied upon in

14  denying the motion to compel in Dkt. 702, went from December 2, 2019 and ended

15  around January 1, 2020, the *Collins* materials were not part of the questionnaire and

16  therefore seeking them through the resolution process Judge Dembin faulted Plaintiffs for

17  not using would have been inappropriate and futile.

18        Thus, the most appropriate way – and the *only* way – Plaintiffs could possibly have

19  obtained documents concerning the *Collins* complaint was by seeking leave to issue

20  additional discovery requests, which Plaintiffs did. Dkt. 773. That additional discovery

21  would occur after the preliminary questionnaire process was explicitly contemplated in

22  Judge Dembin's original order for such. *See* Dkt. 608 pp. 6-7 (indicating that there would

23  be "no additional discovery until further order of the Court," but confirming that

24  "**nothing herein** shall prevent the Parties from conducting additional discovery … at such

25  time as the Court allows") (emphasis added). Plaintiffs thus had no reason to believe the

26  questionnaire process would be the "end-all-be-all" for discovery, Judge Dembin's

27  instant order notwithstanding. Indeed, there is no fact discovery closure date in this case,

28  and to the undersigned's knowledge, never has been. *E.g.,* Dkt. 782 p. 1 (noting Court's

1   intent to "inquire whether there is any outstanding common discovery").

2   Again, perhaps because these issues were not fully briefed, the Court's order

3   denying the motion to compel did not recognize this timeline. Because it would have

4   been impossible for Plaintiffs to comply with what the Court reasoned they should have

5   done, the Magistrate Judge's order is clearly erroneous and contrary to law, and this

6   objection should be sustained.

7   **C. Requests 18 and 19 are not "Vague."**

8   In its final sentence denying Plaintiffs' request to compel responses to RFP 18 and

9   19, the Court states: "Other than identifying Albert Collins, it is vague and overbroad and

10  its relevance to calls preceding September 1, 2014, is not obvious." Dkt. 812 at 12-13.

11  Both of these requests are targeted at, and limited to, the precise disputed issues at

12  hand: dialers, consent and the TCPA. And while whistleblower Collins is the only

13  individual mentioned in the requests, this makes sense because he is the only individual

14  that counsel knows about. "The party objecting to discovery as vague or ambiguous has

15  the burden to show such vagueness or ambiguity." *Bryant v. Armstrong*, 285 F.R.D. 596,

16  606 (S.D. Cal. 2012). Neither Midland nor the Magistrate Judge explained what was

17  vague about these requests. And even if they were vague, Midland should have produced,

18  and the Court should have compelled, the portion that was not vague instead of tossing

19  out the entire request, wholesale. Fed.R.Civ.P. 34(B)(2)(C) (requiring that an "objection

20  to part of a request must specify the part and permit inspection of the rest").

21  To the extent that the Court's vagueness reasoning referred to these requests'

22  failures to identify specific audits or whistleblowers, this would be unfair. Only Midland

23  knows if there were more persons who "spoke up" about TCPA compliance, improper

24  dialer use or intentionally shoddy consent practices. How is a consumer going to learn

25  about such other than through discovery requests like these?

26  **D. The Requested Documents are Discoverable and Highly Probative.**

27  The Magistrate Judge's order did not analyze the merits of these requests at all.

28  However, in order to fully reverse the ruling, this Court must be satisfied that the requests

1    ask for discoverable documents. They do.

2        Audit and investigation documents pertaining to TCPA compliance or consent are

3    relevant to whether enhanced damages are appropriate under 47 U.S.C. § 227(b)(3),

4    based on Midland's knowledge or willfulness as to the violations at issue. For example, if

5    Midland's own investigations determined that its practices were resulting in

6    nonconsensual calls, Midland's subsequent nonconsensual calls to the Plaintiffs were not

7    merely negligent. The audit and investigation information is thus relevant to the issue of

8    willfulness. For this reason, courts routinely compel such documents in TCPA cases. *See*

9    *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1044-45 (D. Minn. 2010)

10   (finding TCPA plaintiff "is entitled to discover evidence that is relevant to whether

11   Midland's violation of the TCPA was reckless[,]" such as "information about what

12   Midland's procedures required it to do to avoid violating the TCPA" and "information

13   about what Midland did and did not tell its employees about the TCPA"), *aff'd*, 413 F.

14   App'x 925 (8th Cir. 2011); *Johansen v. Liberty Mut. Grp., Inc.*, 2017 WL 6045419, at *3

15   (D. Mass. Dec. 6, 2017) (compelling documents relating to applicable audits,

16   investigations, inquiries, or studies done concerning compliance with state and federal

17   telemarketing laws); *Sliwa v. Bright House Networks, LLC*, 2018 WL 1183350, at *3

18   (M.D. Fla. Feb. 14, 2018) (compelling request seeking "[a]ll communications, reports, or

19   audits concerning Defendant's compliance with the TCPA, including ensuring it was not

20   calling wrong numbers or calling numbers after the called parties made requests not to

21   call them" going back to 4-year TCPA statute of limitations period, finding it "relevant,

22   proportional, and not burdensome"); *Taylor v. Universal Auto Grp. I, Inc.*, 2015 WL

23   1810316, at *8 (S.D. Ohio Apr. 17, 2015) (compelling production of "documents,

24   communications, and databases related to complaints from individuals who received

25   calls" as relevant and discoverable); *Warnick v. DISH Network LLC*, 2013 WL 788090, at

26   *4 (D. Colo. Mar. 1, 2013) (compelling "[a]ll documents from any source that concern

27   the legality or propriety of making telephone calls to customers' cellular phones"

28   referencing the TCPA); *see also Krakauer*, 925 F.3d at 662 (referencing prior litigation

1  and "half-hearted way in which Dish responded to consumer complaints" in affirming
2  enhanced damages against TCPA violator).

3      Midland's objections do not explain themselves with any specificity, as required
4  by Fed.R.Civ.P. 34(b)(2)(B), and they produce nothing at all, rather than producing the
5  portions that are not objected to. Instead, Midland's briefing (but *not* its original
6  objections) argues that its automated calls might not have violated the TCPA, Dkt. 802 at
7  43, and that Plaintiffs are therefore not entitled to investigate the level of its culpability in
8  discovery.

9      Midland's opposition also tries to turn the tables on the burden, claiming that
10  Plaintiffs are required to show proportionality. Dkt. 802 at 45. But this places Plaintiffs
11  into a catch-22: Plaintiffs cannot argue proportionality without Midland objecting with
12  specificity, and explaining what its alleged burden might be. The party who resists
13  discovery has the burden to show discovery should not be allowed, and has the burden of
14  clarifying, explaining, and supporting its objections. *Licea v. Beshay Foods, Inc.*, 2020
15  WL 1975059, at *1 (S.D. Cal. Apr. 23, 2020) (explaining burden shifting on a motion to
16  compel); *Ivins v. Corr. Corp. of Am.*, 291 F.R.D. 517, 519 (D. Mont. 2013) ("Where a
17  party's objections are themselves vague and impermissibly overbroad, and no specifics
18  are given, the objecting party fails to carry its burden"). And while Midland submitted
19  two declarations on this point, it did not provide this information in its objection or
20  otherwise in advance of the parties' joint submission, so Plaintiffs were not afforded the
21  opportunity to address those claims. Burke Decl. ¶ 3.

22      Audits and investigations are the "smoking gun" for proving willfulness.
23  Midland's argument appears to be, "Gosh, we investigated so many complaints about
24  illegal TCPA violations, it's just too burdensome to produce *anything*." Rubbish. Had
25  Midland meaningfully met-and-conferred with Plaintiffs' counsel like it was supposed to
26  in advance of motion practice, *see* Fed. R. Civ. P. 37(a)(1), instead of submitting last-
27  minute, one-sided, adversarial declarations attesting to "burden" after-the-fact, then
28  perhaps the parties could have come to a negotiated agreement. But it did not. The

1   Magistrate Judge's acceptance of Midland's backloaded tactic and refusal to permit ***any***
2   discovery responsive to these highly pertinent requests, which are key to permitting
3   Plaintiffs to establish Midland as the unrepentant TCPA violator that it is, was clearly
4   erroneous or contrary to law. Moreover, gathering and producing these materials cannot
5   be burdensome, given that the *Collins* materials and emails were created while this case
6   was pending, and in connection with this case (and in particular, Nick Martin's class
7   action). Certainly Midland had a litigation hold on such materials arising from this case
8   and from *Collins*, and can efficiently gather and produce them.

9            **E. Failure to take a deposition does not render documents meaningless.**

10           Judge Dembin also took issue with the fact that the Collins deposition was not
11   taken. However, as explained above, the undersigned did not know about the deposition
12   before December 2019, well after the questionnaire process was complete.

13           Immediately upon learning of Mr. Collins, the undersigned emailed and called
14   Lead Counsel for the class action J.D. Blythin, and requested that he be permitted to
15   participate in the deposition, including ask questions. Burke Decl. ¶ 2. Mr. Blythin
16   agreed. *Id.* However, Mr. Blythin did not respond to subsequent communications about
17   the status of the subpoenaed Collins deposition. *Id.* The deadline for the deposition came
18   and went, apparently without the deposition happening and without Mr. Blythin notifying
19   the undersigned one way or the other. *Id.*

20           But a document request is different than a deposition. Contemporaneously-created
21   emails and other documents are oftentimes more powerful than testimony given five or
22   ten years after-the-fact. And although documents are typically obtained before a
23   deposition, discovery in this case was set up so as to make this impossible. But either
24   way, document requests are a legitimate way to seek information from an adversary;
25   there is nothing in the Federal Rules that says that one cannot use Fed.R.Civ.P. 34, unless
26   one also takes a deposition. And there was no such "rule" in this case until the Court
27   denied these discovery requests. These document requests were timely, and asked for
28   relevant and discoverable information. The fact that the Collins deposition did not happen

1  has nothing to do with whether these materials should be produced.

2  **IV.    CONCLUSION**

3  *Collins* and Midland's internal-looking document relating to TCPA, consent and

4  dialers are too important for this type of circular treatment, especially if what Collins said

5  is true – that Midland's highest executives intentionally violated the TCPA and designed

6  internal systems in order to avoid detection of its violations *in this lawsuit.*

7  The Court should sustain these Objections and require Defendants to respond to

8  RFP 14, 18 and 19.

9                                          Respectfully submitted,

10

11                                          NICHOLAS MARTIN

12  Dated: September 4, 2020          By:   */s/ Alexander H. Burke*

13                                          Alexander H. Burke
                                           BURKE LAW OFFICES, LLC

14                                          155 N. Michigan Ave., Suite 9020
                                           Chicago, IL 60601

15                                          Telephone: (312) 729-5288
                                           aburke@burkelawllc.com

16

17                                          *Counsel for Plaintiff Nicholas Martin*

18                                          JEREMY R. JOHNSON

19

20  Dated: September 4, 2020          By:   */s/ Mark L. Heaney*

21                                          Mark L. Heaney
                                           HEANEY LAW FIRM, LLC

22                                          601 Carlson Pkwy., Suite 1050
                                           Minnetonka, MN 55305

23                                          Telephone:  (952) 933-9655
                                           mark@heaneylaw.com

24

25                                          *Counsel for Plaintiff Jeremy R. Johnson*

26

27  The following are additional counsel whose clients are also joining Plaintiffs Martin and

28  Johnson in this Motion:

1

2     Bret A. Knewtson
      3000 NW Stucki Pl., Ste. 230-M
3     Hillsboro, OR 97124
      Telephone: (503) 846-1160
4     bknewtson@yahoo.com
      *Counsel for Plaintiff Jonathan Spencer (3:17-cv-00605)*
5

6     Cathleen M. Combs
      Cassandra P. Miller
7     Edelman, Combs, Latturner & Goodwin LLC
      120 S. LaSalle, Suite 1800
8     Chicago, IL 60603
      Telephone: (773) 739-4200
9     ccombs@edcombs.com
      cmiller@edcombs.com
10
      *Counsel for Plaintiffs Dave Scardina (3:11-cv-02370) and Sabrina Andrews (3:14-*
11    *cv-02506)*

12

13    Rex C. Anderson
      Rex Anderson PC
14    9459 Lapeer Rd., Ste. 101
      Davison, MI 49423
15    Telephone: (810) 653-3300
      rex@rexandersonpc.net
16    *Counsel for Plaintiffs Daryl Smith and Barbara Reid (3:14-cv-01386)*
17

18
      Amanda J. Allen
19    The Consumer Protection Firm, PLLC
      210-A South MacDill Ave
20    Tampa, FL 33609
      Telephone: (813) 500-1500
21    amanda@theconsumerprotectionfirm.com
      *Counsel for Plaintiffs Charles Gruver (3:14-cv-01559), Susan Hall (3:15-cv-*
22    *00503), Cynthia Farley (3:15-cv-00939), Ephrom Cray, Jr. (3:15-cv-01051),*
      *Rachell Permenter (3:15-cv-01644)*
23

24

25
      Angela Basham (*pro se in 3:15-cv-01479*)
26    P.O. Box 220
      Leasburg, MO 65535
27    drbasham@centurytel.net

28

Objections to Magistrate Judge's Order (Doc. 812)                    Case No. 3:11-md-02286-MMA-MDD
on Joint Motion for Determination of Discovery Dispute        14

1

2       Ashok Arora (*pro se in 3:15-cv-01712*)
        869 E. Schaumburg Rd., Suite 217
3       Schaumburg, IL 60194
        Telephone: (224) 622-3846
4       ashoklaw@protonmail.com

5
        Tammy G. Hussin
6       Hussin Law
        1596 N. Coast Highway, Ste. 101
7       Encinitas, CA 92024
        Telephone: (877) 677-5397
8       tammy@hussinlaw.com
9       *Counsel for Plaintiff James Doherty (3:13-cv-02010)*

10
        Yitzchak Zelman
11      Marcus & Zelman, LLC
        701 Cookman Avenue
12      Asbury Park, NJ 07712
        Telephone: (845) 367-7146
13      yzelman@marcuszelman.com
14      *Counsel for Plaintiff Moses Weisberger (3:14-cv-01336)*
15
16      W. Whitney Seals
        Pate & Cochrun LLP
17      P O Box 10448
        Birmingham, AL 35202-0448
18      Telephone: (205) 323-3900
19      whitney@cochrunseals.com
20      *Counsel for Plaintiff Prince Lashandra (3:17-cv-01242)*
21
        Joseph M. Adams
22      Law Office of Joseph M. Adams
        200 Highpoint Dr., Suite 211A
23      Chalfont, PA 18914
        Telephone: (215) 996-9977
24      josephmadamsesq@verizon.net
25      *Counsel for Plaintiff Denise Boyd (3:17-cv-00471)*
26
27      Aaron M. Swift
        Swift Law, P.A.
28

1   10460 Roosevelt Blvd. N., Suite 313
    St. Petersburg, FL 33716
2   Telephone: (727) 490-9919
3   aswift@swift-law.com

4   Ian Leavengood
    LeavenLaw
5   3900 First Street N., Suite 100
6   St. Petersburg, FL 33703
    Telephone: (727) 327-3328
7   ileavengood@leavenlaw.com
8   *Counsel for Plaintiffs David and Ruth Moya (3:14-cv-02467) and Peter Howard*
9   *(3:15-cv-00170)*

10  Brian L. Shrader
    Centrone & Shrader, PLLC
11  612 W. Bay St.
12  Tampa, FL 33606
    Telephone: (813) 360-1529
13  bshrader@shraderlawfirm.com
14  *Counsel for Plaintiff Laquan M. Ford (3:16-cv-01821)*

15  Seth Andrews
16  Law Offices of Kenneth Hiller, PPLC
    6000 N. Bailey Ave., Suite 1A
17  Amherst, NY 14226
18  Telephone: (716) 564-3288
    sandrews@kennethhiller.com
19  *Counsel for Plaintiffs Patrick McDonald (3:14-cv-00689), Kimberly Wentworth*
20  *(3:14-cv-01355), Dorothy King (3:14-cv-02909), Daisy Pugh (3:16-cv-01977)*

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 4, 2020, I caused the foregoing *Objections to Magistrate Judge's Order (Doc. 812) on Joint Motion for Determination of Discovery Dispute* to be filed via CM/ECF, which will send notice of such to all counsel of record.

*/s/ Alexander H. Burke*